UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BENJAMIN SELL,

                              Plaintiff,

        - against -
                                                          **COMPLAINT**

UNITED STATES OF AMERICA, UNITED STATES
DEPARTMENT OF TRANSPORTATION, UNITED
STATES MERCHANT MARINE ACADEMY
and JOHN DOES 1-10,

                              Defendants.
-------------------------------------------------------------------X

        The plaintiff, Benjamin Sell ("Sell" or "Plaintiff"), by his attorneys, Hogan & Cassell,

LLP, as and for his Complaint against the defendants, United States of America, United States

Department of Transportation, United States Merchant Marine Academy and John Does 1-10

(collectively "Defendants"), alleges the following:

## SUMMARY OF THE CLAIMS

        1.      This is an action for declaratory, injunctive and equitable relief based upon

Defendants' conduct resulting in the expulsion/disenrollment of Plaintiff from the United States

Merchant Marine Academy (the "Academy") in violation of the Academy's own rules and

procedures and the Due Process clause of the Fifth Amendment.

## JURISDICTION AND VENUE

        2.      This action arises under the Administrative Procedures Act, 5 U.S.C. § 701, et

seq. and the Due Process Clause of the Fifth Amendment.

        3.      This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and

2201.

4.      Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred in the Eastern District of New York.

5.      This is not an action that seeks to recover for any claims for negligence or any claims that could be covered by the Tort Claims Act.  Thus, Plaintiff is not required to serve a Notice of Claim.

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which he is entitled to a jury.

## THE PARTIES

7.      Plaintiff is an individual who resides in South Carolina.

8.      At all times set forth herein, upon information and belief, the defendant United States Department of Transportation is an agency of the United States of America, located at the West Building, 1200 New Jersey Avenue, SE, Washington, D.C.  Upon information and belief, the United States Department of Transportation operates, funds and/or maintains the United States Merchant Marine Academy, located at Kings Point, New York.

9.      At all times set forth herein, upon information and belief, the Academy is an educational institution that is an instrumentality of the federal government charged with the responsibility of training the officers of the United States Merchant Marine, located at 300 Steamboat Road, Kings Park, New York.  The Academy is owned, operated and/or maintained by the United States Department of Transportation.

10.     Defendants John Does 1-10 are agents, employees and/or officers of the United States Department of Transportation and/or the Academy.

2

## FACTUAL BACKGROUND

11.     In or about June 2015, Sell entered the Academy, Class of 2019.

12.     In Plaintiff's third academic year, Plaintiff was accused of cheating on a humanities project.  This project was assigned to Sell during his second class sea period.

13.     As a result of this charge, the matter was referred to an Honor Review Board to undertake an investigation.

14.     As set forth in the Midshipman Honor Manual (June 2015) (the "Honor Manual"), the Honor Review Board can decide to schedule a formal hearing, which permits a jury to vote on the matter; dismiss the matter; or refer the matter to the Commandant for disciplinary action. (relevant portions of the Honor Manual are attached hereto as Exhibit 1).

15.     The Honor Review Board determined that Sell should appear before a formal hearing.  The formal hearing was held on September 19, 2018.

16.     Sell admitted to the allegations against him and the Honor Board was convened pursuant to Paragraph 304 of the Honor Manual.

17.     Paragraph 304(e) of the Honor Manual provides that a midshipman accused of an honor violation has numerous rights.

18.     Paragraph 304(h) of the Honor Manual states that the "burden of demonstrating sufficient cause for retention by a preponderance of the evidence is on Midshipman."

19.     The rules of the Academy provide that in order for a midshipman's penalty to be disenrollment from the Academy, at least six of the nine jury members must so find.

20.     After the formal hearing, the jury voted unanimously (9-0) that Sell should not be separated from the Academy or setback.  The jury voted unanimously that Sell should be

retained by the Academy and should be required to participate in a remediation program.  The Deliberation Results of the Jury dated September 25, 2018 are attached hereto as Exhibit 2.

21.      Pursuant to Paragraphs 308 and 309 of the Honor Manual, the Superintendent of the Academy at the time, James A. Helis ("Helis"), was tasked with rendering "a final decision regarding the sanctions imposed."

22.      On the same date that the jury issued its decision, September 25, 2018, the Regimental Honor Board, via Commandant Mikel E. Stroud ("Stroud") wrote a letter to Helis stating that the Honor Staff disagrees with the determination by the jury that the Academy "retain MIDN Sell and recommended he participate in the 120-day remediation program."  A copy of this letter is attached hereto as Exhibit 3.

23.      The Honor Staff argued in its letter that the penalty imposed by the jury was not severe enough and that Sell should be setback to the class of 2020.  The Honor Staff stated in its letter that it "does not recommend disenrollment."

24.      On September 28, 2018, Honor Advisor Stephen J. McDade, via Stroud wrote an Honor Advisor Recommendation to Helis.  A copy of this letter is attached hereto as Exhibit 4.

25.      In the letter, McDade recommended that Sell be disenrolled from the Academy.

26.      In support of his position, McDade emphasized Sell's academic problems, claiming that "Sell's current transcript has 7 F's and 3 D's."

27.      On October 11, 2018, Helis provided his decision to Sell (attached hereto as Exhibit 5).

28.      Helis affirmed the findings of the Honor Board as to Sell's guilt and directed multiple "actions."  Significantly, Helis did not find a basis to disenroll Plaintiff.

29.      Helis determined that Plaintiff should be set back to the Class of 2020.  He also

required Sell to complete 50 hours of community service.

30.     Helis required that prior to Plaintiff joining the Class of 2020 that he take and pass a Physical Readiness Test ("PRT").

31.     Finally, Helis's decision stated that if the Commandant determined that Plaintiff did not properly remediate (i.e. comply with the terms set forth in the determination by Helis) then in such a situation, Plaintiff "will be referred to an Executive Board or Superintendent's hearing and may be disenrolled from the Academy."

32.     The determination by Helis advised Plaintiff that he had the right, pursuant to Paragraph 310B of the Honor Manual, to appeal the final determination.

33.     Plaintiff acknowledged receipt of Helis's final determination on October 11, 2018.  Sell acknowledged his responsibility to abide by the determination.  Plaintiff had the right to but did not appeal the determination.  See Exhibit 6.

34.     Upon information and belief, October 11, 2018 was the last day that Helis served as Superintendent at the Academy.

35.     The very next day, the Commandant of Midshipmen, Stroud, made a recommendation for an Executive Board suitability hearing (the "Recommendation"), to the new (interim) Superintendent of the Academy, Susan Dunlap.  See Exhibit 7.

36.     The Recommendation states that Stroud recommended an Executive Board to determine the suitability of Sell based upon Sell's failures in honor, academics and PRT's.

37.     Based upon the Recommendation, the Academy provided Sell with notice on October 18, 2018, that he would have to appear before an Executive Board for a suitability determination pursuant to Section 6.1 of the Regulations (relevant portions of the Regulations are attached hereto as Exhibit 8).

5

38.     The scheduling of an Executive Board based upon the Recommendation was severely flawed for numerous reasons and in violation of Plaintiff's Due Process rights.

39.     First, while Section 6.1 of the Regulations empowers the Superintendent to convene an Executive Board in response to a recommendation of the Commandant, the Regulations only permit convening a hearing under two limited circumstances:  1) to address a disciplinary offense; or 2) if there is a report by the Commandant's Performance Review Board that "indicates a serious lack of aptitude or suitability of a Midshipman for a career in the merchant marine and the United States Navy Reserve."

40.     The Recommendation by Stroud was neither premised upon a disciplinary offense nor was it premised upon a report after a Performance Review Board.

41.     In fact, upon information and belief, no Performance Review Board was ever held concerning Sell (the procedures for a Performance Review Board are detailed in Chapter 5 of the Regulations).

42.     Thus, the Academy's scheduling of an Executive Board was in contravention of its own rules and regulations.

43.     Second, while part of the Recommendation was premised upon Sell appearing before an Honor Board, Sell had already been disciplined and punished for his conduct, resulting in the October 11, 2018 final decision by Helis.  See Exhibit 5.  Sell had already accepted the punishment and did not appeal Helis's determination.  See Exhibit 6.

44.     The Academy's conduct in double-punishing Sell for the same exact conduct violated his Due Process rights.

45.     Third, although the Recommendation was premised upon Plaintiff being placed on deferred graduate status after an Academic Review Board ("ARB"), the Academy was

6

advised that the results of Sell's ARB was "voided" and "superseded" by the October 11, 2018

final decision by Helis:

> Good Afternoon [Dean Taha],
> Do you have the letter from the board on the results of [Midshipman] Sell's ARB?
> If so, can you please enclose?
> Thank you.
> V/R,
> Benjamin Wiese
>
> Ben,
> **We voided that letter, as the SUPT's honor letter <u>included and sulersedes</u>[*sic*]**
> **the Academic terms.**
> Dianne [Taha]

<u>See</u> October 12, 2018 email chain between Dean Taha and Benjamin Wiese (emphasis added)

(attached hereto as Exhibit 9).

46.     Stroud was clearly aware of the fact that the results of Plaintiff's ARB had been

voided and superseded inasmuch as he was provided with Dean Taha's email on October 15,

2018. <u>See</u> Exhibit 9.

47.     Moreover, prior to making his determination, Helis was provided with an

objection by McDade wherein McDade specifically recommended that Sell be disenrolled from

the Academy based upon his academics. <u>See</u> Exhibit 4.  Clearly, then, in determining Sell's

punishment, Helis had already considered Plaintiff's academic record.

48.     Stroud's reliance upon Plaintiff's PRT's as a basis to recommend an Executive

Board was clearly improper.

49.     In his Recommendation, Stroud relied upon failed tests for the first and the third

trimester for the "AY 2016," which was Sell's first academic year.  Sell, however, had already

fully remediated these failed physical exams.

50.     In fact, Plaintiff would not have been permitted to spend a semester at sea in his

7

second academic year, had he not been deemed physically fit.

51.     Likewise, with regard to the failure in the first trimester of the 2018 academic year, Plaintiff remediated this failure, which is confirmed by the fact that he spent the second and third trimesters at sea that year.

52.     Though Stroud's Recommendation references a failed test in the first trimester, academic year 2019, indicating an unexcused absence, in actuality the scores for that test were misplaced by the test proctor, Greg Ilaria ("Ilaria").  On October 10, 2018, Plaintiff sent an email to Ilaria regarding his missing test results and asked Ilaria to advise whether there was an outstanding issue with his test results.  Confirming that there was no issue with Plaintiff's test results, Ilaria responded "You are all set."  See emails attached hereto as Exhibit 10.

53.     The Executive Board was thereafter adjourned until November 15, 2018.

54.     The Executive Board discussed the issues in the Recommendation by Stroud, such as Sell's cheating on a project pertaining to humanities; Sell's grades; and Sell's alleged failures of the physical fitness tests.

55.     Section 6.6, paragraph 1, of the Regulations provides that at a Suitability Hearing, the "burden for demonstrating sufficient cause for retention by a preponderance of the evidence is on the Midshipman."

56.     Upon information and belief, the Executive Board determined that Sell could not sustain his burden and recommended that Plaintiff be disenrolled from the Academy.

57.     Superintendent Buono, who had replaced interim Superintendent Susan Dunlap, affirmed the decision by the Executive Board that Sell should be disenrolled from the Academy.

58.     Pursuant to Section 6.9 of the Regulations, Sell appealed the determination to the Maritime Administrator.

59.     By letter dated March 5, 2019, the Maritime Administrator denied Sell's appeal and upheld the decision by the Superintendent.  See Exhibit 11.

## COUNT I
## RELIEF PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT

60.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "59" above as if set forth fully herein at length.

61.     Defendants are all agents as defined by 5 U.S.C. § 701, and thus, their actions are subject to review under the Administrative Procedure Act.

62.     Defendants' actions are final.

63.     There is no adequate remedy at law.

64.     Defendants' actions, which resulted in the expulsion/disenrollment of Plaintiff from the Academy, are violative of the Academy's own rules and procedures and the Due Process clause of the Fifth Amendment.

65.     Defendants' actions, rules and regulations, which resulted in the expulsion/disenrollment of Plaintiff from the Academy, are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to Constitutional right (specifically the Due Process clause of the Fifth Amendment); and/or in excess of statutory jurisdiction, authority, or limitations.

66.     Pursuant to 5 U.S.C. § 706, this Court should hold Defendants' actions to be unlawful and should set aside Defendants' conduct in expelling/disenrolling Plaintiff.

67.     Pursuant to 5 U.S.C. § 706, this Court should hold Defendants' actions to be unlawful and should compel Defendants to reinstate Plaintiff to the Academy.

## COUNT II
## VIOLATION OF THE FIFTH AMENDMENT, PROCEDURAL DUE PROCESS

68.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "67" above as if set forth fully herein at length.

69.     Sell has property and liberty rights in his education, the degree he sought, an official commission and all other benefits granted thereunder as a result of successfully graduating from the Academy.

70.     Defendants' action with respect to Sell's property and liberty rights amounted to a deprivation of such rights in that Defendants improperly expelled/disenrolled Sell from the Academy.

71.     The deprivation occurred without due process as afforded by the Fifth Amendment of the United States Constitution, as Defendants failed to afford Sell a meaningful opportunity to properly oppose his expulsion.

72.     Defendants failed to follow the normal procedures to safeguard the rights of Sell and treated Plaintiff in a manner that was inconsistent with the manner in which they treated other midshipmen.

73.     Defendants failed to comply with their own procedures relating to the timing of any discipline, including, but not limited to, the procedures set forth in the Academic Policies Handbook; Midshipman Regulations; and the Honor Manual.

74.     Defendants' conduct was also violative of 46 CFR, part 310, including 46 CFR parts 310.8, 310.10, 310.65, 310.67.

75.     In addition, Defendants' rules placed an improper burden on Sell to demonstrate why he should be retained by the Academy.

76.     Further, Plaintiff was not provided with a fair process inasmuch as he was

penalized twice for the same exact conduct and disenrolled for conduct for which it had already been determined that disenrollment was not warranted.

77.     The decision to disenroll Plaintiff was not a careful and deliberate decision.

78.     As a result of Defendants' conduct, Plaintiff is entitled to declaratory and injunctive relief.

<b>COUNT III</b><br><b><u>VIOLATION OF THE FIFTH AMENDMENT, SUBSTANTIVE DUE PROCESS</u></b>

79.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "78" above as if set forth fully herein at length.

80.     Sell has property and liberty rights in his education, the degree he sought, an official commission and all other benefits granted thereunder as a result of successfully graduating from the Academy.

81.     Defendants' actions with respect to Sell's property and liberty rights amounted to a deprivation of such rights in that Defendants improperly expelled/disenrolled Plaintiff from the Academy.

82.     Defendants' decision to disenroll Plaintiff was arbitrary and capricious and did not involve the exercise of professional judgment.

83.     Defendants' decision to disenroll Plaintiff was motivated by faith or ill will unrelated to Plaintiff's academic performance.

84.     Defendants' aforementioned conduct violated Sell's rights and was in violation of the Fifth Amendment of the United States Constitution.

85.     Defendants' violations of the Fifth Amendment have injured and will continue to injure Sell. Sell is entitled to equitable and injunctive relief, compensatory and punitive damages sustained as a result of Defendants' violations.

11

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1.      Declare the actions of Defendants, their agents, employees, others and successors in interest as illegal and violative of the U.S. Constitution and federal law.

2.      Pursuant to 5 U.S.C. § 706, hold Defendants' action to be unlawful and set aside Defendants' conduct in precluding Plaintiff from graduating.

3.      Pursuant to 5 U.S.C. § 706, hold Defendants' action to be unlawful and compel Defendants to reinstate Plaintiff.

4.      Grant Plaintiff reinstatement as a Midshipman at the Academy and afford him all rights and benefits that he would have been afforded but for Defendants' improper conduct.

5.      Order Defendants to compensate, reimburse and otherwise make Plaintiff whole for compensatory, actual and punitive damages in an amount to be determined at trial.

6.      Direct Defendants to pay Plaintiff all of his costs, expenses and reasonable attorneys' fees.

7.      Grant such other and further relief as is just.

Dated:  May 23, 2019

Respectfully submitted,

HOGAN & CASSELL, LLP

By: _____

Michael Cassell
*Attorneys for Plaintiff, Benjamin Sell*
500 North Broadway, Suite 153
Jericho, New York 11753
Tel.  516-942-4700
Fax  516-942-4705
Email:  mcassell@hogancassell.com

12

# EXHIBIT 1

# MIDSHIPMAN
# HONOR MANUAL



# UNITED STATES
# MERCHANT MARINE ACADEMY
## JUNE 2015

## FOREWORD

This revised Honor Manual supersedes the version published in 2007. It is noteworthy that it represents the first changes in eight years to the rules and guidelines for Honor at Kings Point. No less significant is the fact that this new Manual is the result of the initiative of members of the Regimental Honor Board. It also represents the input and participation of other members of the Regiment of Midshipmen. The most important single change in this Manual is the addition of the Honor Concept. This statement expresses the broad purpose of the observance of Honor among Midshipmen, its vital role in the training and education of officers and "leaders of exemplary character."

Other changes reflect a desire to simplify procedures and to ensure that they are both rigorous and fair. Additional safeguards have been added to protect the rights of midshipmen. A section on Honor Remediation has also been included.

The new Manual will be the subject of instruction and of discussion. Emergent ideas to further improve and strengthen the place of Honor at the Academy may already be the subject of conversation in barracks, mess hall and classroom. I welcome this, and I enjoin every Midshipman and member of the Academy community to read and ponder this new Honor Manual, repository of our most prized possession.

James A. Helis
Rear Admiral
U.S. Maritime Service
Superintendent

## THE MISSION OF THE UNITED STATES
## MERCHANT MARINE ACADEMY

*To educate and graduate licensed merchant mariners and leaders of exemplary character who will serve America's marine transportation and defense needs in peace and war.*

### THE HONOR CODE

**A Midshipman will not Lie, Cheat or Steal.**

### THE HONOR CONCEPT

The United States Merchant Marine Academy is a place of honor, committed to the belief that a Midshipman's character is his or her most prized possession. This concept is required by the far-reaching nature of our professional heritage and the fact that an officer's word aboard ship or ashore must be utterly reliable. To that end, the Academy realizes that honor itself goes far beyond a set of rules enforced through sanctions; it is a direct reflection of character and the ideals we wish to embody. To protect and cultivate this standard, Midshipmen have created an Honor Concept at the Academy to which we are all responsible.

The Academy provides a safe and supportive environment for midshipmen and other members of our community.  It is united by heritage, esprit de corps and a common mission. The Regiment of Midshipmen has standards that it expects to be met by every midshipman.  A Midshipman at the United States Merchant Marine Academy will not break this bond of trust by lying, cheating or stealing in any form. We further characterize noble action as that which strives toward continual self-improvement and the realization that honorable living is what defines an honorable person.

Membership in the Regiment requires that every Midshipman realizes that loyalty to their principles supersedes any friendships or cultivated relations with their classmates.  A person who is lacking high moral and ethical standards is unfit to lead. In pursuance to this end it is each Midshipman's personal duty to ensure their classmates are maintaining the high standards which they have sworn to uphold.

### THE HONOR CREED

**May your life's course be defined by Honor.**

3

**INTRODUCTION**

Authority.

Under Title 46, section 310.65(b)(1)(iv) of the United States Code of Federal Regulations, a Midshipman must comply with the prescribed disciplinary and honor systems to graduate from the Academy.  This manual defines the honor system and describes the procedures to be followed to measure Midshipman compliance with the system.

History.

Honor is as important to today's society as it was in the societies we inherited its ideals from, in particular from such heroic and chivalric societies as that of ancient Greece and medieval and Renaissance Europe.  Certain modern communities preserve the idea of honor because it provides a sense of personal responsibility for actions within the community, and as a way of retaining a sense of tradition.  Many professional associations, institutions of higher learning, as well as the armed forces espouse and practice the idea of honor.  Honor is an ancient ideal of conduct.  It has been the means by which close-knit, hierarchical, and highly-directed societies have developed a moral sense.

Aspects of Honor

The practice of honor can be broken down into four parts. These are Honesty, Reciprocity, Forbearance and Restraint, and Autonomy and Free Choice.

Honesty

Good faith and values can only be maintained if all members of a community can trust one another.  This is why honor systems like those at service academies and other military schools put such a premium on honesty.  Honesty is honor at the entry-level. Honor is not just about telling the truth, but without truth-telling, the practice of honor is impossible.   If someone is "out there" telling lies, cheating or stealing, he or she isn't a person of honor, isn't one of the community, but is isolated from the community and its standards.  If too many people insist on acting this way, out of false pride, or because they are "alienated," disaffected, or cynical, the connection between members is lost, and the community of honor collapses into individuals each pursuing selfish ends through unscrupulous means.  Too many in today's society have traveled or are traveling down this path.

Reciprocity

The person who desires honor relies on the good opinion of peers, so as much as possible he or she will observe the golden rule, live up to obligations, repay debts, and return favors in full.  Persons desiring honor must pull their own weight in the community of honor.  The military unit or ship's company is such a community that may appear simple but which is really quite complex.  Superimposed on the formal structure of the community or regiment is the unofficial framework of status and obligation, favors and repayment, past record and expectation

4

that determine how the individual and unit function.  Members of the organization enter into a social contract to treat one another with respect.

### Forbearance and Restraint

The kind of structured and mission-oriented communities that traditionally embrace honor often wield considerable power, and honor requires that this power be used wisely and for the good of all.  Because of the power of officers to influence the lives of their subordinates, for good or ill, the officer has a traditional obligation to demonstrate self-restraint in the use of authority.   Since military organizations have an enormous ability to do harm, those who carry arms must likewise subscribe to a concept of forbearance and restraint, which involves the commitment to use a weapon only in the service of the avowed cause, and to limit the destructiveness of that use as much as possible, not harming, and even shielding those who are unarmed.   The military organization should, as one of the requirements of honor, act to provide a climate of values that condemns the irresponsible use of authority or of force.

### Autonomy and Free Choice

Autonomy and free choice are most characteristic of honor communities composed of experienced individuals, in professional organizations both military and civilian.  A profession is identified by the independence and self-governing capability of the profession.  The degree of autonomy granted to an individual in an honor community rests on experience, on confidence born of achievement, on reputation, on the practical wisdom of long service.  Among the core values of the maritime and naval services, honor, courage and commitment, honor is the pinnacle, coming after commitment has led to the development of virtues like courage and wisdom.

### Conclusion.

The Regiment of Midshipmen is an organization dedicated to training and educating officers and leaders of character.  We cherish the tradition of honor as an inheritance from the past and as the basis for the character of every officer in the Armed Forces and Merchant Marine.  As Midshipmen and future officers, honor is our most prized possession.

> "The most tragic thing in the world is a man of genius who is not a man of honor."  George Bernard Shaw

> "The shortest and surest way to live with honor in the world is to be in reality what we would appear to be; all human virtues increase and strengthen themselves by the practice and experience of them."  Socrates

**CHAPTER ONE - General Overview**

*101. Scope of the Honor Concept*

All persons entering the Academy must accept the obligation of adhering to the Honor Concept at all times. All Midshipmen will sign an Honor Oath document during their indoctrination period upon completion of the introduction to the Honor Concept and preliminary honor education classes. The signed Honor Oath will be placed in the 1st LT Aaron Seesan Room. Honor Board Officers are charged with the instruction and administrative duties. This Oath consents to adherence to both the Concept and its procedures contained herewith.  Ignorance of the Concept and procedures is not an excuse. **All Midshipmen are bound by the Concept at all times including leave, liberty, sea-year, and internships. Midshipmen are bound by the Concept in all hemispheres of the globe and on all oceans.**

The Honor Concept describes behavior that demonstrates a person's character.  Violations of the Concept are indications of deficiencies in a person's ethical standards.  The Honor System is a method for Midshipmen to evaluate whether or not actions by another Midshipman actually occurred, whether or not the actions demonstrate a deficiency in character, and whether or not the deficiency can be remedied without disenrollment.

*102. Definitions of Honor Terms*

**Honor -** Exhibiting behavior that is characterized by integrity and adherence to ethical and moral standards.

**Lie-** A lie is considered a deliberate attempt to present an oral or written untruth, quibble, or make a non-verbal communication with the intent of misleading another person(s).  Examples include, but are not limited to:
  a) <u>False Identification</u> The possession or use of an identification card with any false information of any kind shall be considered a lie. This includes modifying an existing identification, or using an identification card other than a Midshipman's own for any purpose.
  b) <u>False Official Report</u>.  Making a false report of any kind. Examples include log book entry, liberty request, and statement to investigating officer or watch stander.

**Cheat-** To cheat is to possess or obtain unauthorized assistance in submitting work designed to represent one's own efforts to deliberately gain an unfair advantage over others, or to attempt to do so. Cheating also involves knowingly assisting another person by word or action when such assistance is prohibited, or attempting to do so. Some examples of Cheating are the possession, communication, or use of information, materials, notes, study aids, or other devices not explicitly authorized by the instructor in any academic exercise, or any communication on the substance of the exercise with another person before, during, or after such exercise. Failure to adhere to the standards of academic honesty, as defined in the Academy's Academic Policies Handbook is considered cheating.  The definitions of academic dishonesty are set forth below:

6

a) <u>Plagiarism</u> – To steal and pass off the ideas or words of another as one's own without crediting the source; to present as new and original an idea or product derived from an existing source.

b) <u>Multiple Submission</u> – The submission of academic work for which academic credit has already or will be earned, when such submission is made without explicit instructor authorization.

c) <u>Fabrication/Falsification of Research Results</u> – Inventing or counterfeiting information; creating results not obtained in a study or laboratory experiment; the deliberate alteration or changing of results to suit one's needs in an experiment or other academic exercise.

d) <u>Pony</u> – A pony is an exam or other piece of academic work completed previously by another Midshipman, which has been graded and/or returned by a professor. Midshipman use of ponies will be determined by a policy detailed in the syllabus of each individual instructor. If ponies are authorized in the syllabus, their use must be cited in a manner approved by the instructor.

**Steal-** To steal is to attempt to wrongfully take, obtain, or withhold property without the consent of the owner, either temporarily or permanently, with the intent of depriving the owner of the property.

CHAPTER TWO- Midshipman Honor Board Organization

## 201. Midshipman Honor Board

A.    The Regimental Honor Board Chair (RHBC) will be appointed by the Superintendent, will be a member of the First Class and will hold the rank of MIDN LCDR.
The RHBC will be appointed as Chair for both rotations of his/her first class year. This is necessary to establish consistency in hearings, due to the nature of the material he/she is privy to, and due to the carryover of cases between rotations.

B.    The Regimental Honor Board Vice-Chair (RHBVC), Regimental Honor Board Vice Chair of Education (RHBVCE), Regimental Honor Board Vice Chair of Investigation (RHBVCI), and Regimental Honor Board Vice Chair of Operations (RHBVCO) will be appointed by the Superintendent. These members will be members of the First Class and will hold the rank of MIDN LT. At the discretion of the Superintendent they may continue their duties during the second rotation of officer billets.

C.    The Company Honor Board Chairs (CHBCs) will be appointed by the Superintendent. The Company Chairs will be members of the First Class and will hold the rank of LT(JG). At the discretion of the Superintendent the CHBCs may continue their duties during the second rotation of officer billets.

D.    The Honor Board Petty Officers will be appointed by the RHBC. Petty Officers may be members of the Second or Third Class.

E.    The Plebe Candidates will elect 2 Honor Board Representatives per company at the completion of their Honor education program during Indoctrination. The length of the term will be one year. These Plebes will assist in Honor Board procedures and act as ambassadors of the Honor Board.

## 202. Duties of Honor Board Members

A.    The RHBC will coordinate all the actions of the Midshipman Honor Board. The Chair's responsibilities include:

1.    Supervising the planning and organization of Honor education with respect to both Midshipmen and faculty/staff members.

2.    Arranging for investigations and hearings. The Chair will oversee the progress of the Investigating Team, and insure the expedient processing of violations.

3.    Presiding over Honor Board Hearings in an impartial manner and insuring that only relevant testimony is heard.

8

4.   Presenting the Honor Board's findings, decisions, and reasoning to the Honor Review Officer, as well as posting memoranda to the Regiment informing the Regiment of Honor Board actions.

5.   Confer with the Superintendent in regards to all hearings to assist in the final action. A meeting will be held after each Formal Hearing of the Superintendent, the Commandant, and the RHBC to discuss recommended actions for each case.

B.   The RHBVC will act as the chief of staff for the Honor Board. The RHBVC acts as a liaison between the RHBC and the other Honor Board Officers, thereby allowing the RHBC to handle cases and other matters more freely and efficiently.

C.   The RHBVCE is responsible for coordinating and planning all Honor education for the Regiment, Faculty, and Staff.  He/she will also coordinate the Honor education program for the incoming class before he/she graduates.

D.   The RHBVCI will be responsible for assigning an Investigating Team to each case. In addition, he/she will review the methods and content of the investigation before the case is forwarded to the RHBVC.

E.   The RHBVCO is responsible for the organization and operating procedures concerning the Honor Board.  His/her duties include the proper organization and transfer of case files and paperwork concerning an investigation, to include record keeping and audio recording during formal hearings.

F.   The CHBCs provide representation of the Honor Board on the Company level. They are responsible for the education, investigations, counseling, etc. that involves their Company.

G.   Honor Board Petty Officers' primary responsibility is to learn the billet of the Midshipman officer they are assigned to. Honor Board Petty Officers are able to assume any of the duties of regular Honor Board members, including acting as presiding officer. Any duties that are assigned to Petty Officers will be at the discretion of the RHBC and their respective Midshipman officer. Honor Board Officers may have more than one Petty Officer.

H.   Plebe Honor Representatives will be available for duties assigned to them by the Honor Board, including counseling and company honor education. Representatives should have an intimate knowledge of the Honor Board's processes in order that they may advise other Midshipmen, including violators, of their rights and duties under the Honor system.

I.   No member of the Honor Board may serve as an advisor to a suspected honor violator.

## 203.   *Honor Board Officer Advisor*

A.   The purpose of the Honor Board Officer Advisor is to provide the Honor Board with advice and direction, and to act as a reviewing officer. This individual will monitor all case reviews and hearings to ensure that the procedures are followed and to ensure that the rights of the accused are not violated.

B.   This individual will be a faculty/staff member appointed by the Superintendent, after consultation with the outgoing Honor Board Officer Advisor and Midshipman Honor Board Officers. The term of office is at the discretion of the Superintendent, upon the advice of the Honor Board.

## 204.  *Advisor to the Accused*

A.   The Accused may select an Advisor in the event he or she has committed a possible honor violation, which has been put under a formal investigation. An Advisor's role is to assist the Accused in Honor Board procedures, and to counsel the Accused during the course of the investigation and hearing. The Advisor may attend all hearings on the case but cannot answer questions for the Accused. The Advisor may not question the witness nor address the jury members directly during the Formal Hearing. The Advisor may protest any of the Honor Board procedures.

B.   The Advisor may be a Faculty/Staff member or Midshipman, except for members of the Commandant's staff, Counsel to the Academy or chaplains. Under no circumstances may an Advisor be anyone that is not employed by or enrolled at the Academy. The Accused may seek the advice and assistance of legal counsel in the preparation of his or her case at his or her own expense. However, legal counsel will not be permitted to be present during any of the Honor Board proceedings, including but not limited to interviews and hearings.

C.   The Accused Advisor is required to be present at a Formal Hearing.

D.   The Accused may only have one.

## 205. *Honor Board Hearing Voting Members (Jury)*

A.   Nine Midshipmen will comprise the Honor Board Voting Members (Jury).  The members will consist of:

1.   A Battalion Commander (BC) other than the BC of the battalion of the accused, or in his/her absence, the Battalion Executive Officer (BX).

2.   Three Company Commanders (CC), or in their absence their Executive Officers (CX).  The CCs (or CXs) will not be from the accused's company.

10

3. Five members selected at random from members of the accused's class, but not from the accused's company. Midshipmen who are serving Class I or II restriction, or who are in the same class section or on the same varsity team, club or activity as the accused are not eligible to serve as members.

B. It is every Midshipman's duty to ensure that the Honor Concept is upheld, and, for this reason, every Midshipman may be called to serve as a Voting Member. Jury duty has priority over other Midshipman responsibilities, including athletic practice and events, club activities, or liberty. A Voting Member will be given 5 days' notice prior to a Formal Hearing, and may request from the RHBC in writing to be excused from jury duty if it is in conflict with another activity, or in the case of illness or a medical appointment. Normally, excuses for illness and medical will be granted. If the RHBC declines to excuse a Midshipman who has asked to be excused, this decision may be appealed to the Honor Board Advisor, who may consult with the Commandant for a final decision. Should a Midshipman feel that, for any reason, they are incapable of casting a fair or unbiased vote, it is their obligation to request relief from voting duty.

C. Before the first Honor Board case of each rotation of Midshipman Officers, the Commandant of Midshipmen, Regimental Honor Board Staff, and the Honor Advisor will meet with the BCs, BXs and CCs (standing members of the Jury) and undergo a conduct briefing to ensure all members are prepared to serve effectively in a formal hearing.

## 206. Composition of Honor Board Hearing

A. Midshipman Presiding Officer (no vote): RHBC or an officer appointed by him or her. In the event that the RHBC feels that he or she may be too close to the case being heard whereas it may affect his or her impartiality, the RHBC shall excuse him or herself as Presiding Officer. The RHBC will then appoint the RHBVC or the RHBVCE as Presiding Officer.

B. Midshipman Investigating Officer (no vote).

C. Recorder (A Midshipman designated by the RHBC and having no vote).

D. Nine voting members as described in para 205(A) above.

E. No Honor Board member, or any other Midshipman directly involved in the case, may sit as a Voting Member hearing the case.

## 207. Dismissal of Board Members

If any Honor Board Officer or Representative fails to maintain the standards of the Concept or the Regiment, as determined by the RHBC, the RHBC may recommend to the Superintendent

11

through the Honor Board Advisor and the Commandant that the person be dismissed from his or her Honor Board position. Conduct grades and disciplinary actions will be monitored to ensure that those Midshipmen voting on Boards maintain an acceptable standard of conduct. Those members with poor conduct grades may be recommended for removal by the Chair. If an Honor Board Officer is dismissed, his or her position will be filled based on the recommendation of the existing Honor Board Staff, Honor Board Advisor, and the Commandant, and the approval of the Superintendent.

*CHAPTER THREE - Honor Violation Procedures*

*301.   Path of a Possible Honor Violation*

If a Midshipman becomes aware or otherwise learns of a dishonorable act, the burden of action falls on any party having knowledge of the act.  The Midshipman must then take appropriate measures, in line with this Academy's Honor Concept, to determine the subsequent action to be taken with the accused. Each midshipman has an individual responsibility for the Honor of the Regiment, and if a breach of that trust has occurred in the form of an Honor Violation, then they are bound to take informal or formal action, as set forth below.

A.  Informal Action

The path of a possible Honor Concept violation is left to the discretion of the witness.  Every Midshipman is bound to do *something* upon witnessing a violation of the Concept, and an informal action may be the first step.

1.  Confrontation

Informal action may be taken by any member of the Regiment who witnesses a violation of the Academy's Honor Concept by personally confronting the individual and counseling him/her on how and why they possibly violated the Honor Concept. This informal confrontation is meant to foster a collective responsibility for the Honor Concept by allowing the Midshipmen of the Regiment to practice it among themselves. The Honor Board recognizes that confrontation of a fellow midshipman is not an easy task to undertake.  The Honor Board recognizes this fact, but maintains that confrontation is a necessary aspect of the Honor System.

Confrontation with a fellow Midshipman should be used to determine basic information about the incident, such as why it occurred, and how that Midshipman feels about it now.  The accusing Midshipman must be ready to challenge their counterpart to do the right thing. Confrontation may be deemed satisfactory, in the sense that the confronting midshipman is satisfied that he/she need not report the confronted Midshipman to the CHBC or Regimental Honor Board, if and only if the following conditions are met:

a.  The confronted individual can give a satisfactory, believable exculpatory explanation that is consistent with the known facts; or

b.  The confronted individual confesses to the act and is prepared to make a full reparation by, for example, returning stolen property and admitting the theft to the owner, or confessing an act of cheating to the instructor, or personally rescinding an untrue statement to the person to whom it was originally made.  The option to report could then be in the hands of the victim or subject of the honor violation, but the violator would have in his or her favor the fact that he or she had made an effort to make reparations.

13

If confrontation is satisfactory, the confronting individual shall fill out an HB-0 form (Appendix 1) and submit it to his or her CHBC. This not only protects the confronting party from future actions, but allows the Honor Board to track the type and frequency of minor cases. If the confronted individual acknowledges that he or she has violated the Honor Code, he or she should be encouraged to self-report. If the confronted individual refuses to self-report in the case of what appears to be a violation, the confronting individual should take responsibility to see that a written report (HB-1) is submitted.

    2.   Report to Company Honor Board Chair

A Midshipman who witnesses a violation of the Academy's Honor Concept may report the incident to his or her CHBC, who will hold an Informal Counseling Session with the accused. The CHBC will then forward a summary report of the informal counseling session to the RHBC, who will determine whether further counseling is needed. Confrontation, while encouraged, is not a mandatory step; it is possible for a violation to go straight to a formal report. If further counseling occurs, the Honor Board members and the CHBC from the accuser's company will determine if a formal investigation should be initiated, based on the information/evidence and recommendations presented by the members who formally counseled the accused Midshipman.

B. Formal Report

A report of an honor violation may be made by any Midshipman or any member of the faculty or staff who has knowledge of the possible honor violation. The report is made by submitting an HB-1 form, entitled "Report of a Possible Honor Violation" (Appendix 2). The HB-1 form may be submitted to any member of the Commandant's staff or to any member of the Honor Board, who will forward it expeditiously to the RHBC. After the HB-1 form has been submitted to the RHBC, and he or she has ensured the veracity of the charge(s), he or she will direct the RHBVCI to conduct an investigation. The Honor Board reserves the right to not consider any case that is not reported within thirty days of the occurrence of the suspected violation.

## 302. Investigation of a Formal Report of an Honor Violation

A.  Initial Investigation Interview of the Accused

The Initial Investigation Interview is the first step in the investigation of a formal report of an honor violation. It commences when the RHBVCI completes and delivers, in person, as soon as possible, Form HB-2, entitled "Notification to the Accused" (Appendix 3) to the accused Midshipman. This Notification shall include the following enclosures: (1) The Rights of a Midshipman Accused of an Honor Violation Notice; and (2) Advisor Selection.

The RHBVCI will schedule the Initial Investigation Interview within five days of the delivering the Notification to the Accused. This Interview will be conducted by an Interview Team, which shall include the Accused's CHBC, his or her Company Commander (CC), his or her CHBC, and a member of the Regimental Honor Board Staff. Other Honor Board Officers and Petty Officers may be present to observe. In addition, if the Accused wishes to have an Advisor, the Advisor,

who must be selected by the date of the Initial Investigation Interview, may be present at the Interview. If a Regimental or Battalion Officer is accused, the process will be moved to the Regimental Level, (i.e. a Regimental Honor Board Officer will act as CHBC for the Accused).

Prior to or at the Interview, the Accused shall complete, sign and return to his or her CHBC the two enclosures included with the Notification – the Rights of a Midshipman Accused of an Honor Violation Notice and the Advisor Selection Form. In addition, the Accused may also submit a written statement to his or her CHBC within seven days from the date of receiving the Notification.

The Interview Team shall conduct the Initial Investigation Interview and the CHBC shall keep detailed notes of it, including as many facts as possible. The purpose of the Interview is to determine the Accused's version of the events that took place with regard to the possible honor violation. The Interview is for preliminary fact-finding, to determine whether more information needs to be uncovered, and whether enough evidence exists to warrant a Formal Investigation. Each individual present is permitted to interview the Accused. Anyone not involved with the Investigation team is not allowed to interview the accused.

Upon completion of the Initial Investigation Interview, all individuals present will sign Form HB-3, entitled "Initial Investigation Interview Muster" (Appendix 5). The CHBC will compile the notes from the Interview, and attach them as a Report to Form HB-3. In this Report, the CHBC, CC, and Regimental Honor Officer shall recommend, in writing and with their rationale, one of the following: (1) that the case be dismissed; (2) that the case be referred to the Commandant for disciplinary review (for situations involving infractions of the regiment's rules, not of the Academy's Honor Code); or (3) that a Formal Investigation be conducted.


The CHBC will forward Form HB-3, and its attachments, to the Honor Review Board, via the RHBVCI. The Honor Review Board will consist of the Regimental Honor Board members, the CHBC from the Accused's Company and the Honor Board Advisor. The Honor Review Board will vote on one of the following actions: (1) dismiss the case where there is a lack of evidence to determine whether a violation has occurred; (2) refer to case to the Commandant for disciplinary review; or (3) initiate a Formal Investigation.

Until such time as a Formal Investigation is ordered or the case is referred to the Commandant, the Accused may review only his or her statements and evidence that he or she has entered into the case file.

B. Formal Investigation

The purpose of a Formal Investigation is to uncover all facts and evidence regarding a potential Honor Concept violation. An Investigation Team will be convened, consisting of an Investigating Officer from the Honor Board Staff, a Company Honor Representative, and one or more Petty Officers, appointed by the RHBVCI will appoint the Honor Board Staff member, the Company Honor Representative, and the Petty Officers who will conduct the investigation. The

15

Investigating Team must remain objective and unbiased throughout the course of the Formal Investigation. All points of view should be examined and fully considered. The Investigation Team should complete the Formal Investigation, including interviews and evidence collection, and prepare its Investigation Report within seven days.

The Investigating Officer shall be responsible for scheduling interviews with the Accused, the Accuser, and any other witnesses. The Investigating Officer must take notes during each interview; electronic recordings of the interviews are also encouraged. For each interview conducted, the Investigating Officer shall also complete Form HB-4, entitled "Record of Interviews" (Appendix 6). The first interview conducted should be of the Accused. The Accused is under no circumstances required to answer any questions; however, the Investigation Team is required to ask.

After interviewing the Accused, the Investigation Team shall interview the Accuser, whether it is a Midshipman or faculty or staff member. Once this is complete, the Investigation Team shall interview any other individuals who may have knowledge of the potential Honor Concept violation. The Investigation shall also compile any non-witness evidence of the potential violation. Thus, for example, in a cheating case, the Investigating Team should interview the professor (if the professor was not the accuser), and obtain (if available) a copy of the test or other evidence.

After completing these interviews, the Investigation Team shall collect character statements from individuals involved with the development of the Accused, such as Athletic Coaches, Company Training Officers, Company Commanders, or Company Officers. The purpose of a character statement is to give the Investigation Team and Honor Board members a more complete picture of the character of the Accused. Additionally, the academic and disciplinary records of the Accused Midshipman shall be obtained by the Investigation Team or the RHBC and included with the Formal Investigation Report. The RHBVCI ensures confidentiality throughout the entire process and protects sensitive documents and information.

Upon completion of the Formal Investigation, the Investigating Officer shall submit the Formal Investigation Report, attached to Form HB-5, entitled "Report of Formal Investigation" (Appendix 7), to the Honor Review Board, via the RHBVCI. This Report shall type-written in memorandum format using a font that is easily read and submitted without grammatical and spelling errors. This Report shall consist of the following in the order listed: (1) Investigating Officer's summary; (2) interview of the Accused; (3) interview of the Accuser; (4) interviews of witnesses; (4) statements from the Accused; (5) statements from the Accuser; (6) statements from Witnesses; and (7) any other additional evidence.

C.   Honor Review Board

The Honor Review Board is composed of the following individuals: the RHBC, RHBVC, RHBVCE, RHBVCI, Honor Advisor, and the Investigation Team. The purpose of the Honor Review Board is to examine the Formal Investigation Report, and determine whether a Formal Hearing is necessary. The Accused shall not be present for deliberations of the Honor Review Board.

16

The Honor Review Board shall meet within two days of receipt of the Formal Investigation Report. Each member of the Honor Review Board will be presented with a copy of the Formal Investigation Report, all of which will be collected at the end of the review and secured. The Investigating Officer shall give the Honor Review Board a synopsis of interviews conducted, evidence collected, and any other pertinent information. After reading this material and hearing the Investigating Officer's presentation, the Honor Review Board shall vote. The outcome shall be decided by a majority vote, with each member except the Honor Advisor casting a vote. The possible outcomes are as follows:

1. Formal Hearing: The case shall be forwarded to a Formal Hearing, to allow a jury drawn from the Regiment to vote on the outcome of the case; this step shall be taken when a majority of the Board feels that the case requires the examination of the jury.

2. Case Dismissal: The case shall be dismissed and erased from the record; this step shall be taken when a majority of the Board feels that the case does not merit further proceedings or consequences.

3. Refer to Commandant: The case shall be dismissed as an honor case and referred to the Commandant for disciplinary action; this step shall be taken when a majority of the Board feels that the case does not meet the qualifications of an Honor Board case, yet may still require disciplinary action

The Honor Review Board decision will be documented on Form HB-6, entitled "Review of Formal Investigation" (Appendix 8) and turned over to the RHBC. If the recommendation is to dismiss the case or for other non-Honor Board action, the RHBC will endorse the recommendation and forward it to the Honor Board Advisor. For a case where a formal hearing is recommended, the RHBC will convene a hearing and cause the Formal Investigation Report to be made available for the hearing. The Honor Review Board decision will be conveyed to the Accused on Form HB-7, entitled "Result of Honor Review Board" (Appendix 9)

## 303. *Formal Honor Board Hearings*

A.    The Open Board Program

The Open Board Program has been designed so that the Regiment, faculty, and staff may learn more about the Honor System at the Academy. The Program allows a limited number of Midshipmen, faculty, and staff personnel to attend Formal Honor Board Hearings as observers, except during deliberations. Under no circumstance may non-Academy personnel attend any Honor Board process.

The Accused may elect whether to have an Open Board, via Form HB-10, entitled "Formal Hearing" (Appendix 12), which shall be included with the Notification of Hearing (Form HB-8) and must be returned no later than 48 hours before the scheduled hearing. RHBC, with the advice of the Honor Board Officer Advisor, may disallow an Open Board at any point. Open hearings are preferred for the majority of cases, and should be the norm. If an Open Board is being held, all persons wishing to observe must sign Form HB-11, entitled "Formal Hearing Accountability" (Appendix 13) before the beginning of the hearing. The RHBC may deny any

persons the privilege to observe these proceedings with or without disclosing his or her reason. This is done for the protection of the Accused, Accuser, witnesses, Board Members and due to the sensitivity of the material being presented. The RHBC may choose at any time to have a closed Board, even if after the commencement of an Open Board. Should the board be closed, a written report as to the reason must be submitted along with the accused Midshipman's case packet.

B.     Jury Selection Process

The composition of a Formal Hearing Jury is detailed above in Section 204(A).  The jury shall be selected five days prior to the Formal Hearing, and notification shall be delivered that same day via Form HB-9, entitled "Formal Hearing Jury" (Appendix 11).  The RHBVC is responsible for selecting the jurors and alternates for every Formal Hearing and notifying them of the Formal Hearing.

Nine jurors shall be present for every Formal Hearing, with four alternates.  Two Alternates are to be eligible to replace one of the designated Midshipman officer members, and the other two eligible to replace any of the other members.  Any juror who fails to appear without prior approval (see Section 204(B)) shall face disciplinary action.

All Midshipmen are obligated to provide a fair and impartial vote.  Should any juror feel themselves incapable of casting a fair or impartial vote for any reason, they must request to be removed from the voting panel (see Section 204(B)).

The jurors shall be selected using the random number generator function in the Microsoft Excel application.  A complete list of all Midshipmen onboard at the Academy shall be obtained from the Office of Midshipmen Personnel.  All members of the Accused's company, academic section, and varsity athletic team shall have their names removed from the list.  Any Midshipmen currently serving restriction shall also have their names removed from the list.  Current lists of these names shall be obtained from the Company Commander, Academic Dean, Director of Athletics, and Commandant's Office.

The Battalion Commander shall not be from the Battalion of the Accused.  In the event the Accused is in Band Company, either Battalion Commander may sit as a voting member.  In this case, the Battalion number shall be drawn at random.  In the event that the Accused is a member of the Regimental Staff, jury selection will proceed based on his/her parent company and battalion.

The Company Commanders who will be sitting as the standing members of the jury shall not be from the Company of the Accused.  The Company Commanders shall be selected by drawing Company numbers at random.  Three names shall be drawn as voting members.

Upon completion of jury selection, the thirteen drawn names shall be cross-checked by the RHBVC.  Should a voting member be found to be a member of the Accused's company,

18

academic section, or athletic team, their name will be removed from the roster, and the random number generator will be used to find another replacement.

Prior to the Formal Hearing, the Accused shall be presented with a roster of the voting members. If the Accused feels that one or more of these representatives may be prejudiced in the case, he or she may challenge the selection and request another Midshipman be appointed to the Board. The Accused must explain his or her reason for the challenge. The Presiding Officer will make the final decision whether to replace the challenged board member when the final selection is made. After the Accused has approved the list, he or he will sign the list to document approval. Should the Presiding Officer disapprove the Accused's challenges of the jury members, the Accused must still sign a document acknowledging the jury members.

C.      Notice to the Accused

At least five days before the Formal Hearing, the Accused and his or her Advisor will receive written notification of the date and time of the Formal Hearing via Form HB-8, entitled "Notification of Hearing" (Appendix 10). This notice will include a copy of the Formal Investigation Report and the identities of the members of the Jury, and all evidence to be presented to the jury by the Investigating Officer, as well as any witnesses who may be called by the Investigating Officer.

D.      Overview of Formal Hearing

A Formal Hearing is presided over by a Presiding Officer and heard by the nine Voting Members of the Jury. The Investigating Officer presents the case summary and witnesses of the possible Honor violation. The Accused may make opening and closings statements, question the witnesses called by the Investigating Officer and present witnesses of his or her own. After presentation of the case, the Jury deliberates and can dismiss the case, refer the case to the Commandant for possible disciplinary action or find the Accused guilty. If found guilty, the Accused will have an opportunity to present evidence, including written statements from witnesses, and call witnesses to present extenuating and/or mitigating evidence and arguments for retention at the Academy or for minimum or no disciplinary action. Where the Accused has admitted guilt, the hearing will be limited to the Accused presenting such evidence.

*304. Detailed Procedures for Honor Board Hearings (other than admitted guilt)*

A.      The RHBC shall determine the date and time of the Formal Hearing, which shall be held in the Eliot M. See Room, in Wiley Hall, in the seasonal dress uniform. If it will be an Open Board, the Regiment shall be extended notification of the Hearing, and those who are interested may attend subject to the limitations set forth above in Section 303(A). The Presiding Officer has the responsibility for maintaining order during the Board. Any improper conduct during the Board is cause for immediate dismissal from the Board and will result in disciplinary action.

B.      The designated Recorder will take a muster prior to the Honor Board Hearing.

**"Midshipman (Name), the Board will forward a verdict of Guilty to the Superintendent. In addition, the Board will recommend retention with the following sanctions: _____. You are reminded that the only possible penalty for a further honor violation on your part is disenrollment from the academy."**

The Presiding Officer will remind the accused that final action on the case will be taken by the Superintendent, and announce:

**"The testimony of this Board is confidential and is not to be discussed at any time. This includes the statements of any individual participating in the hearing, including the names of the Voting Board members. Only after final action by the Superintendent may these matters be discussed outside of this hearing. "**

**"This Board, hearing case_____is now closed pending the Superintendent's final action"**

*304.   Procedures for Admitted Honor Violations*

In the case that a midshipman admits to violating the Honor Concept, the procedure will be modified so that guilty or not guilty is not what is being determined. Rather the hearing will be used to discern a suitable and equitable recommendation for the admitted offense. The Honor Board hearings will be conducted in a formal manner in a designated conference room. The Presiding Officer has the responsibility for maintaining good order during the Board. Any improper conduct during the board is cause for immediate dismissal from the Board and disciplinary action.   The procedure is as follows:

A.   The nine (9) Honor Board Voting Members along with four (4) alternates will assemble as directed by the RHBC.

B.   The designated Recorder will take a muster prior to the Honor Board Hearing.

C.   Once the representatives have completed reading the investigation packet, observers will be brought in the Board room. The observers are to be reminded that they will be held to the highest standards of conduct, they will not be permitted to speak to anyone during the proceedings, nor will they discuss the case, in detail, with anyone outside of the Board. Due to the length of some hearings, observers may leave quietly at any point during the hearing. The Midshipman Presiding Officer will read the following:

1.   **"May I have your attention. This Honor Board Hearing will now come to order. All Midshipmen are reminded that this is a formal hearing and that all persons in this room will be held to the highest standards of conduct."**

27

2.    **"The accused is Midshipman (Name), who has admitted to lying/cheating/stealing."**

3.    **"If any Voting Member sitting on this case feels that he or she will not be able to cast an unbiased vote, it is your moral responsibility to excuse yourself from the hearing."**

(In the event of this occurrence, the Presiding Officer will appoint one or more of the four alternate Voting Members(s), who have been approved of by the accused, to act as a voting member(s).

4.    **"The testimony of this Hearing is confidential and is not to be discussed at any time.  This includes the statements of any individual participating in the hearing, including the names of the Voting Board members. Only after final action by the Superintendent may these matters be discussed outside of this hearing."**

D.    The recorder will introduce the accused midshipman and his/her advisor to the Board.

**"The recorder will now present the accused and his/her Advisor."**

E.    The Midshipman Presiding Officer will read the following:

1.    **"Midshipman (Name), this Honor Board Hearing has been convened to hear evidence and reach a recommendation concerning allegations that you have violated the Honor Concept by lying/cheating/stealing. Around this table are nine Midshipmen from the Regiment who will vote on your case."**

2.    **"Midshipman (Name), you are entitled to be present during the presentation of all evidence except closed deliberations and balloting. You will be given the opportunity to call witnesses and present any relevant evidence you may wish to offer. You may testify on your behalf. We believe that the Honor Concept which you have accepted by becoming a Midshipman, imposes a duty upon you to disclose any relevant information you might have. However, if you prefer not to testify, your silence will not be considered as evidence against you. If you do testify, any statements you make during the course of the proceedings may be used against you in further proceedings. When the hearing begins, the Board will first hear the investigating officer's opening statement."**

3.    **As a midshipman accused of an honor violation, you have rights.  You have already signed a form acknowledging your rights.  I will now read the rights for the benefit of the board.**
        ix.  **The right to remain silent.**
        x.  **The right not to be subjected to self-incrimination.**

28

       xi.   **The right to an advisor.**
      xii.   **The right to submit a statement to the Investigating Officer for consideration during the course of the Investigation.**
     xiii.   **The right to protest any Honor Board Representative selected for the Honor Board Hearing.**
     xiv.   **If found guilty of an honor violation, the right to submit an appeal to the Honor Advisor concerning procedural matters.**
      xv.   **The right to submit a statement to the Superintendent for consideration in the final decision.**
     xvi.   **The right to appeal to the Maritime Administrator if disenrollment sanction is imposed.**

**Do you acknowledge and understand your rights?**

4.     **"You have the right to question any witnesses and challenge any statements or documents presented at the Board. You may introduce any new evidence which may help clarify or further your defense. You may question any of the procedures which occur during the Hearing. Your advisor or I will answer any of your questions regarding your rights or Honor Board Hearing procedures, on your behalf. Do you understand?"**

5.     The Presiding Officer now addresses the Board.

**"We are about to hear evidence presented concerning an alleged violation of our Honor Concept and a member of the Regiment. This midshipman is charged with (lying/cheating/stealing). The purpose of an Honor Board Hearing is to uncover all the facts in the case and make a final recommendation based on these facts."**

F.     The Midshipman Presiding Officer now instructs the Investigating Officer to present his/her case to the Board. The Investigating Officer will call witnesses and conduct an examination. The Investigating Officer's witnesses will be available for questioning by the accused at the conclusion of the witnesses testimony, if statements are used, the accused will be provided with copies or permitted to view the statements or documents presented. The accused may challenge any statement, testimony, or evidence presented. Board members may ask questions of the witnesses or the Investigating Officer, and may examine any evidence presented.

G.     The Investigating Officer will now present a summary of the case.

**"Will the Investigating Officer please present a case summary?**

H.     The Presiding Officer will then allow the Accused to present evidence, including written statements from witnesses, and call witnesses to present extenuating and/or mitigating evidence and arguments for retention at the Academy or for minimum or no disciplinary

action. The burden for demonstrating sufficient cause for retention by a preponderance of the evidence is on Midshipman.

I.     Witnesses.

      1.     **"Does the accused wish to call any witnesses?"**

          (Requested witnesses are called and questioned by the accused, after which the investigating officer is offered the opportunity to question each witness.)

          **"Does the Investigating Officer wish to cross examine this witness?"**

          (After the Investigating Officer questions or declines to question each witness, the Hearing Members are offered the opportunity to question each witness.)

          **"Do any of the members wish to question the witness?"**

          (After questions or if no questions, the witness will cautioned to not discuss the case with anyone, and be dismissed and leave the hearing room.)

      (Only witnesses with direct knowledge of the specific alleged Honor Offense may be called as witnesses. Any character witnesses may submit written statements, but may not testify.)

J.     After all evidence has been presented by the Investigating Officer and the accused, the Presiding Officer will proceed as follows:

      **"Does the Board have any further questions?"**

      If there are questions they may be asked.

K.     After any questions or if no questions, the Presiding Officer will proceed as follows:

      **"Does the Investigating Officer wish to make any closing statements?"**

      (Investigating Officer makes summary statement.)

      **"Does the accused wish to make a closing statement?"**

      (This may be either the accused or his/ her advisor.)

L.     After closing statements, the Presiding Officer should remind the Midshipmen not to discuss the case with anyone until The Superintendent's final action it is released to the Regiment.

M.     The Presiding Officer will then read the following to the Board:

30

> **"We have heard all the evidence concerning this admitted violation of the Honor Concept. Midshipman (Name), you, your advisor, and all observers are excused, while this Board deliberates."**

N.     The voting members will then deliberate and determine the appropriate recommended penalty outside the presence of the Accused, his or her Advisor and any witnesses.  In making its determination, the members may re-examine the record pertaining to the Honor Concept violation, any statements or evidence provided by the Accused, and the Accused's entire Academy record (academic, regimental, sea year, and extra-curricular).

O.     Once the Presiding Officer determines that the members are prepared to vote on recommended sanctions, he/she will ask the Recorder will distribute blank ballots. The Presiding Officer will require each voting member to indicate his/her recommendation for either retention or separation on the ballot.  All members shall cast a vote and six (6) votes are required for separation. The vote will be conducted by secret ballot.

P.     The Presiding Officer will read the decision to the members.

Q.     If the recommendation is separation, the accused, his/her advisor, and all observers will be brought into the room, and informed of the Midshipmen Honor Board's recommendations by the Presiding Officer. The Presiding Officer will read the following:

> **"Midshipman (Name), for this case of admitted guilt, the Board will forward a recommendation for separation to the Superintendent."**

The Presiding Officer will remind the accused that final action on the case will be taken by the Superintendent, and announce:

> **"The testimony of this Board is confidential and is not to be discussed at any time.  This includes the statements of any individual participating in the hearing, including the names of the Voting Board members. Only after final action by the Superintendent may these matters be discussed outside of this hearing."**

> **"This Board, hearing case_____is now closed pending the Superintendent's final action."**

R.     If the recommendation is retention, the Presiding Officer will initiate a discussion of sanctions that Hearing Members may recommend.  The sanctions may include any combination of the following: suspension with setback to succeeding class, demerits, restriction, extra duty, and/or participation in an honor remediation program.  When the Presiding Officer believes that the members have reached a point in the discussion where a vote is appropriate, he/she will distribute ballots calling for votes on the sanctions

31

discussed.  All members shall cast a vote and a majority vote (5 of 9) is required to approve a sanction short of separation.

Following the completion of the above procedures, the accused, his/her advisor, and all observers will be brought into the room, and informed of the Midshipmen Honor Board's recommendations by the Presiding Officer. The Presiding Officer will read the following:

> **"Midshipman (Name), for this case of admitted guilt, the Board will forward a recommendation for retention to the Superintendent. In addition, the Board will recommend retention with the following sanctions: _____.  You are reminded that the only possible penalty for a further honor violation on your part is disenrollment from the academy."**

The Presiding Officer will remind the accused that final action on the case will be taken by the Superintendent, and announce:

> **"The testimony of this Board is confidential and is not to be discussed at any time.  This includes the statements of any individual participating in the hearing, including the names of the Voting Board members. Only after final action by the Superintendent may these matters be discussed outside of this hearing. "**

> **"This Board, hearing case_____is now closed pending the Superintendent's final action."**

## 305.  RHBC's Action

Following the hearing, the RHBC shall forward the case to the Honor Board Advisor, with the jury's recommendation and the RHBC's recommendation.  The RHBC will review the case with the Honor Board Advisor for procedural accuracy.

## 306.  Honor Board Advisor's Action

The Honor Board Advisor shall review the file and recommendations for procedural accuracy.  If he or she determines that procedural errors occurred, the Honor Board Advisor will take appropriate steps to correct them to the extent possible.  The Honor Board Advisor will forward the entire file, with his or her recommendation, to the Commandant.  If the Honor Board Advisor finds that errors committed prejudice the outcome of the case (such as a violation of the rights of the accused), he or she may recommend that the case be dismissed.

## 307.  Commandant's Action

32

Upon receipt of the file, with the recommendations of the jury, the RHBC and Honor Board Advisor, the Commandant will review the case and forward the entire file, with his recommendation, to the Superintendent.

## 308.   *Superintendent's Review of Honor Proceedings and Final Action*

The Superintendent reviews the case and the findings of the Formal Hearing and renders a final decision regarding the sanctions imposed.  In the event of a *not guilty* decision, the case file will be placed in the *not guilty file* and stored for four years.

If the sanction of a guilty decision is *disenrollment,* and this sanction is upheld by the Superintendent, the accused may then proceed with a written appeal to the Maritime Administrator, as set forth below in Section 310.

## 309.   *Notification of the Accused as to the Superintendent's Final Decision*

The Superintendent will notify the Accused of the decision through a written statement containing the basis for the decision and the sanction imposed. The Honor Board will then publish the final decision to the Regiment, Faculty and Staff in a XYZ report.

## 310.   *Appeals*

A.   If the Accused wishes to make an appeal to the Honor Advisor regarding *procedural* matters, he or she shall be allotted 24 hours following the adjournment of the Formal Hearing to submit a written appeal to the Superintendent.

B.   If the Accused receives a sanction other than disenrollment, he or she may appeal that sanction to the Superintendent.  The Accused must notify the Superintendent, in writing, by close of business of the next business day after receiving the decision of his or her intent to appeal and must submit the written appeal to the Superintendent no later than seven days after receipt of the decision.  The Superintendent may, if he or she so chooses, meet with the Accused and/or his or her Advisor, prior to issuing a decision on the appeal.  The Superintendent's decision on appeal is final.

The Superintendent will notify the Accused, the Honor Board Advisor, the RHBC, and the Commandant of the decision.  The Accused should then contact the Honor Board Advisor to commence remediation.

C.   Appeal of Disenrollment Decision

1.   If the Accused is disenrolled and wishes to appeal his or her disenrollment, he or she must notify the Superintendent, in writing, by close of business of the next business day after receiving the decision of his or her intent to appeal to the Maritime Administrator.  If the Accused

33

does not appeal the disenrollment, the Accused shall proceed immediately with checkout procedures.

2.      Such appeal will be submitted, in writing, to the Superintendent no later than seven (7) days after receipt of the decision.

3.      The Superintendent will forward the appeal to the Maritime Administrator, with his or her recommendation.  A copy of the Superintendent's recommendation will be provided to the Accuse and his or her Advisor.

4.      The Accused is entitled to remain at the Academy pending consideration of his or her appeal, including, as appropriate, in a deferred graduate status, provided that the Accused abides with all Academy policies, including the Midshipman Regulations.  If the Accused is enrolled in classes during the pendency of the appeal, he or she will continue in those classes.  If the Accused is scheduled to depart for sea year or an internship during the pendency of the appeal, he or she will remain on board at the Academy until a decision has been reached.

5.      If the Maritime Administrator upholds the disenrollment decision, the Accused will be disenrolled immediately upon receipt of the Maritime Administrator's written decision.  If the Maritime Administrator finds merit in the appeal, his or her written decision should include a statement of the reasons therefor.


*311.   Records of Honor Board Proceeding*

A.      Proceedings of the Honor Board will be electronically recorded. Original case files and recordings will be retained by the Honor Board Advisor and the Midshipman Honor Board for a period of four years after final action has been completed. The case files and recordings may be requested by any reviewing authority in the Honor Board chain of command, including the Maritime Administrator.

B.      Each year, the RHBC will insure that all records are complete and that records over four years old are destroyed. At the end of each academic year, the RHBC will report in writing on the total number of Honor Cases reported, investigated, and heard by the Honor Board, to the Commandant and Superintendent.

C.      The RHBC will ensure that all Honor Board rules and regulations have been complied with before turning the records over to his or her successor.

34

*312.  Honor Remediation*

A.    General. Any midshipmen found guilty of an honor violation will be assigned to Honor
        Remediation.  Honor Remediation is conducted under the oversight of the Director of
        Ethics, who shall at his/her discretion conduct the Remediation personally or permit the
        midshipman undergoing Remediation to nominate another individual to supervise the
        Remediation.  This individual must be an employee of the Academy and will normally
        be a commissioned officer and/or member of the faculty.  This additional duty is
        voluntary. Honor Remediation is both punitive and developmental.  In fact these two
        purposes are linked, since the restrictions and sanctions placed on a midshipman
        undergoing Remediation are intended to remove distractions and to ensure that the
        midshipman fully grasps the immediate need for self-correction.  Midshipmen will
        remain in a remediation status for at least 120 days, or longer at the discretion of the
        remediation supervisor, Director of Ethics, or Commandant.  Remediation officially
        begins with the Superintendent's decision and completion of all appeals.

B.    Restrictions.  All midshipmen found guilty of an Honor violation and undergoing
        Remediation will be subject to the following restrictions for the duration of the
        remediation.

        Restriction to conduct probation limits.

        Loss of all class privileges.

        No TMs, other trips, leave or liberty (unless approved on a case by case basis in writing
by the Commandant).

        Midshipmen in a remediation status are ineligible for intercollegiate or club athletics,
waterfront activities, or trips associated with Midshipmen clubs.

        Midshipmen in a remediation status will not be released for sea duty.  Midshipmen who
are returned to the Academy for an honor violation during sea year who are placed in
remediation status will not return to sea until remediation is complete.

C.    Required.  All midshipmen undergoing Remediation will be required to complete the
        following, under the direction of the Remediation Supervisor.

        Keep a journal of ethical challenges, leadership opportunities, and personal development
throughout the period of Remediation.

        Meet with or report to the Remediation Supervisor at least once a week.

        Perform 50 hours of Extra Duty, at least 20 of which should be community service.

35

# EXHIBIT 2



### UNITED STATES MERCHANT MARINE ACADEMY
### KINGS POINT, NEW YORK
### REGIMENTAL HONOR BOARD

### DELIBERATION RESULTS

Date: 25 SEP 18

A Formal Hearing was convened on (date) 19 SEP 18 for the accused, MIDN Benjamin Sell, 1/C.

The possible honor violation presented before the voting members was:

### LYING / CHEATING / STEALING

**The ballot results are as follows:**

| Guilty | N/A | Not Guilty | N/A |
|---|---|---|---|
| Separation | 0 | Retention | 9 |
| Setback | 0 | Remediation | 9 |

*In a case of "Not Guilty," a two-thirds majority (6/9) vote is required for determining the accused midshipman as guilty.
**In a case of admitted guilt, a two-thirds majority (6/9) is required for recommending separation.
***If the Presiding Officer fails to receive a two-thirds majority vote in either case, the accused will be considered "Not Guilty," or retained.

**Sanctions Imposed:**
(if the accused is found "Not Guilty," the case will be recommended to the Commandant or dismissed)

120-day Honor Remediation

Presiding Officer Name: MIDN LCDR Tyler Wickesberg, 1/C

X _____

Case No.: 2018-9

HB-14



RETENTION

SEPARATION



RETENTION

SEPARATION



RETENTION

SEPARATION



RETENTION

SEPARATION



RETENTION

SEPARATION



RETENTION

SEPARATION



RETENTION

SEPARATION



RETENTION

SEPARATION



RETENTION

SEPARATION

# SET BACK

## HONOR REMEDIATION

### Additional Recommendations:

- rey planning (all classes)
- see your lecture
- store made & give later pretings
- CHBCPD 2nd sen

SET BACK



HONOR REMEDIATION

Additional Recommendations:

APOLOGIZE TO HUMANITIES DEPT
REG. HONOR TRAINING LECTURES

SET BACK

HONOR REMEDIATION

Additional Recommendations:

Retention w/ Sea year Lecture Appearance,
Holding a reg Period honor class in each
Company & Acting as the accused for
INDOC honor board cases.

SET BACK

HONOR REMEDIATION

Additional Recommendations:

- WRITTEN AND PERSONALLY DELIVERED APOLOGIES
  TO HUMANITIES
- REG TRAINING
- SEA YEAR LECTURE

SET BACK

HONOR REMEDIATION

Additional Recommendations:

TALK To oTHER CLASSES/ MAKE A REG POSITION

FOR EACH COMPANY ABOUT THIS

SET BACK



## HONOR REMEDIATION

Additional Recommendations:

Sea year lectures Re, Periods.

Honor Classes

SET BACK



## HONOR REMEDIATION

Additional Recommendations:

' TEACH HONOR AT INDOC 2023
, BRIEF COMPANYS DURING REG PERIOD
, COMPLETE HONOR CLASS

SET BACK



HONOR REMEDIATION

Additional Recommendations:

_____

_____

_____

_____

_____

SET BACK

HONOR REMEDIATION

Additional Recommendations: _____

# EXHIBIT 3



**UNITED STATES MERCHANT MARINE ACADEMY**

**REGIMENTAL HONOR BOARD**

Date: 25 SEP 18

To:      RADM James A. Helis, USMS, Superintendent
Via (1): LCDR Stephen McDade, USN, Honor Board Advisor
Via (2): CAPT Mikel E. Stroud, USMS, Commandant of Midshipman

From:  MIDN LCDR Tyler Wickesberg, RHBC

Subject: Honor Board Recommendation for MIDN 1/C Benjamin Sell, Case 2018-9

RADM Helis,

       In regards to MIDN Sell's case, the Honor Staff must disagree with the jury's
recommendation.  The jury unanimously voted to retain MIDN Sell and recommended he
participate in the 120-day remediation program.  The Honor Staff disagrees and believes MIDN
Sell should be setback to the class of 2020.
       There is no question as to whether or not MIDN Sell committed an honor offense.  In
fact, the way MIDN Sell cheated and stole someone else's work is as blatant as could be.  At the
time of the offense, MIDN Sell was behind on sea projects and experiencing the pressure from
running out of time.  Additionally, MIDN Sell was already in a "deficient sailor" status for
failing first sailing projects, and feared he would automatically be setback or disenrolled if he
failed to complete all of his second sailing projects.  As a result, MIDN Sell consciously
submitted work that was not his own; however, he only submitted two parts of a three-part
project, which would have been enough criteria for failure, regardless if the work was his own or
not.
       When asked if he was aware of the consequences for turning in someone else's work,
MIDN Sell responded that he was aware he would probably be caught, he was aware that an
honor board could follow suit, and he was aware that the results of the honor board process could
be worse than not turning in the project.  When asked why he did not turn in all three parts of the
project, MIDN Sell responded that he recognized what he did was wrong and could not bring
himself to turn in a third, plagiarized part.  This fact resonated with the jury and convinced them
that MIDN Sell felt remorse for his actions.
       MIDN Sell's claims may be true, however, the Honor Staff will not overlook the fact that
MIDN Sell *consciously and deliberately* chose an alternative that compromised his honor.  This
fact alone demonstrates a lack of foresight, maturity, and responsibility.  MIDN Sell's reaction to
a stressful situation presents an overall flaw in his character.
       The majority of the jury members empathized with the circumstances that forced MIDN
Sell to do what he did.  Because all the jury members understand the fatigue and panic that sets
in at the end of sea year, the Honor Staff believes their recommendation would have been the
same if an underclassman was in the same predicament.  Furthermore, the Honor Staff believes
the jury was more empathetic to MIDN Sell because they believed he was remorseful.  Their
empathy was demonstrated through their deliberations.  The jury members seemed to have made
up their mind fairly early in the trial and as a result, the deliberation seemed to be more of a
formality than anything else.  The jury members failed to ask the "hard-hitting" questions, in
particular about his character, and failed to see the severity of MIDN Sell's actions.  Granted,
cheating in this context is hard to relate to larger scale situations, but it is the approach and
intention in which the actions were committed that should be scrutinized.



## UNITED STATES MERCHANT MARINE ACADEMY
### REGIMENTAL HONOR BOARD

The Honor Staff does not condone MIDN Sell's actions and believes he would best benefit from a setback to the class of 2020. Because he never took ownership of his actions and apologized, or even attempted to apologize, MIDN Sell failed to convey and convince his remorse to the Honor Staff. He failed to articulate how he contributes to the academy, how he helps those around him, and why he should remain onboard. The Honor Staff believes a year away from the academy will be a humbling experience for MIDN Sell and will allow him the time to truly reflect on his morals and values and how those are demonstrated through his actions.

MIDN Sell did exhibit somewhat of an attitude and gave the impression that he did not care throughout the entire honor board process, however the Honor Staff does not recommend disenrollment. The Honor Staff believes the reality of receiving a setback so close to graduating may be the equivalent of realizing all men are mortal. The staff hopes the recommendation will weigh on MIDN Sell and if he truly cares and wishes to contribute to the benefit of others and not just himself, he will return—if he is stuck in his ways and mindset, then he will not. From the Staff's perspective, MIDN Sell possessed little awareness of integrity before this incident, but has the potential to learn, given the proper time away from the academy and through the honor remediation program upon his return.

Very Respectfully,

*Tyler Wickesberg*

MIDN LCDR Tyler Wickesberg
Regimental Honor Board Chairman

# EXHIBIT 4



**UNITED STATES
MERCHANT MARINE ACADEMY**

**Honor Board Advisor**

September 28, 2018

From:    LCDR Stephen J McDade, USN
             Regimental Honor Board Advisor
*Via:*      *CAPT Mike Stroud, USMS*
             *Commandant of Midshipmen*

To:        RADM James Helis, USMS
             Superintendent, USMMA

Subject:   Honor Advisor Recommendation for MIDN 1/C Benjamin Sell , 2018-09

RADM Helis,

     It is my recommendation, in Case 2018-09, that MIDN 1/C Benjamin Sell be separated from The Academy.

MIDN Benjamin Sell, 1/C stood trial, 19SEP2018, for an Honor Offense in front of nine USMMA Midshipmen and The Regimental Honor Board Staff. Recommendations from the jury were for Guilty with the following sanctions; Retention and 120 Days of Honor Remediation. After reading all documents and reviewing all material, I disagree with the jury's recommendation.

     MIDN Sell was a 1st class midshipman at the time of the incident, returning to campus for his 7th trimester in residence. This case was one of admitted guilt. MIDN Sell only provided three character statements and none on the professional level. All three were from his classmates. MIDN Sell's current transcript has 7 F's and 3 D's. His conduct record represents one that shows he has been stuck for the same infractions multiple times (Disregard of Orders, Improper Liberty Procedure).

     Overall, in my judgment, MIDN Sell has had three years to 'right the ship' and present himself to be a worthy of graduating from USMMA. He has not done so. This recent offense, a paper 98% plagiarized, shows his total disregard for honor and integrity.

Very Respectfully Submitted,

Stephen J McDade
LCDR,   USN
Honor Advisor

# EXHIBIT 5



**SUPERINTENDENT**
**UNITED STATES MERCHANT MARINE ACADEMY**
KINGS POINT, NEW YORK 11024-1699

11 October 2018

From: Superintendent

To: MIDN Benjamin Sell, 2019

Subj: Superintendent's Decision, Honor Board of 19 September 2018

Upon review of your case, I have decided to affirm the finding of the Honor Board that you are guilty of lying and direct the following actions:

1. You will complete Term 1, Academic Year 2018-19 and then placed on leave of absence. You will depart the Academy for your leave of absence on a date determined by the Commandant of Midshipmen. You will not depart the Academy until any outstanding board actions are completed.

2. You will return to the Academy and be set back to the Class of 2020 on a date to be determined jointly by the Academic Dean and Provost and Commandant of Midshipmen but no earlier than the start of Term 3, Academic Year 2018-19. You will resume your academic studies, to include remediation of failed sea projects, with a schedule as determined by the Academic Dean and Provost.

3. During your leave of absence, you must complete 50 hours of community service, which must be documented in writing by the agencies or organizations you are supporting. You must also enroll in and pass a college-level ethics-based course prior to returning to the Academy. The course must be approved in advance by the Commandant or his designated representative.

4. You will report your progress to the Commandant or his designated representative every thirty days during your leave of absence.

5. Prior to joining the Class of 2020, you must take and pass a Physical Readiness Test as administered by the Commandant or his designated representative. You will receive instructions for the time and place of the PRT from the Commandant's Office.

6. Upon return to the Academy, you will undergo an honor remediation program in accordance with Paragraph 312 of the June 2015 Honor Manual. The Commandant of Midshipmen will designate an officer to serve as your remediation officer. At the discretion of the Commandant, remediation activities may be assigned during your leave of absence. These activities will not shorten the 120-day remediation period once you return to the Academy.

7. You will comply with all Remediation restrictions in Paragraph 312B of the June 2015 Honor Manual. You must request any exception in writing through your chain of command to the Commandant of Midshipmen, who will make a decision. The Commandant's decisions on exceptions to restriction are final. The Commandant may not delegate the authority to decide exceptions to restriction. You are ineligible for Sea Duty until your remediation is complete.

8. If the Commandant determines your remediation was unsuccessful you will be referred to an Executive Board or Superintendent's hearing and may be disenrolled from the Academy.

You may appeal this decision in accordance with Paragraph 310B of the June 2015 Honor Manual.

By copy of this memorandum, the Office of the Dean, Commandant of Midshipmen, and Registrar are directed to implement this decision immediately.

Sincerely,

James A. Helis
Rear Admiral, USMS
Superintendent

Encl:   Acknowledgement of Decision

cc:     Office of the Dean
        Commandant of Midshipmen
        Registrar

EXHIBIT 6

UNITED STATES MERCHANT MARINE ACADEMY
KINGS POINT, NEW YORK

From:      MIDN Benjamin Sell, 2019

To:        Superintendent

Subj:      Superintendent's Decision re:
           Honor Board of 19 September 2018

I am in receipt of the Superintendent's Decision of 11 October 2018 concerning the Honor Board which was convened to inquire into my conduct.

I acknowledge the terms set forth in that decision, my responsibilities to abide by them, and the consequences should I fail to do so.

I acknowledge that I have until the close of the business day after receipt of this notice to provide the Superintendent written notice of my intent to appeal this decision. I acknowledge that I must submit my appeal in writing no later than seven days after receipt of this decision.

_____                    10/11/18
Midshipman Benjamin Sell                               Date

This acknowledgement shall be hand delivered to the Office of the Superintendent within 24 hours.

# EXHIBIT 7



**UNITED STATES MERCHANT MARINE ACADEMY**
OFFICE OF THE COMMANDANT OF MIDSHIPMEN
300 STEAMBOAT ROAD
KINGS POINT NEW YORK 11024-1699

12 Oct 2018

From:   Commandant of Midshipmen
To:     Superintendent (interim) of United States Merchant Marine Academy

Subj:   RECOMMENDATION FOR EXECUTIVE BOARD SUITABILITY HEARING ICO
        MIDN 1/C BENJAMIN SELL

Ref:    (a) Superintendent Instruction 2018-07; Midshipman Regulations
        (b) Superintendent Instruction 2017-02; Physical Fitness Assessment

Encl:   (1) Superintendent's Letter, Honor Board decision
        (2) Email correspondence in reference to Midn Sell's ARB
        (3) Email from PFA coordinator.

1.  IAW Ref (a) and (b), I am recommending Midn 1/C Sell appear before an Executive Board
to determine his suitability to remain in the Regiment of Midshipman. His conduct is not what is
expected and certainly is not reflective, or worthy, of the distinction of being a "Kings Point
graduate".

2.  Midn 1/C Sell recently stood an Honor Board for Cheating Encl (1). The Superintendents
decision was Setback. Prior to this board Midn Sell was presented to the Academic Review
Board and the Superintendent decided that Midn Sell would be placed on Deferred Graduate
status in order to complete his failed Sea Year Projects, Encl (2).

3.  Additionally, Midn 1/C Sell has received multiple PFA failures, Encl (3).
    a.  AY 2016 T1 – Failed
    b.  AY 2016 T3 – Failed
    c.  AY 2018 T1 – Failed
    d.  AY 2019 T1 – Failed (unexcused absence)

4.  In light of Midn 1/C Sell's failures in Honor, Academics, maintaining PFA standards I
recommend convening an Executive Board to determine the suitability of Midn 1/C Sell to
remain in the Regiment of Midshipman.

MIKEL E. STROUD
Captain      USMS

# EXHIBIT 8

# United States Merchant Marine Academy



# Midshipman Regulations 2018

# TABLE OF CONTENTS

**Chapter 1 – SCOPE**
1.1     Background
1.2     Purpose
1.3     Responsibility for Implementation
1.4     Jurisdiction
1.5     Professional Ethics
1.6     Integrity
1.7     Oath
1.8     Duty
1.9     USMMA Core Values and Guiding Principles
1.10    Regimental System

**Chapter 2 – ROUTINE EVENTS**
2.1     Priority of Routine and Orders
2.2     Reveille
2.3     Sick Call
2.4     Formation and Meal
2.5     Quiet Study Period
2.6     Call to Quarters
2.7     Liberty
2.8     Leave Procedures
2.9     Barracks Life
2.10    Visitors Policy
2.11    Class Rates
2.12    Hold-Over Policy
2.13    Team and Club Movements (TMs)
2.14    Restriction
2.15    Extra Duty

**Chapter 3 – STANDARDS OF CONDUCT**
3.1     General
3.2     Accidents
3.3     Floating Equipment
3.4     Motor Vehicles
3.5     Alcohol, Drugs, and Smoking
3.6     Relationships
3.7     Midshipman Safety and Conduct
3.8     Hazing and Bullying
3.9     Discrimination and Harassment
3.10    Retaliation
3.11    Sexual Misconduct
3.12    Sexual Assault, Sexual or Gender-Based Harassment, Relationship Violence, Stalking, and Sexual Exploitation
3.13    Sea Year Conduct
3.14    Spirit Related Activities
3.15    Etiquette
3.16    Physical Appearance and Uniforms

## Chapter 4 – DISCIPLINARY SYSTEM

4.1     Purpose
4.2     Rights and Obligations during Conduct Proceedings
4.3     Reporting
4.4     Organization of the Academy Conduct System
4.5     Sanctions for Misconduct
4.6     Interim Sanctions
4.7     Midshipman Disciplinary Files and Records

## Chapter 5 – MIDSHIPMAN PERFORMANCE REVIEW BOARDS

5.1     General
5.2     Rights of the Midshipman
5.3     Performance Review Board Membership
5.4     Responsibilities of the Deputy Commandant/Regimental Officer
5.5     Responsibilities of the Company Officer to the Midshipmen
5.6     Responsibilities of the Midshipmen's Company Commander
5.7     Midshipman Performance Review Board Procedures
5.8     Performance Review Board Results
5.9     Decision by the Commandant

## Chapter 6 – EXECUTIVE BOARDS/SUPERINTENDENT'S HEARINGS

6.1     General
6.2     Executive Boards
6.3     Rights of Midshipmen
6.4     Pre-Hearing procedures
6.5     Procedures for Disciplinary Hearings Before the Executive Board or Superintendent
6.6     Procedures for Suitability Hearings Before the Executive Board or Superintendent
6.7     Decision by the Superintendent
6.8     Midshipman's Request for Reconsideration to the Superintendent
6.9     Appeal to the Maritime Administrator

# CHAPTER 1 – SCOPE

## 1.1 BACKGROUND

1. The Regiment of Midshipmen are a select group of women and men who were chosen to serve the national security, marine transportation, and economic needs of the United States as licensed Merchant Marine Officers and commissioned officers in the Armed Forces.  The Regiment is predicated on a structure relying on community (Regimental) obligations with the purpose of bringing out the highest standard of moral and ethical strengths of the individual while simultaneously developing a strong sense of self-discipline, camaraderie, responsibility, pride, and professionalism.  In short, the Regiment's goal is to build ethical and principled leaders who make sound judgments that foster a positive and healthy work and social environment. The embodiment of the "Regimental way" is the development of leadership skills that are necessary for an individual entering the U.S. Merchant Marine and Armed Forces. Midshipmen are expected to maintain the highest standards of self-discipline and to enforce the standards of conduct outlined in these Regulations.

2. Merchant Marine Officers are licensed professionals who are educated to serve as leaders and who must be able to make difficult, high-stakes decisions affecting life and property, often in unknown and dangerous environments.  The demands and expectations of Merchant Marine Officers are completely different from those of individuals engaged in conventional commercial activities. Merchant Marine Officers are trained leaders that look beyond short-term profitability and make decisions affecting the safety of their shipmates and the vessel capabilities.  The conventional corporate structure requires development of good management, whereas the seagoing profession requires strong leadership, sound judgment, and principled conduct in demanding and tactically challenging situations.  The USMMA graduate is educated to possess both management and leadership acumen that is well beyond that of individuals much more seasoned and in a civilian role.

3. The Academy is required by the U.S. Department of Transportation, Maritime Administration, as directed by the Merchant Marine Education and Training Act of 1980 to have formal rules governing the operation of the Regiment.  These Midshipman Regulations fulfills this requirement.

## 1.2 PURPOSE

1. The primary purpose of the Midshipman Regulations is to further the educational mission of the Academy and to protect the well-being of the Academy community. These Regulations help foster an environment that is conducive to learning, promotes the Academy's educational purposes, provides order on campus, and protects the rights of all members of the Academy community. These Regulations also help develop ethical character, personal accountability, and civility toward others. All Midshipmen are required to review and comply with these Regulations. Compliance with the Midshipman Regulations is a requirement for all Midshipmen to maintain enrollment at the Academy as well as to graduate.

## CHAPTER 4 – DISCIPLINARY SYSTEM

### 4.1 PURPOSE

The Academy is committed to maintaining a safe, healthy and respectful environment in which Midshipmen may pursue their academic goals.  The Academy seeks to instill in Midshipmen self-discipline as a daily way of life, to correct Midshipmen whose conduct is not in accordance with prescribed standards, and when necessary, to separate Midshipmen who are unwilling to conform to the minimum standards of conduct required at the Academy.

### 4.2 RIGHTS AND OBLIGATIONS DURING CONDUCT PROCEEDINGS

1. A Midshipman has the following rights during a conduct proceeding that has reached the level of a Mast (Rights a. through d. also apply to any investigative meeting held with the Investigating Officer):

    a. To remain silent and not have that silence used against him/her.

    b. To receive a written statement of the charges against him/her, in accordance with the provisions of the Midshipman Regulations.

    c. To receive adequate notice of dates set for Mast, and any related conferences and/or meetings.

    d. To review the disciplinary case file maintained by the Commandant's Office prior to a Mast and/or appeal.

    e. To present witnesses and submit any pertinent, supportive documentation.

    f. To have a closed Mast hearing unless he/ she provides written permission for others to attend.

    g. To receive a written statement of the outcome of the proceeding, and a description of the appeal procedure.

    h. To appeal the Mast decision, subject to the provisions of the Midshipman Regulations.

2. In any investigation or inquiry made pursuant to the Midshipman Regulations, it is the duty of every Midshipman to fully answer every question as to facts within their knowledge, no matter who, except themselves, may be incriminated by their answer.

### 4.3 REPORTING

1. Any member of the Academy community may initiate a complaint against a Midshipman for an alleged violation of these Regulations through the Commandant. A complainant shall submit the complaint to the Commandant within a reasonable amount of time from the date he/she becomes aware of the alleged violation of the conduct system.  All complaints will be reviewed by the Commandant's Office for possible Midshipman Regulations violations, except that all complaints

of sexual assault, sexual or gender-based harassment, relationship violence, stalking or retaliation will be handled in accordance with the appropriate Superintendent Instructions.

2. **CHARGES AND NOTICE**

   a. The Commandant's Office will investigate each complaint, and if the circumstances surrounding the complaint indicate that a violation of these Regulations may have occurred, disciplinary charges will be issued. The Midshipman will be notified of the charges in writing. However, if the disciplinary charge(s) might warrant deferred graduation, a setback, or disenrollment, the Commandant's Office will make a recommendation to the Superintendent to conduct either an Executive Board or a Superintendent's Hearing on the disciplinary charge(s).

   b. Proper written notice to a Midshipmen will include the following:

      1) A recitation of facts surrounding the incident, in as sufficient detail as possible, including date, time, and location.
      2) A statement of the specific offense committed in violation of these Regulations.
      3) The amount of time in which the Midshipman has to respond to the notice.
      4) The ramifications of not responding to the notice within the time limit.
      5) A copy of the rights of a charged Midshipmen in conduct proceedings, listed in 4.2.1 above.

   c. The Commandant's Office may place a disciplinary hold on a Midshipman's academic record and/or may go forward with disciplinary action against a Midshipman in either of the following situations:

      1) The Midshipman fails to respond to a charge letter within the applicable time limit.
      2) The Midshipman withdraws from the Academy after allegedly committing a violation, whether or not the Commandant's Office has yet had the opportunity to charge the Midshipman with a violation.
      3) The Midshipman fails to appear at his/her scheduled Mast or appeal hearing.

## 4.4 ORGANIZATION OF THE ACADEMY CONDUCT SYSTEM

Any violation of these Regulations is subject to disciplinary action. In cases where a violation is committed by an individual member or members of a Midshipman organization, the organization may be subject to sanctions, in addition to the individual member, when those members not directly involved participate in the activity by encouraging, witnessing or condoning the act in any manner. Violations will be classified as either **Class I** or **Class II offenses**.

1. **CLASS I OFFENSES.** Class I offenses are serious and/or deliberate violations of the standards of conduct. Class I offenses may result in the following sanctions:

   a. Assignment of not more than 50 demerits per Class I charge.

   b. Assignment of 1 hour of Extra Duty (ED) per every 5 demerits.

   c. Assignment of Restriction of no more than 60 days per Class I charge.

d.  Refer for counseling services.

e.  Referral to a Performance Review Board (PRB) to determine suitability to remain at the Academy.

f.  Referral to Executive Board or a Superintendent's Hearing in cases of offenses sufficiently severe that they may warrant deferred graduation, setback, or disenrollment.

g.  Class I Offenses include the following:

    1)  **Absent Without Leave or Over Liberty over 60 minutes**
    2)  **Aiding and abetting another in any violation of laws and/or Academy policies**
    3)  **Alcohol; Unauthorized use and/or possession of**
        a)  Serving/providing to an individual under the legal drinking age
        b)  Unauthorized possession or consumption of alcohol on Academy grounds regardless of age is an alcohol violation
    4)  **Assault/Personal Combat; with intent to do harm**
    5)  **Authority; flagrant unwarranted assumption of**
    6)  **Breach of Restriction**
    7)  **Bullying, Physical Abuse, or Endangerment**
    8)  **Conduct that prejudices good order and discipline, or reflects discredit on the Academy or on the Midshipman**
    9)  **Cruelty, Hazing, Oppression, Personal Servitude or Maltreatment of any person**
   10)  **Disrespect to superiors; in manner, language, or tone**
   11)  **Drugs; possession of, use of, sale of, or possession of paraphernalia**
   12)  **Duty: Improper performance of;**
        a)  Through neglect
        b)  Causing endangerment
        c)  So as to be disruptive in nature
   13)  **Failure to Comply with Academy personnel or policies**
   14)  **Falsification/Fraud/False Testimony**
   15)  **Failure to comply with Academy or shipboard rules or regulations**
   16)  **Fire and Safety Alarms; setting off or tampering of**
   17)  **Fraternization**
   18)  **Gambling for money or other items of value**
   19)  **Gross Lack of Good Judgment**
   20)  **Harassment or Discrimination**
        a)  Harassment or discrimination complaints based on race, national origin, color, religion, gender, age, sexual orientation, disability, marital status, genetic information or any other status protected by law will be handled in accordance with the applicable Superintendent Instructions.
        b)  Harassment complaints that are not based on a protected category set forth in the preceding subparagraph will be handled in accordance with this Disciplinary System.
   21)  **Information Technology; Unauthorized use of**
        a)  Any act in violation of law and/or Academy policies and guidelines regulating computer-related use.

22) **Insubordination**
23) **Missing Movement**
    a)  This includes buses, vessels, aircraft transportation to or from vessel assignments, ground transportation to or from vessel assignments, or Academy vehicles.
24) **Moral Turpitude; Indecent acts; Indecent exposure**
25) **Property/Facilities/Services;**
    a)  Endangering or hazarding.
    b)  Willful destruction of Federal, or another's
    c)  Unauthorized entry into Academy facilities
26) **Retaliation**
    a)  Retaliation complaints will be handled in accordance with the applicable Superintendent Instructions.
27) **Sexual Misconduct, Consensual, on Academy grounds/buildings/vessels**
28) **Sexual Assault, Sexual or Gender-Based Harassment, Relationship Violence, or Stalking**
    a)  Sexual assault, sexual or gender-based harassment, relationship violence, or stalking complaints will be handled in accordance with the applicable Superintendent Instructions.
29) **Violation of Academy Policy or Federal Laws**
29) **Watch;**
    a)  Absence from
    b)  Sleeping or malingering on
30) **Weapons/Firearms/Explosives/Fireworks; Unauthorized use and/or possession of**
    a)  Including non-lethal weapons.  Examples of such weapons may include, but are not limited to pellet guns, air-soft guns and paintball guns, or knives with illegal length blades.  Knife blades must be 4 inches in length or less.

h.  **Procedures for Class I Mast:**

1)  Investigation of Alleged Class I Violations

    a)  The Deputy Commandant will have reported Class I violations investigated by a Company Officer (Investigating Officer) other than the Midshipman's Company Officer or the reporting officer.
    b)  The Investigating Officer will, whenever possible, interview all those individuals involved with first-hand knowledge of the case and obtain written statements.
    c)  The Investigating Officer is to complete the investigation within five business days from the time being assigned, unless an extension is requested in writing to the Deputy Commandant and granted.

2)  Notice of Mast - Class I Mast will be conducted to adjudicate any of the infractions listed above, and may be combined with Class II offenses if they are part of the same incident. The Deputy Commandant will notify the Midshipman involved of the date, time and place of the Mast.

      a) At least 24 hours prior to Mast, the Midshipman involved will have the opportunity review all documentation relating to the charge.

3) Mast Processes - The following process will govern all Masts:

      a) All Class I Masts will be adjudicated by the Deputy Commandant or his/her designee, with the RC and/or RX, CO, and the Midshipman's CC/CX/PC. No other individuals will be present without the written consent of charged Midshipman

      b) The focus of inquiry in a Mast will be the determination of whether a violation of Academy rules occurred. Such inquiry will be totally unrelated to any criminal or civil actions against the Midshipman arising from the same incident.

      c) Formal rules of evidence will not apply to Mast, nor will deviations from these prescribed procedures necessarily invalidate a decision or proceeding unless significant prejudice to the charged Midshipman or the Academy may result.

      d) The charged Midshipman will be presumed to have not violated the Midshipman Regulations until it is proven otherwise.

      e) The burden of proof during a Mast will rest with the Academy. The Academy must prove its case by a preponderance of the evidence, meaning that the evidence, considered in its entirety, indicates that, more likely than not, the charged Midshipman committed the violation(s).

4) Disposition of Class I Mast

      a) The Deputy Commandant or his/her designee, with input from the RC and/or RX will adjudicate the Class I Mast and administer one of the following sanctions:

          (1) Clear the Midshipman of charges, if no violation has occurred.

          (2) Reclassify the violation as a Class II offense and adjudicate the Class II Offense.

          (3) Find the Midshipman responsible for the offense and assign sanctions in accordance to the Midshipmen Regulations, as listed above in paragraph (4.6.1.a – f)

          (4) Refer the Midshipman to a Performance Review Board (PRB) to determine suitability to remain at the Academy. In case where the Midshipman's suitability is in question, he/she will be referred to an Executive Board or a Superintendent's Hearing for final determination.

          (5) Refer the matter to the Academy Honor Board, which may accept or reject the referral in accordance with its procedures.

      b) Decisions of the Class I Mast will be in writing and delivered to the Charged Midshipman at the conclusion of Mast. If a violation is found, the decision will state what rule was violated, the behavior constituting the violation, and any sanctions issued.

5) Appeal of Class I Mast Results

a. Right to and Grounds for Appeal – The Midshipman may request that the Commandant review the decision rendered at the conclusion of the Mast process. The following are the only grounds for an appeal:

    i. There is new evidence of a substantive nature not previously available at the time of the hearing, which would have materially affected the decision.

    ii. There were procedural errors in the case or in the interpretation of Regulations serious enough to deny the Midshipman a fair hearing.

    iii. The severity of the sanction is disproportionate to the violation(s) committed in accordance with the Regulations.

b. Appeal Process - The steps to file an appeal are as follows:

    i. The Midshipman must submit a written, typed request for an appeal to the Commandant within five (5) business days from the date of the Mast. Unless extenuating circumstances can be shown, failure to appeal within the allotted time will render the Mast decision final.

    ii. The written request for an appeal must state the grounds for appeal (citing the appropriate grounds from the Para. 1 above), include a discussion of the evidence and facts in support of the appeal, propose a recommended solution, and include any supporting documentation that should be considered by the Commandant.

c. Appeal Hearing

    i. The Commandant, when possible, is not to exceed five (5) business days from the receipt of the written appeal to schedule a hearing for the appeal.

    ii. The Commandant shall call in the Deputy Commandant and the Midshipman to the appeal hearing.

    iii. The Midshipman may bring an advisor to the hearing. The advisor must be a member of the Academy community (other than a Chaplain, Counsel or Assistant Counsel to the Academy or a member of the Commandant's office). If the advisor is a Midshipman, he/she must a Midshipman in good standing.

    iv. On appeal, the burden of proof rests with the Midshipman to clearly exhibit that one of the three grounds for an appeal has been met; this is not a re-hearing of the entire case.

    v. Any sanction(s) issued at the Mast will not take effect until the appeal process is completed.

    vi. Deviations from these prescribed procedures will not necessarily invalidate a decision or proceeding unless significant prejudice to the charged Midshipman or the Academy may result.

d. Disposition of the Appeal

       i.    The Commandant may take one of the following actions:

            (1) Uphold the decision of the Mast in its entirety;
            (2) Decrease the sanctions imposed at the Mast; or
            (3) Dismiss the case against the Midshipman.

      ii.    The Commandant will send the written decision to the Midshipman within one (1) business day following the hearing.

2. **CLASS II OFFENSES.** Class II offenses are minor conduct breaches that do not warrant special consideration by either a Performance Review Board or an Executive Board, but may result in:

    a.    Assignment of not more than the pre-determined demerits for each offense.

    b.    Assignment of 1 hour of Extra Duty for every 5 demerits issued.

    c.    Class II offenses include the following:

\*\* Note: The number indicates the demerit amount allocated to each offense that may not be exceeded. The demerit amount may be lowered when mitigating circumstances exist.

**Academic Classes**:

| Offense | Demerits |
|---|---|
| Absent from class | 15 |
| Absent from Physical Fitness Examination, or remedial Physical Training | 15 |
| Late to class | 10 |
| Leaving class unauthorized | 10 |
| Engaging directly or indirectly in disruption within the classroom or academic building passageways | 15 |

**Accountability**:

| Offense | Demerits |
|---|---|
| Absent accountability check | 20 |
| Late to accountability check | 10 |
| Absent Regimental Formation, Function, Muster, or official scheduled activity | 20 |
| Late to Regimental Formation, Function, Muster, or official scheduled activity | 10 |
| Failure to log out | 05 |

**Appearance**:

| Offense | Demerits |
|---|---|
| Out of uniform | 10 |
| Belt buckle, unshined | 05 |
| Not properly shaven | 10 |
| Gross personal appearance | 15 |
| Haircut, in need of | 10 |
| Hands in pockets | 05 |
| Cover; dirty | 05 |
| Shoes unshined | 05 |
| Uniform, not properly striped | 10 |

**Duty**:

Interfering with an individual who is performing his duty...................................... 40
Gross failure to properly perform a duty ...................................................... 30
Late to watch, over 20 minutes.................................................................. 30
Neglect of duty ..................................................................................... 30
Sleeping on watch ................................................................................. 40
Improper performance of duty ................................................................ 20
Failing to correct a report of deficiency....................................................... 10
Demonstrating indifference toward the 4/C system........................................ 10

**Government Property**:

Losing drill rifle, sword, or other government equipment................................ 40
Damaging government property through carelessness or improper use.................... 30
Unauthorized use of government property................................................... 35

**Liberty**:

Absent over leave, 30 minutes or less......................................................... 20
Absent over leave, special liberty, or long weekend in excess of 30 minutes............. 40
Improper liberty procedures.................................................................... 15
Failure to turn in special liberty pass by 1200 the day after the expiration of liberty....... 10

**Mess Hall**:

Commissary gear, unauthorized possession of............................................... 10
Handling food before seats....................................................................... 10
Mess Hall Duties, improper performance of.................................................. 10
Improper Mess procedure......................................................................... 10
Causing a disturbance in the Mess Hall....................................................... 20
Failing to maintain discipline or expected standards of behavior in the Mess Hall........ 20
Removing any food from Delano Hall or galley unauthorized............................... 20

**Orders and Instructions**:

Failing to comply with specific written or oral instructions or orders of a
Commissioned officer........................................................................... 40
Continuing to violate or disregard instructions, orders, regulations, or corrections
which were previously promulgated............................................................. 30
Demonstrating gross ignorance of regulations or directives.................................. 25
Failing to comply with general instructions, orders, or regulations through neglect, laxness or
ignorance, **with minor effect**.................................................................. 15
Failing to comply with general instructions, orders or regulations through neglect,
laxness or ignorance, resulting in a **serious violation** of these directives................. 35

**Quarters**:

Reveille, violation of.............................................................................. 10
Bunk, not made.................................................................................... 05

Bunk, lying on unauthorized................................................................................05
Food on window sill.........................................................................................05
Articles hanging out of window.......................................................................05
Cleaning station not done...............................................................................10
Cleaning station improperly done...................................................................05
Inspection, not ready for.................................................................................10
Possession of unauthorized electrical equipment.........................................20
Lost key...........................................................................................................20
Preparing food in room...................................................................................20
Unauthorized furniture in room......................................................................10
Improper room arrangement...........................................................................10
Unstencilled gear.............................................................................................05
Inspection sheet, lack of or improperly written.............................................05
Linen, dirty......................................................................................................10
Gear adrift.......................................................................................................10
Room in gross disorder...................................................................................15
Improper door tag............................................................................................05
Unauthorized presence in watch office...........................................................10

**Standards of Behavior**:

Guest unauthorized..........................................................................................35
Unauthorized destruction of a report or document, including posted material
or official bulletin boards................................................................................25
Gross display of affection reflecting discredit on the Regiment of Midshipmen..........20
Engaged in unauthorized business activities...................................................35
Demonstrating conduct which reflects discredit on the Regiment of Midshipmen........35
Entering an unauthorized area outside prescribed Academy limits.................25
Absent unauthorized from prescribed Academy limits...................................40
Unprofessional relationship.............................................................................35
Failing to submit a report, or rendering an inaccurate report.........................20
Demonstrating gross laxness or inattention to detail in the submission of a
written report or muster....................................................................................15
Displaying insubordination toward a superior or individual in a position of
Authority..........................................................................................................20
Demonstrating conduct which reflects discredit on self..................................20
Discourteous conduct.......................................................................................20
Failing to demonstrate proper military courtesy..............................................10
Using obscene, profane or improper language.................................................10
Public display of affection...............................................................................10
Creating a disturbance......................................................................................15
Smoking unauthorized......................................................................................20
Unauthorized assumption of duty/authority....................................................20
Failing to safeguard government property.......................................................20
Removing articles from a building, room, locker, or classroom without the
permission of proper authority.........................................................................15

**Vehicles**:

Car, parked or driven aboard unauthorized……………………………………….... 15
Allowing unauthorized persons to operate vehicle…………………………………... 15

**Watches**:

Permitting unauthorized personnel in watch office………………………………….…10
Violation of watch standing orders…………………………………………………......15
Leaving watch post without proper relief……………………………………… 20
Gross negligence as to duties…………………………………………………… 20
Unauthorized log entries……………………………………………………….... 10

**Miscellaneous Regulations:**

Extra Duty, absent from………………………………………………………….... 15
Extra Duty, late to………………………………………………………………… 10
Extra Duty, leaving prior to completion……………………………………………15
Musters, late in submitting………………………………………………………… 10
Ranks, falling out of without authorization……………………………………….....15
Improper route of travel…………………………………………………………… 10
Improper conduct in ranks………………………………………………………….15
Unmilitary bearing………………………………………………………………… 10

    d.  Procedures for Class II Mast:

        1)  When a reporting official classifies a violation as a Class II, that individual will submit the report through CAMS or its replacement.

        2)  Once placed in the Conduct System, the charged Midshipman will receive an electronic notification that a charge has been initiated.

        3)  Within three (3) business day of receiving the notification, the charged Midshipman must report to the Regimental Officer (RO) or his/her designee indicating whether or not he/she wishes to make a statement. Failure to make a statement will be deemed acceptance of the charge as preferred.

        4)  When a charged Midshipman wants to make a statement, the following procedures apply:

            a)  First Class Midshipmen: The RO will review the statement and convene a Mast composed of the charged Midshipman with his/her CC to review the facts of the case. Based on the facts of the case, the RO will take one of the following actions:

                (1) Clear the Midshipman of charges; or

                (2) Assign appropriate sanctions as outlined in these Regulations.

            b)  Second through Fourth Class Midshipmen/Plebes: The Midshipman Battalion Commanders, under the supervision of the RO, will review the statement and convene a Mast composed of the charged Midshipman with his/her CC to review the facts of the case. Based on the facts of the case, they will take one of the following actions:

                (1) Clear the Midshipman of charges; or

                (2) Assign appropriate sanctions as outlined in these Regulations.

e.  Appeal of Class II Mast Results

1)  Right to and Grounds for Appeal - The Midshipman may appeal to the Deputy Commandant whose decision will be final. The following are the only grounds for an appeal:
    a)  There is new evidence of a substantive nature not previously available at the time of the hearing, which would have materially affected the decision.
    b)  There were procedural errors in the case or in the interpretation of the Regulations serious enough to deny the Midshipman a fair hearing.
    c)  The sanctions awarded at Mast were not in line with the standards set forth in the Regulations.

2)  Appeal Process– The steps to file an appeal are as follows:

    a)  The Midshipman must submit a written, typed request for an appeal to the Deputy Commandant within two (2) business days from the date of the Class II Mast.
    b)  The written request for appeal must state the grounds for the appeal (citing the appropriate grounds from Para. 1 above), include a discussion of the evidence and facts in support of the appeal, propose a recommended solution, and include any supporting documentation that should be considered by the Deputy Commandant.

3)  Appeal Hearing:

    a)  The Deputy Commandant, when possible, is not to exceed five (5) business days from the receipt of the written appeal to schedule a hearing for the appeal.
    b)  The Deputy Commandant shall call in all parties to the appeal to the hearing.
    c)  On appeal, the burden of proof rests with the Midshipman to clearly exhibit that one of the three grounds for an appeal has been met; this is not a re-hearing of the entire case.
    d)  Any sanction(s) issued at the Mast will not take effect until the appeal process is completed.
    e)  Deviations from these prescribed procedures will not necessarily invalidate a decision or proceeding unless significant prejudice to the charged Midshipman or the Academy may result.

3)  Disposition of the Appeal

    a)  The Deputy Commandant may take one of the following actions:

        (1) Uphold the decision of the Mast in its entirety;
        (2) Decrease the sanctions imposed by the Mast; or
        (3) Dismiss the case against the Midshipman.

      b) The Deputy Commandant will send the written decision to the Midshipman within one (1) business day following the Appeal decision.

3. **CONDUCT PERIODS:** Conduct periods are utilized to operate the Disciplinary System and commence the day of graduation and end on graduation day each year.

4. **CONDUCT GRADES**: Conduct grades will be determined on a Trimester basis in accordance with the following:

   a.  Total Demerits Assigned During a Conduct Trimester

| Conduct Grade | First Class Period | Second Class Period | Third Class Period | Fourth Class Period |
|---|---|---|---|---|
| A | 0-10 | 0-10 | 0-15 | 0-20 |
| B | 11-20 | 11-20 | 16-30 | 21-40 |
| C | 21-30 | 21-30 | 31-40 | 41-55 |
| D | 31-39 | 31-39 | 41-49 | 56-74 |
| F | 40 or over | 40 or over | 50 or over | 75 or over |

   b.  The following table sets forth the demerit boundaries for Midshipman conduct:

| Conduct Year | Conduct Counseling | Conduct Probation |
|---|---|---|
| Fourth Class Period | 75 | 150 |
| Third Class Period | 60 | 120 |
| Second Class Period | 55 | 110 |
| First Class Period | 50 | 100 |

    1) Conduct Counseling: The CO will personally meet with a Midshipman who has accrued sufficient demerits to be counseled on his/her conduct to mutually identify the reason(s) for the unsatisfactory conduct record, and advise the Midshipman how to develop a better approach toward achieving conduct standards. At the time of this meeting, the CO will give the Midshipman a letter detailing the number of demerits earned and expectations for participation in the Regiment. A copy of this letter, signed by the Midshipman and the CO, will be made a permanent part of the Midshipman's Company Jacket and the Midshipman's Personnel Jacket.

    2) Conduct Probation: The Deputy Commandant will place a Midshipman on official conduct probation when he/she accrues demerits as set forth above or, if warranted, when a Midshipman is found guilty of a Class I offense. At the time, the Deputy Commandant will meet with the Midshipman and his/her CO for the purpose of

discussing the Midshipman's record.  The Deputy Commandant will give the Midshipman a letter detailing the number of demerits earned by the time of the meeting, and explaining the terms of probation.  A copy of this letter, signed by the Midshipman and the Deputy Commandant, will be made a permanent part of the Midshipman's Company Jacket and the Midshipman's Personnel Jacket. Once placed on Conduct Probation, the Midshipman will be considered in a probationary status for the following 120 days not including holidays or Leave break periods.

## 4.5 SANCTIONS FOR MISCONDUCT

The purpose of the Academy discipline system is to be corrective and educational as well as punitive. The disciplinary process is intended to make clear to Midshipmen the limits of acceptable behavior and to give Midshipmen who violate the rules an opportunity to more fully understand the rules and incorporate the experience into his/her overall development. Assigned discipline may include a combination of sanctions for a particular incident.

1. **PROCESS AND SANCTIONS FOR A MIDSHIPMAN**

   a. **Mast System**: An official written statement of the Academy's disapproval of a Midshipman's actions. Formal reprimands may include the assignment of restriction, demerits, extra duty, marching tours, or reduction in Class Rates.

   b. **Conduct Probation**: An official notice that the Midshipman's conduct is in violation of these Regulations but does not warrant suspension or permanent dismissal. Probation is for a designated period of time and includes the probability of more severe disciplinary sanctions if the Midshipman commits another conduct violation during the probationary period.  The probationary period will be 120 days following being placed on Conduct Probation, not including holidays or Leave break periods. During Conduct Probation, a Midshipman will be considered "not in good standing" and will be excluded from some programs and curricular or extra-curricular activities, including:

      1) 1 Month restriction
      2) 50 demerit cap for probationary period
      3) Loss of all liberty and TM privileges
      4) Restricted from running for and/or holding office in any Midshipman organization.

   If the specified demerit total is exceeded during Conduct Probation, the Midshipman will be forwarded to a PRB.

   c. **Delay and/or Denial of Degree Award**: During the period disciplinary charges are pending against a Midshipman, the Academy may deny and/or delay issuance of a degree. Further, the Academy will not issue a degree to a Midshipman who is serving a suspension or has been permanently dismissed from the Academy.

   d. **Revocation of degree**: The Academy may revoke an awarded degree for violations of the Regulations that occur prior to the award of the degree but are discovered after the degree

has been awarded, where the violation is sufficient to justify the suspension or permanent dismissal of the Midshipman.

e.  Other secondary sanctions may be imposed instead of or in addition to those specified above. Secondary sanctions include, but are not limited to:

   1) Community Service
   2) Educational activities such as a reflective writing assignment or attendance at an event related to the violation committed. (e.g. alcohol workshop; diversity awareness training; ethics workshop)
   3) Restrictions (temporary or permanent loss of privileges or the use of an Academy facility or service)

## 2. SPECIAL PROVISIONS GOVERNING THE ACADEMY RECOGNITION OF CLUBS

a.  The Academy may take action against an individual member of a Midshipman organization for misconduct that is both a violation of this provision and of the Conduct Code, regardless of any separate disciplinary action taken against the Midshipman organization.

b.  This section of the Regulations applies only to the relationship between the Academy and the organizations and has no bearing on relations between national agreements set forth by governing bodies.

c.  Good standing must be maintained in order for organizations to participate in Academy sponsored activities.  Failure to do any of the following will constitute a violation of these provisions of the Regulations and will subject the organization to disciplinary action, including possible loss of good standing, as described within these provisions:

   1) Registering annually as a recognized Midshipman organization with the Office of Student Activities;
   2) Submitting a roster for active members during the first month of the fall trimester.
   3) Following all rules and guidelines of the Office of Student Activities; and
   4) Abiding by all terms and conditions of the alcohol and controlled substance guidelines below:
      a) The possession, use and/or consumption of alcoholic beverages while on Academy premises during an official event or in any situation sponsored or endorsed by the organization must be in compliance with any and all applicable laws and Academy rules and policies.
      b) No organization members, collectively or individually, shall purchase for, serve to, or sell alcoholic beverages to anyone under the legal drinking age.
      c) The possession, sale, and/or use of any illegal or controlled substance at any organization or Academy sponsored event are strictly prohibited.
      d) Alcohol or controlled substances will be prohibited at any and all recruitment activities.

e) Open parties where alcohol is provided by the host organization, meaning those with unrestricted access by non-members of the organization, without specific invitation, will be prohibited.
f) All organizations must provide, at no charge, an alternative non-alcoholic beverage and food at any event where alcohol is provided.
g) There will be no solicitation or encouragement of alcohol consumption by contest or promotion at any event where alcoholic beverages are present.

d. Organizations whose members are in violation of this policy, regardless of whether the individuals are identified, will be subject to one or more of the sanctions listed in the Regulations.

## 4.6 INTERIM SANCTIONS

1. For alleged violations of these Regulations, or any other Academy policy, interim sanctions, including but not limited to, reassignment to alternate housing, limitation of access to designated Academy housing facilities and/or campus facilities by time and location, and limitation of privilege to engage in specified Academy activities may be imposed by the Superintendent, Commandant, or their designees. Such interim sanctions are to be utilized only when there is reason to believe that the Midshipman's conduct poses a substantial threat of harm to oneself or others, threatens or endangers Academy property, or disrupts the stability and continuance of normal Academy operations and functions.

2. A Midshipman will be notified of an interim sanction by written notice served on him/her. The interim sanctions takes effect the day it is issued by the Superintendent, Commandant, or their designees.

## 4.7 MIDSHIPMAN DISCIPLINARY FILES AND RECORDS

1. The Commandant's Office will establish a Midshipman disciplinary file whenever a case is referred for investigation of a possible conduct code violation. The file of a Midshipman found to have violated the Regulations will be retained for five (5) years from the date of the sanction or until the Midshipman's graduation from the Academy, whichever comes first. Midshipman conduct records may be retained longer or permanently if the Midshipman was suspended or permanently dismissed, or if there is reason to believe the case could result in future litigation.

2. The release of Midshipman disciplinary records will be governed by applicable federal and state laws governing the privacy of educational records.

## CHAPTER 5 – PERFORMANCE REVIEW BOARD

### 5.1 GENERAL

1. A Performance Review Board (PRB) is convened under the authority of the Commandant by the Deputy Commandant or the Regimental Officer. The PRB will review performance, and assist in development of Midshipmen with substandard performance in regimental participation, conduct, physical fitness, human relations, and other areas. The PRB can recommend a Midshipman for an Executive Board or Superintendent hearing to determine suitability.

   a. **Regimental Participation**. Midshipmen are expected to assume leadership responsibilities as they advance in the Regiment. Midshipmen who demonstrate a lack of motivation and fail to assume leadership responsibility may be recommended for a PRB.

   b. **Conduct**. Midshipmen are expected to comply with these Regulations. Midshipmen who demonstrate recurring non-compliance with the Regulations may be recommended for a PRB.

   c. **Physical Fitness**. Midshipmen who are unable to meet required physical fitness standards (including height and weight standards), may be recommended for a PRB.

   d. **Human Relations Skills**. Midshipmen who establish a history of deficient human relations skills which have not been resolved by formal leadership counseling may be recommended for a PRB.

   e. **Other Areas**. Midshipmen may be brought before a PRB as directed by the Deputy Commandant.

### 5.2 RIGHTS OF MIDSHIPMEN

1. Midshipmen appearing before a PRB have the following rights:

   a. To receive notification at least 48 hours prior to convening of the PRB of the time and location of the Board.

   b. To review their company jacket and conduct record prior to convening of the PRB.

   c. To receive a copy of the PRB's recommendation to the Commandant.

### 5.3 PERFORMANCE REVIEW BOARD MEMBERSHIP

1. A PRB convened by the Deputy Commandant or RO will be comprised of:

   a. The Deputy Commandant or RO, as Chair of the PRB.

   b. A uniformed member of the faculty and staff.

   c. An active duty Officer of the Department of Naval Science.

    d.  A non-uniformed Academy Staff member.

    e.  A CO from outside the Midshipman's Battalion.

    f.  The Midshipman's CC as Board Recorder, who is a non-voting member.

## 5.4 RESPONSIBILITIES OF THE DEPUTY COMMANDANT/REGIMENTAL OFFICER

1.  Upon request from a CO for a PRB for a Midshipman in his/her respective company, the Deputy Commandant/RO shall review the petition for a PRB. If a determination is made that a PRB should be convened, the Deputy Commandant/RO will:

    a.  Notify the Midshipman of the time and location of the PRB.

    b.  Conduct the PRB proceedings in accordance with these Regulations.

    c.  Inform the Midshipman, prior to dismissing the PRB, of the PRB's recommendation to the Commandant.

## 5.5 RESPONSIBILITIES OF THE COMPANY OFFICER TO THE MIDSHIPMAN

1.  If a CO makes a determination that a PRB is appropriate, the CO will:

    a.  Recommend a PRB to the Deputy Commandant/RO.

    b.  Explain the Midshipman's rights as per paragraph 5.2 to the Midshipman.

    c.  Provide an opportunity for the Midshipman to view his/her company jacket and conduct record prior to the convening of the PRB.

    d.  Ensure in matters relating to deficient human relations skills that the Midshipman in question is offered Academy counseling as soon as possible.

## 5.6 RESPONSIBILITIES OF THE MIDSHIPMAN'S COMPANY COMMANDER

The Company Commander (CC) shall serve as Recorder for the PRB and perform other duties as directed by the Chair of the PRB. The Recorder shall serve during all sessions of the PRB and transcribe minutes of the PRB's proceedings. The Recorder shall serve at the pleasure of the Chair until relieved.

## 5.7 MIDSHIPMAN PERFORMANCE REVIEW BOARD PROCEDURES

1.  PRB hearings are conducted in an informal, cooperative manner. The PRB is a fact finding body charged with assessing Midshipman performance, and determining a course of action in the best interests of the Midshipman and the Academy. The specific format and sequence for the PRB shall be at the discretion of the Chair. The general procedures for the PRB are:

    a.  Opening statement by the Chair.

    b.  Opening statement by the Midshipman.

    c.  A review of the record of performance as contained in the Midshipman's company jacket, sea year record, and other records as determined by the Chair.

    d.  Closing statement by the Midshipman.

    e.  Closed session of the PRB to review the record and Midshipman's performance, and make a determination by simple majority of their recommendation to the Commandant.

    f.  PRB notifies the Midshipman of their recommendation to the Commandant.

    g.  PRB is adjourned.

## 5.8 PERFORMANCE REVIEW BOARD RESULTS

1. Upon adjournment of the PRB, the Chair shall submit a written report to the Commandant of the PRB's recommendation, and as enclosure, the Board transcript. Additionally, a copy of the Chair's report shall be forwarded to the Midshipman, and inserted into the Midshipman's company jacket.

2. The PRB recommendation may include any combination of the following:

    a.  Refer the Midshipman to the Academy Counseling Department for counseling.

    b.  Establish conditions of probation for the Midshipman.

    c.  Restrict participation by the Midshipman in extra-curricular activities.

    d.  Recommend an Executive Board or Superintendent's hearing be convened.

    e.  Establish a course of action not aforementioned, that the PRB concludes is in the best interests of the Midshipman and the Academy.

## 5.9 DECISION BY THE COMMANDANT

After the Commandant has arrived at a decision based on the PRB's recommendation, he/she will provide a memorandum to the Midshipman setting forth his/her decision. A copy of the memorandum will be placed in the Midshipman's Official Personnel Jacket and copies will be provided to Academy officials who must carry out the terms of the decision.

## CHAPTER 6 - EXECUTIVE BOARDS/SUPERINTENDENT'S HEARINGS[1]

### 6.1 INTRODUCTION

The Superintendent may, on his/her own or upon the recommendation of the Commandant, order an Executive Board or a Superintendent's hearing be convened for consideration and recommendation on the following:

1. Any disciplinary offense(s) committed by a Midshipman[2] that may be sufficiently grave as to warrant a recommendation for disenrollment, or
2. Any report(s) by the Commandant's Performance Review Board which, in the opinion of the Superintendent, indicates a serious lack of aptitude or suitability of a Midshipman for a career in the merchant marine and the United States Navy Reserve, including but not limited to repeated failures of a Midshipman to meet the U.S. Navy physical fitness standards for commissioning or exceeding 300 total demerits at any point during enrollment at the Academy.

### 6.2 EXECUTIVE BOARDS

1. **GENERAL**

   a. Executive Board hearings are conducted in an informal, non-adversarial manner. The Executive Board is a fact-finding body charged with presenting a recommendation to the Superintendent. In reaching its recommendation, the Executive Board should consider the best interests of the Academy and of the Midshipman before it.

   b. The rules of evidence for judicial proceedings do not apply to Executive Board proceedings. Because the appearance before the Executive Board may have a major effect on the status of the Midshipman, it is essential that the prospective Board members be knowledgeable in Board procedures and in their duties and responsibilities.

2. **MEMBERSHIP**

   Each Executive Board will consist of five (5) members, each with one vote.

   a. **Deputy Superintendent or designee as Chair.** If challenged for good cause or unable to serve, the Superintendent will designate a replacement.

   b. **Head of the Department of Naval Science or designee.** If challenged for good cause or unable to serve, the Chair will designate a replacement from the Department of Naval Science.

---

[1] Sexual assault, sexual and gender-based harassment, relationship violence, stalking and retaliation Class I offenses will be adjudicated according to the procedures set out in the applicable Superintendent Instructions or Standard Operating Procedures.
[2] The term "Midshipman" as used herein is coterminous with the term "cadet" used in Title 46, United States Code, Chapter 513, and includes all undergraduate individuals matriculated at the Academy as students, whether referred to as Midshipman, cadet, or student, and whether U.S. citizens or not.

   c. **An Assistant Academic Dean**. If challenged for good cause or unable to serve, the Chair will designate a replacement who will be either another Assistant Academic Dean or a senior licensed member of the STCW Council.

   d. **One (1) faculty or senior staff member who will have five (5) or more years of service at the Academy**. This member will be selected by the Chair from a list maintained by the Superintendent. If challenged for good cause or unable to serve, the Chair will designate a replacement from the Superintendent's list.

   e. **One (1) Midshipman**, selected by the Chair from among the Regimental Commander, the Regimental Executive Officer, the Battalion Commanders, and the Regimental Honor Board Chair. If challenged for good cause or unable to serve, the Chair will designate a replacement from among these Regimental positions or, if necessary, from among all of the Regimental officer positions.

3. The **Executive Board Secretary** is a non-voting participant who will attend the hearing and maintain detailed, but not verbatim, minutes of its proceedings (except for the deliberations). The hearing may also be digitally recorded (except for the deliberations). The Secretary's minutes will be deemed a sufficient record of the proceedings in the event a digital recording is not made or preserved.

4. At the discretion of the Chair, **Counsel for the Academy** may be present at the hearing to provide advice to the Board.

## 6.3 SUPERINTENDENT'S HEARINGS

1. Superintendent's hearings are conducted in an informal, non-adversarial manner. The rules of evidence for judicial proceedings do not apply to Superintendent's hearings. In reaching a determination, the Superintendent should consider the best interests of the Academy and of the Midshipman before him/her.

2. The Superintendent may elect to have the Executive Board Secretary attend the hearing and maintain detailed, but not verbatim, minutes of the proceedings (except for deliberations), have the hearing digitally recorded (except for the deliberations), or both. The Secretary's minutes will be deemed a sufficient record of the proceedings in the event a digital recording is not made or preserved.

3. At the discretion of the Superintendent, Counsel to the Academy or his/her designee may be present at the hearing to provide advice to the Superintendent.

## 6.4 RIGHTS OF MIDSHIPMEN

1. A Midshipman appearing before the Executive Board or Superintendent for a hearing has the following rights:

   a. To receive written notice of hearing at least five (5) days before the hearing, which notice shall include the following: (1) the specific charges to be considered by the Executive Board or Superintendent; (2) the date, time, and location of the hearing (including notice

that Phase II of the hearing, if necessary, may commence immediately after the conclusion of Phase I); (3) the names of those who will comprise the Executive Board, if applicable; (4) the witnesses to be called by the Executive Board or Superintendent, if any; (5) the uniform to be worn at the hearing; and (6) the Midshipman's additional rights, as delineated below.

b. To receive, with the written notice, copies of all documentation to be considered by the Executive Board or Superintendent in making its recommendation or decision, subject to the Midshipman's signature of a Confidentiality/Non-Disclosure Agreement upon request by the Chair or Superintendent. (With the Midshipman's consent, the Midshipman's advisor and/or counsel may receive a copy of the relevant documentation, likewise subject to execution of a Confidentiality/Non-Disclosure Agreement, upon request by the Chair or Superintendent.)

c. To seek advice and assistance of legal counsel in the preparation of his/her case at his/her own expense. Legal counsel will not be permitted to be present during the Board hearing unless the Midshipman is, at the time of the hearing, charged with a criminal offense by a Federal, state, or local jurisdiction arising out of the same circumstances as the charge before the Board or Superintendent. In such cases, counsel shall not actively participate in the proceedings but shall be allowed to be present to consult with the Midshipman and provide advice to him/her.

d. To request any Academy faculty or staff member other than a Chaplain, Counsel or Assistant Counsel to the Academy, member of the Commandant's Office, or witness to be called at the hearing to act as an advisor as long as serving in that capacity does not present a conflict with the faculty or staff member's professional responsibilities. In the event that the Midshipman is unable to obtain an advisor, the Superintendent will appoint one on request.

e. To challenge the impartiality of any or all members of the Executive Board. A written justification for any such challenge must be submitted to the Secretary of the Executive Board within 24 hours of the Midshipman being informed of the membership of the Executive Board. The Chair will rule on any such challenge. Members disqualified will be replaced by the Chair. Challenge of the Chair will be resolved by the Superintendent. The Midshipman shall be notified of the decision on any such challenge and the substitution of new members, if any.

f. To be present during the entire hearing, except for deliberations.

g. To make opening and closing statements.

h. To present evidence including but not limited to documentary evidence and the testimony of reasonably available witnesses during each phase of the hearing. The Midshipman must identify witnesses, and provide written notice to the Secretary of the Executive Board[3], not later than two (2) days before the hearing. The Academy shall make reasonable efforts to insure the attendance of the witnesses identified by the Midshipman who are enrolled at or

---

[3] The Executive Board Secretary shall also perform administrative tasks, as needed, for Superintendent's hearings.

employed by the Academy.  Appearance by witnesses not employed by, or enrolled at, the Academy is the sole responsibility of the Midshipman.

i.   To question all witnesses, whether called by the Academy or the Midshipman.

j.   To receive, upon request, a copy of the minutes prepared by the Executive Board Secretary or a copy of the digital recording of the hearing (exclusive of deliberations), subject to the Midshipman's signature of a Confidentiality/Non-Disclosure Agreement upon request by the Chair or Superintendent. (With the Midshipman's consent, the Midshipman's advisor and/or counsel may also receive a copy of the recording, likewise subject to execution of a Confidentiality/Non-Disclosure Agreement, upon request by the Chair or Superintendent.)  Once the disciplinary procedures have been completed, including any appeals, the copy of the minutes or digital recording must be returned to the Executive Board Secretary.  Requests for a copy of the minutes or digital recording made after the conclusion of all disciplinary proceedings will be denied.

**NOTE**: The Executive Board Secretary (or designee) shall deliver a written notice of the foregoing rights as set out in this Section for the Midshipman's signature acknowledging receipt. The Executive Board Secretary (or designee) will provide a copy of the signed notice of rights, as well as copies of all documentation to be considered by the Executive Board or Superintendent to the Midshipman (upon receipt from the Midshipman of signed a Confidentiality/Non-Disclosure agreement as to the file and its contents upon request by the Chair or Superintendent).

## 6.4 PRE-HEARING PROCEDURES

1.   The Superintendent will convene, or will direct the Chair to convene, a disciplinary or suitability hearing, as appropriate.

2.   For an Executive Board, the Chair will schedule the appropriate hearing and select the faculty or senior staff member and the Midshipman member to serve on the Executive Board.

3.   The Executive Board Secretary (or designee) shall do the following:

    a.   Gather the following documentation on the Midshipman scheduled to appear before the Board or Superintendent:  (1) the Commandant's recommendation that an Executive Board or Superintendent's hearing be convened and the Superintendent's notification that a hearing will be held, if applicable; (2) the investigation report (if any), with any attachments; (3) Official Personnel Jacket; (4) Company Jacket; (5) Academic File, including Transcript; (6) Sea Year Jacket; (7) the Midshipman profile prepared by the Midshipman's Company Officer; and (8) any other relevant documents.

    b.   At least five (5) days before the scheduled hearing, meet with the Midshipman and provide him or her with written notice of the hearing and all documentation to be considered by the Executive Board or Superintendent.  At this meeting, the Executive Board Secretary will also ensure that the Midshipman is aware of the right to an advisor and obtain the name of the advisor selected by the Midshipman.  If the Midshipman wishes to waive the right to an advisor, he/she must do so in writing.  The Executive Board Secretary will notify the Superintendent of the waiver request. The Superintendent may exercise his/her discretion to assign an advisor to the Midshipman notwithstanding the waiver request.

c. At least five (5) days before the scheduled hearing, prepare and distribute all documentation to be considered by the Executive Board or Superintendent to the members of the Executive Board or Superintendent, as appropriate. For Phase I of a disciplinary hearing, the members or Superintendent will be provided with only the Commandant's recommendation that an Executive Board or Superintendent's hearing be convened, the Superintendent's notification that a hearing will be held (if applicable) and the investigation report, with any attachments. For a suitability hearing, and for any Phase II of a disciplinary hearing, the members or Superintendent will be provided with the Official Personnel Jacket, Company Jacket, Academic File, including Transcript, Sea Year Jacket, the Midshipman profile prepared by the Midshipman's Company Officer, and any other relevant documents.

## 6.5 PROCEDURES FOR DISCIPLINARY HEARINGS BEFORE THE EXECUTIVE BOARD OR SUPERINTENDENT

1. A Disciplinary Hearing will be conducted in two steps, Phase I and Phase II (if necessary), both of which will be recorded as provided above. The deliberations of the Executive Board or Superintendent will not be recorded in any manner.

2. Phase I will deal exclusively with the determination of the facts pertaining to the case at hand, the objective evaluation of those facts and a determination of whether the charge(s) have been proven by a preponderance of the evidence.

    a. The Chair or Superintendent can recess the hearing at any time for any reason.

    b. The Chair or Superintendent can request additional witnesses, documents, or other evidence.

    c. If the Chair or Superintendent requests additional witnesses, documents, or other evidence, the Midshipman will be given the same opportunity to review and prepare as provided in the Notice of Hearing, for a period of five (5) days after notice of the identities of additional witnesses or availability of documentary evidence for review.

3. Phase II, if necessary, will deal exclusively with the Executive Board's recommendation to be made to the Superintendent as to the appropriate penalty or, for a Superintendent's hearing, with the Superintendent's determination as to the appropriate penalty.

4. If the Midshipman elects to admit violation of the Midshipman Regulations as specified in the charge(s), Phase I may be bypassed, provided:

    a. The Midshipman is advised of the consequences of admitting to the violation(s), including that his/her admission(s) may be used in proceedings outside the jurisdiction of the Academy, that his/her Academy Personnel Jacket will reflect the admission and the penalty imposed and, that if the penalty imposed is disenrollment, his/her transcript will reflect a "non-academic disenrollment," he/she will not be eligible for readmission, he/she will not be eligible for a letter of good standing for other institutions of higher education, and he/she may be financially responsible for the cost of his/her education.

b. The Midshipman submits a signed statement which indicates formal admission of violation of the charges as specified and that the admission is given freely, without coercion, and with the full knowledge of his/her counsel and/or advisor, if the Midshipman had counsel and/or an advisor.

5. **The procedure for <u>Phase I</u> will be as follows:**

    a. Introductory statement by the Chair or Superintendent, including a review of the Midshipman's rights and a description of and basis for the charges against him/her.

    b. Opening statement by the Midshipman and/or his/her advisor.

    c. Presentation of evidence, including questioning of witnesses identified by the Academy (if any), followed by questioning of Midshipman's witnesses (if any), and presentation of documentary evidence by Midshipman (if any). Witnesses from either side may be recalled at the discretion of the Chair or Superintendent.

        1) Witnesses will normally appear in person. However, depending on the nature of the allegations of misconduct, the Chair or Superintendent, either at the request of the Midshipman or on his/her own initiative, may direct that the testimony to be provided by one or more witnesses be by alternative means, such as remotely via VTC or telephone, behind a screen, or through written questions.

        2) All Midshipmen and Federal employees will be reminded that they have an affirmative obligation to speak truthfully in any administrative proceeding, including before the Executive Board or Superintendent, and all other witnesses will be advised of their obligation to testify truthfully. Further, Midshipmen will be advised that failure to testify truthfully is a violation of the Honor Code, which may result in a separate charge under the Honor Code. Employees will be advised that failure to testify truthfully may result in disciplinary action. If a witness is recalled, the Chair or Superintendent will remind the witness that he or she must testify truthfully.

        3) After all the witnesses have been heard, the Midshipman will be given the opportunity to testify before the Executive Board or Superintendent.

        4) The Executive Board members or Superintendent may question any and all witnesses called at the hearing, including but not limited to the Midshipman.

        5) The Midshipman will be present during the presentation of all evidence and will be permitted to question any and all witnesses.

    d. Closing statement by Midshipman and/or his/her advisor.

    e. The Executive Board or Superintendent will consider all the data available pertaining to the offense(s) in order to objectively determine, based on a preponderance of the evidence and as agreed by a majority of the Board or by the Superintendent, whether the Midshipman committed the violations as charged.

        1) All deliberations will take place outside the presence of the Midshipman, his/her counsel/advisor, and any witnesses. For Executive Board hearings, only the Executive Board members and the Executive Board Secretary will be present during deliberations and all must be present during deliberations. For

Superintendent's hearings, the Superintendent will deliberate alone. For both Executive Board and Superintendent's hearings, the deliberations will not be recorded, digitally or otherwise.

    2) If, during deliberations, the Executive Board or Superintendent determines it or he/she needs additional documentary or testamentary evidence, the Chair or Superintendent may determine to reconvene the hearing at a later time, subject to providing the Midshipman the same opportunity to review and prepare as provided in the Notice of Hearing for a period of five (5) days after notice of the identities of additional witnesses or availability of documentary evidence for review.

  f. The Executive Board or Superintendent will reconvene the hearing to issue its decision. If the Executive Board or Superintendent determines that the Midshipman has not committed any violations as charged, it will recommend to the Superintendent that the Midshipman be exonerated or the Superintendent will exonerate the Midshipman, as appropriate. If the Midshipman is found to have committed one or more of the violations as charged, Phase II will commence. Phase II may commence immediately after Phase I or may commence at a later time and/or date as determined by the Chair or Superintendent.

6. **The procedure for <u>Phase II</u> will be as follows:**

  a. The Midshipman may present evidence, including written statements from witnesses, and call witnesses to demonstrate exceptional potential for development and present extenuating and/or mitigating evidence and arguments for retention at the Academy or for minimum or no disciplinary action. The burden for demonstrating sufficient cause for retention by a preponderance of the evidence is on the Midshipman.

  b. The Executive Board or Superintendent will deliberate and determine the appropriate recommended penalty outside the presence of the Midshipman, his/her advisor, and any witnesses. In making its determination, the Executive Board or Superintendent may examine the record pertaining to the charge(s) the Midshipman was found to have violated, any statements or evidence provided by the Midshipman, and the Midshipman's entire Academy record (academic, regimental, sea year, and extra-curricular).

6. The Executive Board or Superintendent will reconvene the hearing to issue its recommendation to the Superintendent on a penalty or the decision of the Superintendent on the penalty, as appropriate.

7. For Executive Board hearings, within two (2) business days after the completion of the hearing, the Chair will submit a written report to the Superintendent, which shall include one of the following recommendations:

  a. Exoneration of the charge(s);

  b. Imposition of disciplinary or other corrective action, other than a suspension or disenrollment;

  c. Suspension from the Academy for a specified period of time; or

      d.  Disenrollment from the Academy.

8.  The Executive Board's written report shall include a cover sheet signed by the Chair, the findings of the Board, and the documents considered by the Board.

## 6.6 PROCEDURES FOR SUITABILITY HEARINGS BEFORE THE EXECUTIVE BOARD OR SUPERINTENDENT

1.  A **Suitability Hearing**, unlike a Disciplinary Hearing, has only one phase, as the sole issue for consideration by the Executive Board or Superintendent is whether the Midshipman has the aptitude or suitability needed of a Midshipman for a career in the merchant marine and the United States Navy Reserve. The Midshipman may present evidence, including written statements from witnesses, and call witnesses to demonstrate exceptional potential for development and present extenuating and/or mitigating evidence and arguments for retention at the Academy. The burden for demonstrating sufficient cause for retention by a preponderance of the evidence is on the Midshipman.

    a.  The hearing will be digitally recorded, with the exception of the deliberations of the Executive Board or Superintendent. The Executive Board Secretary will also maintain detailed, but not verbatim, minutes of the hearing (except for the deliberations).

    b.  The Chair or Superintendent can recess the hearing at any time for any reason.

    c.  The Chair or Superintendent can request additional witnesses, documents, or other evidence.

    d.  If the Chair or Superintendent requests additional witnesses, documents, or other evidence, the Midshipman will be given the same opportunity to review and prepare as provided in the Notice of Hearing, for a period of five (5) days after notice of the identities of additional witnesses or availability of documentary evidence for review.

2.  The procedures for the hearing will be as follows:

    a.  Introductory statement by the Chair or Superintendent as to the purpose of the hearing, including the basis for questioning the suitability of the Midshipman for continued enrollment, and a review of the Midshipman's rights.

    b.  Opening statement by the Midshipman and/or his/her advisor.

    c.  Presentation of evidence, including questioning of witnesses identified by the Academy (if any), followed by questioning of the Midshipman's witnesses (if any) and presentation of documentary evidence by the Midshipman (if any). Witnesses from either side may be recalled at the discretion of the Chair.

        1)  All Midshipmen and Federal employees will be reminded that they have an affirmative obligation to speak truthfully in any administrative proceeding, including before the Executive Board or Superintendent, and all other witnesses will be advised of their obligation to testify truthfully. Further, Midshipmen will be

advised that failure to testify truthfully is a violation of the Honor Code, which may result in a separate charge under the Honor Code. Employees will be advised that failure to testify truthfully may result in disciplinary action. If a witness is recalled, the Chair or Superintendent will remind the witness that he/she must testify truthfully.

2) After all the witnesses have been heard, the Midshipman will be given the opportunity to testify before the Executive Board or Superintendent.

3) The Executive Board members or Superintendent may question any and all witnesses at the hearing, including but not limited to the Midshipman.

4) The Midshipman will be present during the presentation of all evidence and will be permitted to question any and all witnesses.

5) Closing statement by Midshipman and/or the advisor.

6) The Executive Board or Superintendent will deliberate and reach a recommended determination, as agreed by a majority of the Board, or a decision in the case of a Superintendent's hearing, on the Midshipman's suitability to continue as a Midshipman at the Academy.

   a) This deliberation will take place outside the presence of Midshipman, his/her advisor, and any witnesses. Only the Executive Board members and the Executive Board Secretary will be present during deliberation. For Superintendent's hearings, the Superintendent will deliberate alone. For both Executive Board and Superintendent's hearings, the deliberations will not be recorded, digitally or otherwise.

   b) If, during deliberations, the Executive Board or Superintendent determines it or he/she needs additional documentary or testamentary evidence, it or he/she may reconvene the hearing at a later time, subject to providing Midshipman the same opportunity to review and prepare as provided in the Notice of Hearing, for a period of five (5) days after notice of the identities of additional witnesses or availability of documentary evidence for review.

7) The Executive Board or Superintendent will reconvene the hearing to issue its recommendation to the Superintendent on retention or to issue his/her decision on retention, as appropriate.

8) For Executive Board hearings, within two (2) business days after the completion of the hearing, the Chair will submit a written report to the Superintendent, which shall include one of the following recommendations:

   a) Retention of the Midshipman (with or without corrective action, such as suspension, demerits, etc.); or

   b) Disenrollment from the Academy.

9) The Executive Board's written report shall include a cover sheet signed by the Chair, the findings of the Board, and the documents considered by the Board.

## 6.7 DECISION BY THE SUPERINTENDENT

After the Superintendent has arrived at a decision regarding a disciplinary or suitability case, he/she will provide a memorandum to the Midshipman and his/her advisor setting forth the Superintendent's decision, including the penalty imposed, if any. This memorandum will describe the Midshipman's right

to request reconsideration of non-disenrollment decisions to the Superintendent and to appeal disenrollment decisions to the Maritime Administrator, and include the procedures for such appeals. Copies of the memorandum will be placed in the Midshipman's Official Personnel Jacket and the Executive Board or Superintendent's hearing file, and copies will be provided to Academy officials who must carry out the terms of the decision.

## 6.8 MIDSHIPMAN'S REQUEST FOR RECONSIDERATION TO THE SUPERINTENDENT

The Midshipman has the right to request a reconsideration of a non-exoneration decision not providing for disenrollment to the Superintendent. He/she must submit an intent to request a reconsideration, in writing, to the Superintendent within 24 hours after receiving the decision. The Midshipman's request for reconsideration must be submitted, in writing, to the Superintendent within seven (7) days after receiving the decision.

## 6.9 APPEAL TO THE MARITIME ADMINISTRATOR

1. Midshipmen may only appeal disenrollment decisions to the Maritime Administrator, whose decision will be final. If a Midshipman does not appeal the Superintendent's disenrollment action, the Midshipman shall proceed immediately with checkout procedures.

2. If a Midshipman is disenrolled and wishes to appeal his/her disenrollment, he/she must notify the Superintendent, in writing, within 24 hours after receiving the memorandum of decision of his/her intent to appeal to the Maritime Administrator.

3. Such appeal will be submitted, in writing, to the Superintendent no later than seven (7) days after receipt of the Superintendent's memorandum of decision.

4. The Superintendent will forward the appeal to the Maritime Administrator, with the Superintendent's recommendation. A copy of the Superintendent's recommendation will be provided to the Midshipman and his/her advisor.

5. The Midshipman is entitled to remain at the Academy pending consideration of his/ her appeal, including, as appropriate, in a deferred graduate status, provided that the Midshipman abides with all Academy policies, including the Midshipman Regulations. If the Midshipman is enrolled in classes during the pendency of the appeal, he/she will continue in those classes. If the Midshipman is scheduled to depart for sea year or an internship during the pendency of the appeal, he/she will not do so during the pendency of the appeal. In such case, the Superintendent will determine whether the Midshipman remains on board at the Academy or departs the Academy during the pendency of the appeal.

6. If the Maritime Administrator upholds the decision of the Superintendent, the Midshipman will be disenrolled immediately upon receipt of the Maritime Administrator's written decision. If the Maritime Administrator grants the appeal, his/her written decision should include a statement of the reasons therefor.

# EXHIBIT 9

## Stroud, CAPT Mikel

| | |
|---|---|
| **From:** | Wiese, ENS Ben |
| **Sent:** | Monday, October 15, 2018 7:50 AM |
| **To:** | Stroud, CAPT Mikel |
| **Subject:** | Fw: MIDN Sell - ARB |

Below is the email from Dean Taha.

From: Taha, Dianne
Sent: Friday, October 12, 2018 5:12:40 PM
To: Wiese, ENS Ben
Subject: Re: MIDN Sell - ARB

Ben,

We voided that letter, as the SUPT's honor letter included and sulersedes the Academic terms.

Dianne

On Oct 12, 2018, at 3:50 PM, Wiese, ENS Ben <WieseB@USMMA.EDU<mailto:WieseB@USMMA.EDU>> wrote:

Good Afternoon,

Do you have the letter from the board on the results of M/N Sell's ARB? If so, can you please enclose?

Thank you.

V/R,

Benjamin Wiese
Ensign, USN
Operations Officer
Midshipman Personnel Officer
U.S. Merchant Marine Academy '17
Palmer Hall – Zero Deck 1119
Office: (516) 726-5931

1

# EXHIBIT 10

## RE: Sea year hold

**2019Sell, Benjamin**

Wed 10/10/2018 3:59 PM

Review Board Evidence

To:Ilaria, Greg <IlariaG@USMMA.EDU>;

Thank you

Very Respectfully,

M/N Benjamin A. Sell
Class of 2019
2nd Company
Engineer

**From:** Ilaria, Greg <IlariaG@USMMA.EDU>
**Sent:** Wednesday, October 10, 2018 3:58 PM
**To:** 2019Sell, Benjamin <Benjamin.Sell.2019@midshipman.usmma.edu>
**Subject:** RE: Sea year hold

You are all set

Greg Ilaria
Head Wrestling Coach
US Merchant Marine Academy
516-726-5254

**From:** 2019Sell, Benjamin <Benjamin.Sell.2019@midshipman.usmma.edu>
**Sent:** Wednesday, October 10, 2018 3:34 PM
**To:** Ilaria, Greg <IlariaG@USMMA.EDU>
**Subject:** Sea year hold

Sir,
I am on the list for sea year hold for the PRT. Can you confirm if I am on this list? I took the PRT on 7/17 and understand there was an issue with the scores being lost (Joseph Springer and Christopher Kahl were in my group if that helps).

Very Respectfully,

M/N Benjamin A. Sell
Class of 2019
2nd Company
Engineer

Mail - Benjamin.Sell.2019@midshipman.usmma.edu                    https://webmail.midshipman.usmma.edu/owa/#path=/mail/search

## RE: PRT Make up

2019Springer, Joseph

Fri 8/17/2018 10:53 AM
Review Board Evidence

To:Ilaria, Greg <IlariaG@USMMA.EDU>; 2019Sell, Benjamin <Benjamin.Sell.2019@midshipman.usmma.edu>; 2019Kahl, Christopher
   <Christopher.Kahl.2019@midshipman.usmma.edu>;


Sir,

     I already took the PRT several weeks ago. I have noticed that my entire push-up/sit up group is also on this email list.
There must be some sort of mistake.

Very Respectfully,

M/N Joey Springer 1/C
USMMA Class of 2019-A
Marine Engineering and Shipyard Management
Cell: 240-472-0614



**From:** Ilaria, Greg <IlariaG@USMMA.EDU>
**Sent:** Friday, August 17, 2018 10:02 AM
**To:** 2019Barnett, Braden <Braden.Barnett.2019@midshipman.usmma.edu>; 2019Curry, Thomas
<Thomas.Curry.2019@midshipman.usmma.edu>; 2019Kahl, Christopher <Christopher.Kahl.2019@midshipman.usmma.edu>;
2019Olsen, John <John.Olsen.2019@midshipman.usmma.edu>; 2019Schmidt, Lane
<Lane.Schmidt.2019@midshipman.usmma.edu>; 2019Sherrill, Ella <Ella.Sherrill.2019@midshipman.usmma.edu>; 2019Yi, Zuriel
<Zuriel.Yi.2019@midshipman.usmma.edu>; 2019Blauw, Tyson <Tyson.Blauw.2019@midshipman.usmma.edu>; 2019Cole, Connor
<Connor.Cole.2019@midshipman.usmma.edu>; 2018Jeffrey, Mary Kate <MaryKate.Jeffrey.2019@midshipman.usmma.edu>;
2019Johnson, Gunnar <Gunnar.Johnson.2019@midshipman.usmma.edu>; 2019Lee, Sang
<Sang.Lee.2019@Midshipman.usmma.edu>; 2019OHaro, Devan <Devan.OHaro.2019@midshipman.usmma.edu>; 2019Sell,
Benjamin <Benjamin.Sell.2019@midshipman.usmma.edu>; 2019Springer, Joseph
<Joseph.Springer.2019@midshipman.usmma.edu>; 2019Williams, Joseph <Joseph.Williams.2019@midshipman.usmma.edu>;
2020Biehl, Lexus <Lexus.Biehl.2020@midshipman.usmma.edu>; 2020Douglas, Bly <Bly.Douglas.2020@midshipman.usmma.edu>;
2020Gardella, Joseph <Joseph.Gardella.2020@midshipman.usmma.edu>; 2020Gulizia, Jacob
<Jacob.Gulizia.2020@midshipman.usmma.edu>; 2020Hilditch, Sarah <Sarah.Hilditch.2020@midshipman.usmma.edu>; 2020Ibinson,
Rachael <Rachael.Ibinson.2020@midshipman.usmma.edu>; 2020Jackson, Kyle <Kyle.Jackson.2020@midshipman.usmma.edu>;
2021Cordova, Brandon <Brandon.Cordova.2021@midshipman.usmma.edu>; 2021Cullen, Kieran
<Kieran.Cullen.2021@midshipman.usmma.edu>; 2021Diehl, Jeremy <Jeremy.Diehl.2021@midshipman.usmma.edu>; 2021Johnson,
James <James.Johnson.2021@midshipman.usmma.edu>; 2021Johnson, Ragen <Ragen.Johnson.2021@midshipman.usmma.edu>;
2021McCorkendale, Christopher <Christopher.McCorkendale.2021@midshipman.usmma.edu>; 2021Neloms, Jesse
<Jesse.Neloms.2021@midshipman.usmma.edu>; 2021Shen, Winston <Winston.Shen.2021@midshipman.usmma.edu>; 2021Waller,
Christopher <Christopher.Waller.2021@midshipman.usmma.edu>; 2022Germanakos, Hope
<Hope.Germanakos.2022@midshipman.usmma.edu>
**Cc:** 2019Magnusen, Dylan <Dylan.Magnusen.2019@midshipman.usmma.edu>
**Subject:** PRT Make up

If you are receiving this email then I do not have a PRT score for you and I need to schedule you for a PRT as soon as you are cleared
for your CHIT.

1.  If there is a mistake and you have already ran the PRT please notify me through email
2.  If you are on CHIT for an extended period of time please notify me through email (I apologize if this is repetitive)
3.  If you are off CHIT, or will be off CHIT soon stop by my office to schedule a time/day to take the PRT

Thanks

Coach

Greg Ilaria
Head Wrestling Coach
US Merchant Marine Academy
516-726-5254

# EXHIBIT 11



**U.S. Department
of Transportation
Maritime
Administration**

Administrator

1200 New Jersey Avenue, S.E.
Washington, D.C. 20590

---

March 5, 2019

MIDN Benjamin Sell
c/o USMMA
300 Steamboat Road
Kings Point, NY 11024

RE: Disenrollment Appeal

Dear Midshipman Sell:

This letter constitutes final Agency action with regard to your appeal of your disenrollment from the U.S. Merchant Marine Academy ("Academy"). This decision follows your written appeal dated December 4, 2018, and is based upon the written record I have received from the Academy via memorandum from the Superintendent dated January 15, 2019. I have reviewed the appeal in its entirety in reaching my decision.

Upon review of the appeal, I find the decision to disenroll was proper. Having considered your arguments on appeal and the written record in its entirety, I have determined to uphold the disenrollment decision reached by the Superintendent and to deny your appeal.

The Superintendent or his representative will be in touch with you to complete your disenrollment paperwork.

Regards,

Mark H. Buzby

cc:    RADM Jack Buono, Superintendent, USMMA