UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BENJAMIN SELL,

                         Plaintiff,               Case No.:  19 CV 3105(RJD)(RER)

      - against -

UNITED STATES OF AMERICA, UNITED STATES
DEPARTMENT OF TRANSPORTATION, UNITED
STATES MERCHANT MARINE ACADEMY
and JOHN DOES 1-10,

                        Defendants.
-----------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF HIS MOTION
# <u>FOR SUMMARY JUDGMENT</u>

HOGAN & CASSELL, LLP
*Attorneys for Plaintiff, Benjamin Sell*
Michael Cassell
500 North Broadway, Suite 153
Jericho, New York 11753
Tel.  (516) 942-4700
Fax  (516) 942-4705
Email  mcassell@hogancassell.com

# TABLE OF CONTENTS

I.    INTRODUCTION............................................................................................1

II.   ARGUMENT..............................................................................................2

      A.    Defendants are Not Entitled to Deference.............................................2

      B.    The Academy's Holding of an Executive
            Board Hearing Prior to Disenrolling Sell,
            does Not Serve to Justify Defendants' Conduct......................................6

      C.    The Decision to Disenroll Sell was Undeniably
            Arbitrary, Capricious and Violative of Sell's Rights.............................7

      D.    The Cases Relied Upon by Defendants are Inapposite...........................9

III.  CONCLUSION.........................................................................................10

## TABLE OF AUTHORITIES

*Decisions:*                                                                          *Page:*

Cassidy v. United States, No. 17-cv-4187 (SJF), 2018 U.S. Dist. LEXIS 198733, 2018 WL 6088146 (E.D.N.Y. Nov. 20, 2018)............................................................2-3

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)...........2-3

Christensen v. Harris County, 529 U.S. 576 (2000).........................................................3

Doe v. United States Merch. Marine Acad., 307 F. Supp. 3d 121 (E.D.N.Y. 2018)......................3

Doolen v. Esper, 2018 U.S. Dist. LEXIS 153994 (S.D.N.Y. Sept. 10, 2018)............................2, 9

Tully v. Orr, 608 F. Supp. 1222 (E.D.N.Y. 1985)......................................................2, 9


*Statutes:*                                                                          *Page*

5 U.S.C. § 701 (the "APA")……………………………………………………….....................1, 5

ii

## I. <u>INTRODUCTION</u>

The plaintiff, Benjamin Sell ("Plaintiff" or "Sell"), by his attorneys, Hogan & Cassell, LLP, respectfully submits this Memorandum of Law in further support of his motion seeking summary judgment, pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 (the "APA"), on Plaintiff's claims that the conduct of the defendants, United States of America, United States Department of Transportation and United States Merchant Marine Academy (collectively "Defendants"), violated the APA and his Due Process Rights.

As set forth in detail in Sell's November 27, 2019 Memorandum of Law in Support of His Motion for Summary Judgment ("Sell's MOL") and his January 3, 2020 Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Sell's Opp."), Sell seeks relief against Defendants premised upon his disenrollment from the Merchant Marine Academy (the "Academy").

In his motion, Sell explained that for numerous reasons Defendants' conduct in disenrolling him from the Academy was violative of the APA and Sell's Due Process rights.

The arguments raised by Defendants in their January 3, 2020 Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Opp."), not only fail to provide a basis to deny Sell's motion but in fact, confirm that Sell is undeniably entitled to summary judgment.

Defendants raise five main arguments in their Opposition: 1) the Academy is entitled to deference in its decisions and that the Court should defer to determinations made by the Superintendent of the Academy (Defendants' Opp. at 4, 8-9); 2) Sell's rights were not violated because he was afforded an Executive Board hearing prior to disenrollment (Defendants' Opp. at 2, 9-11); 3) Sell's rights were not violated because he was provided with proper notice of the

Executive Board hearing and appeared at the hearing (Defendants' Opp. at 2-3, 9-11); 4) Sell's rights were not violated because the Executive Board properly found that Sell was not suitable based upon his academic, cheating and physical fitness (Defendants' Opp. at 2, 5-8, 11); and 5) case law, such as Doolen v. Esper, 2018 U.S. Dist. LEXIS 153994 (S.D.N.Y. Sept. 10, 2018) and Tully v. Orr, 608 F. Supp. 1222 (E.D.N.Y. 1985), supports Defendants' position (Defendants' Opp. at 6-7).

None of these arguments have any merit.

## II. **ARGUMENT**

### A.    **Defendants are Not Entitled to Deference**

One of the arguments raised by Defendants in support of their claim that they did not violate Sell's rights is that they are entitled to deference stemming from Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) and that pursuant to the applicable statutory and regulatory scheme, "the Superintendent 'is delegated authority to issue all regulations necessary for the accomplishment of the Academy's mission.'" See Defendants' Opp. at 4, 8-9.

Defendants' reliance upon Chevron is severely misplaced.

Notably, in Cassidy v. United States, No. 17-cv-4187 (SJF), 2018 U.S. Dist. LEXIS 198733, 2018 WL 6088146 (E.D.N.Y. Nov. 20, 2018) (Judge Feuerstein), the Academy argued that Chevron deference applied to a claim that the plaintiff was improperly disenrolled from the Academy for sexual misconduct. The Court flatly rejected the argument, explaining that Chevron deference only applies to a situation where at issue is an agency's interpretation of a Congressional statute that it is charged with administering. Since at issue in the case was whether the midshipman was properly disenrolled from the Academy, there was no issue

2

regarding the defendants' interpretation of a Congressional statute. Thus, the Court held that Chevron deference did not apply. 2018 U.S. Dist. LEXIS 198733, at *29. See also Chevron U.S.A., Inc., 467 U.S. at 842-43 (noting that what was at issue was "an agency's construction of the statute which it administers"); Christensen v. Harris County, 529 U.S. 576, 587 (2000) (noting that an agency's enforcement guidelines "lack the force of law," and thus, are not entitled to Chevron-style deference).

In this action, there is no issue regarding whether or not the Academy properly interpreted a Congressional statute that the Academy is charged with administering. Therefore, Chevron deference is inapplicable to this matter.

While in support of their position Defendants extensively rely upon Doe v. United States Merch. Marine Acad., 307 F. Supp. 3d 121 (E.D.N.Y. 2018) (cited in Defendants' Opp. at 4, 9), in Doe, the plaintiff challenged the policies and procedures established by the Superintendent of the Academy to address sexual harassment and assault. For example, the plaintiff argued that the policies were improper because he was entitled to an Executive Board hearing instead of a Superintendent's hearing. The Court, in reliance upon Chevron, found that the policies and procedures that the Superintendent followed were entitled to deference and rejected the plaintiff's attempt to challenge these policies. 307 F. Supp. 3d at 144-45.

In complete contrast here, Sell is not claiming that the Academy's policies are improper. Rather, he is claiming that the Academy acted improperly by not abiding by its own policies and procedures. Thus, Doe does not further Defendants' position.

Moreover, even assuming that Defendants are correct that Chevron deference applies, if anything, this would completely negate Defendants' position. According to Defendants, pursuant to the applicable statutory and regulatory scheme, "the Superintendent 'is delegated

authority to issue all regulations necessary for the accomplishment of the Academy's mission.'" Defendants likewise assert that the Maritime Administration "has in turn delegated the direction and supervision of the [Academy] to the Superintendent of the Academy." See Defendants' Opp. at 4. In other words, according to Defendants, the final authority of the Academy's rules and regulations is the Superintendent of the Academy.

As set forth in detail in Sell's MOL, the accompanying Rule 56.1 Statement and Sell's Opp., the three grounds that the Executive Board relied upon in disenrolling Sell were: 1) his cheating on a humanities project; 2) Sell's grades; and 3) Sell's physical fitness. See Sell's MOL at 6-9; Plaintiff's Rule 56.1 ¶¶ 30, 48; Administrative Record ("AR")000001, AR000008-000009.

Yet, most significantly, the proper punishment for Sell's cheating was already adjudicated by the Superintendent in the Superintendent's Decision. See Plaintiff's Rule 56.1 ¶¶ 13-15, 21-22; see also AR000029-000048, AR000108.

Likewise, all issues regarding Plaintiff's academics were already before Superintendent Helis when he rendered the Superintendent's Decision. In fact, prior to making his determination, Superintendent Helis was provided with an objection by Honor Advisor Stephen J. McDade ("McDade"), wherein McDade specifically recommended that Sell be disenrolled from the Academy based upon his academics. Clearly, then, in determining Sell's punishment, Superintendent Helis had already considered Plaintiff's academic record. See Plaintiff's Rule 56.1 ¶¶ 18-20, 41. In addition, the Academy recognized that the Superintendent's Decision "superseded" any penalty to impose on Sell for his academic issues. See Plaintiff's Rule 56.1 ¶¶ 14, 22, 39; see also AR000005, AR000029-000048, AR000108. And, the Superintendent's Decision specifically provides that Sell would be afforded with the opportunity for remediation

4

of the sea projects that he failed.   See AR000047 (action number 2 ("You will resume your academic studies, to include remediation of failed sea projects")).

With regard to Sell's failures of PRT's, those failures occurred in the 2015-2016 academic year and the first trimester for the 2017-2018 academic year, all of which were substantially prior to the date of the Superintendent's Decision, which was October 11, 2018. Moreover, the Superintendent's Decision specifically references that Sell was required to pass a PRT to return to the Academy, thus eliminating any concern that Sell could not meet the Academy's physical fitness requirements.   See Plaintiff's Rule 56.1 ¶¶ 42-45; Plaintiff's Response to Defendants' Rule 56.1 Statement ("Plaintiff's Response Rule 56.1") ¶¶ 15-16; see also AR000001-000007, AR000012-000013, AR000205, AR000047 (action number 5 ("Prior to joining the Class of 2020, you must take and pass a Physical Readiness Test")).

And, Superintendent Helis's Decision is clear that Sell would only be referred to an Executive Board if he failed to comply with the terms set forth in the Superintendent's Decision. See Plaintiff's Rule 56.1 ¶ 25; see also AR000048 (action number 8 ("If the Commandant determines your remediation was unsuccessful you will be referred to an Executive Board or Superintendent's hearing and may be disenrolled from the Academy.")).

Quite simply, if the Academy is correct that this Court should completely defer to its Superintendent, then Defendants' conduct in waiting until the **day after** Superintendent Helis left the Academy to then Recommend and hold an Executive Board hearing and then disenroll Sell -- for the exact same conduct for which Superintendent Helis determined that Sell should not be disenrolled (see Plaintiff's Rule 56.1 ¶¶ 21, 28, 29; see also AR000001, AR000047-000048) -- fully confirms that the Academy's decision to disenroll Sell violated the APA.

5

**B.    The Academy's Holding of an Executive
         Board Hearing Prior to Disenrolling Sell,
         does Not Serve to Justify Defendants' Conduct**

Defendants also argue that Plaintiff's rights were not violated because he was afforded an Executive Board hearing prior to disenrollment and because Sell cannot deny that he was provided with notice of the hearing and the opportunity to appear at the hearing.    See Defendants' Opp. at 2-3, 9-11.

This argument is beyond frivolous.

Most significantly, Defendants do not -- because they cannot -- dispute that the holding of the Executive Board hearing was violative of the Academy's own rules and procedures.

Specifically, as Sell has explained in his prior memos of law, Sell's notice to appear before the Executive Board was pursuant to Section 6.1 of the Academy's Regulations.  Section 6.1 of the Regulations only permit convening an Executive Board for two limited circumstances: 1) to address a disciplinary offense; or 2) if there is a report by the Commandant's Performance Review Board that "indicates a serious lack of aptitude or suitability of a Midshipman for a career in the merchant marine and the United States Navy Reserve."  See Sell's MOL at 13-14; Plaintiff's Rule 56.1 ¶¶ 32-36; AR000001, AR000168, AR000276.

Defendants' opposition makes it crystal clear that Sell was referred to an Executive Board premised upon a claim of lack of suitability, which is ground number two.   As the Academy's Regulations state, in order to refer a midshipman to an Executive Board based upon a claim of lack of suitability, the midshipman **must first be afforded a Performance Review Board**, which is governed by Chapter 5 of the Regulations (AR000273-000275).  **Only** if the Performance Review Board then recommends an Executive Board can a midshipman be referred to an Executive Board based upon a lack of suitability.

6

It is beyond evident that Defendants violated Sell's rights in holding an Executive Board hearing without first providing Sell with a Performance Review Board.

Finally, as set forth in Sell's opposition memorandum of law, the mere fact that the Academy provided notice to Sell of the Executive Board hearing and that he appeared at the hearing does not lead to the conclusion that Sell's Due Process rights were not violated. As Sell noted, based upon Defendants' tortured logic, the Academy could have scheduled an Executive Board for Sell for <u>any</u> conduct, including breathing, sleeping and drinking water, and that as long as Sell was advised of the Executive Board hearing and participated in the hearing, Sell would have no Due Process claim if the Board disenrolled him. <u>See</u> Sell's Opp. at 14.

**C.     The Decision to Disenroll Sell was Undeniably
         <u>Arbitrary, Capricious and Violative of Sell's Rights</u>**

Defendants also claim that Sell's rights were not violated because the Executive Board properly found that Sell was not suitable based upon his academic, cheating and physical fitness. <u>See</u> Defendants' Opp. at 2, 5-8, 11.

Defendants are wrong.

As explained in Sell's prior submissions, with regard to his academics, all issues regarding Plaintiff's academics were already before Superintendent Helis when he rendered the Superintendent's Decision. Clearly, then, in determining Sell's punishment, Superintendent Helis had already considered Plaintiff's academic record. <u>See</u> Plaintiff's Rule 56.1 ¶¶ 18-20, 41. Moreover, the Academy recognized that the Superintendent's Decision "superseded" any penalty to impose on Sell for his academic issues. <u>See</u> Plaintiff's Rule 56.1 ¶¶ 14, 22, 39; <u>see also</u> AR000005, AR000029-000048, AR000108. And, the Superintendent's Decision specifically provides that Sell would be afforded with the opportunity for remediation of the sea projects that he failed. <u>See</u> AR000047 (action number 2 ("You will resume your academic studies, to include

7

remediation of failed sea projects")).

Further, while Defendants reference in their memo of law the determination by the Academic Review Board, <u>see</u> Defendants' Opp. at 8, as Defendants themselves acknowledge, the ARB determined that Sell should be placed on deferred graduate status for his academics -- which is a far cry from being disenrolled. As set forth in the Superintendent's Instruction relating to deferred graduates (attached hereto as Exhibit 1), the concept of placing a midshipman in deferred graduate status is to afford the midshipman more time to remediate classes so that the midshipman can graduate from the Academy. In other words, the ARB, just like Superintendent Helis, **determined that Sell should be afforded more time to remediate any failed classes**. Thus, Defendants' reliance upon the fact that Sell's academics were reviewed by the ARB as a basis to justify their conduct of disenrolling Sell is beyond specious.

As also explained in Sell's prior submissions, with regard to Sell's cheating, Sell appeared before an Honor Board as to this exact issue and his punishment for the cheating was set forth in the Superintendent's Decision. Inasmuch as the Superintendent determined that Sell **should not** be disenrolled for the cheating, Defendants' reliance upon Sell's cheating as a basis to support the Academy's decision to disenroll Sell is misplaced.

Finally, with regard to failed PRT's, as set forth in detail in Sell's opposition memo of law, two of Sell's failures occurred in the 2016-2017 academic year, which was years prior to the date that the Executive Board made its recommendation, which was on November 15, 2018. In any event, Sell had fully remediated these two failures. With regard to the other failure, this test was administered in the first trimester 2018, which is the academic year that starts in 2017. Thus, this failure was likewise substantially prior to the Executive Board's recommendation. <u>See</u> Sell's Opp. at 10-11. Moreover, most notably, any alleged concern by the Academy that Sell

was not suitable due to his physical fitness at the time of the Executive Board hearing is completely belied by the fact that Sell **passed his last physical exam prior to disenrollment**. See AR00007, AR000205.

Accordingly, none of Defendants' arguments change the reality that Sell is entitled to summary judgment.

**D.     The Cases Relied Upon by Defendants are Inapposite**

In support of their position that their conduct was not arbitrary or capricious, Defendants rely upon Doolen and Tully. See Defendants' Opp. at 6-7. These cases do not further Defendants' position.

In Doolen, completely unlike this matter, the plaintiff had "a well-documented history of rule-breaking and repeated deflections of responsibility." This included, but was not limited to, numerous alcohol-related offenses and his failure to disclose an alcohol-related arrest to his chain of command. Doolen was also found to have "a documented history of failing to disclose questionable conduct." 2018 U.S. Dist. LEXIS 153994, at *43-*45.

Defendants also rely upon a statement in Tully regarding the United States Air Force Academy's procedure when considering a cadet for disenrollment of reviewing the cadet's entire conduct, not just the most recent six months. See Defendants' Opp. at 6-7. To the extent that Defendants' claim that the language from Tully justifies their conduct, for two reasons, Tully is distinguishable. First, notably, the earliest conduct referenced by the court in Tully occurred "in the Spring of 1984," which was less than a year prior to the plaintiff being notified on November 23, 1984, that he was being considered for disenrollment. 608 F. Supp. at 1224. Here, however, Defendants attempt to rely upon Sell's failed physicals and academic issues that occurred years prior to the Executive Board hearing.

Second, unlike this matter, the statement in <u>Tully</u> was predicated upon a specific Air Force Regulation, 53-3 and a declaration.  608 F. Supp. at 1226.

### III. <u>CONCLUSION</u>

For the reasons set forth above and as set forth in Sell's motion, Plaintiff respectfully requests that the Court grant his motion for summary judgment and award him such other and further relief as the Court deems appropriate.

Dated:  January 16, 2020

Respectfully submitted,

HOGAN & CASSELL, LLP
Attorneys for Plaintiff, Benjamin Sell

By: _____

Michael Cassell
500 North Broadway, Suite 153
Jericho, New York 11753
Tel.  (516) 942-4700
Fax  (516) 942-4705
Email  mcassell@hogancassell.com

# EXHIBIT 1

UNITED STATES MERCHANT MARINE ACADEMY
KINGS POINT, NEW YORK

November 15, 2011

SUPERINTENDENT'S INSTRUCTION 6335.1 (2011-06)

Subj:  DEFERRED GRADUATES

1.    PURPOSE.  To establish policies related to the assignment of a midshipman to "deferred graduate" status, and to delineate the responsibilities of each Academy office or department to track the progress of deferred graduates under their jurisdiction, and to update the Dean's Office about that progress, in order to assure timely clearance of each deferred graduate.

2.    APPLICABILITY. This instruction shall apply to members of the Class of 2012 and all subsequent classes.

3.    DEFINITIONS. For the purpose of this instruction, a "deferred graduate" is defined as a first classman who fails to complete all graduation requirements by the end of third term classes, or by the conclusion of the Academy-scheduled United States Coast Guard (USCG) license examinations. A midshipman may be in deferred graduate status due to academic, medical or regimental reasons.

   a.  Academic Deferred Graduate: A midshipman who has not satisfactorily completed all academic requirements by graduation day. This status may be conferred by the Superintendent at any time, based upon the recommendation of the Academic Dean.

   b.  Medical Deferred Graduate: A midshipman who has not satisfactorily completed all medical-related requirements by graduation day. This status may be conferred by the Superintendent at any time, based upon the recommendation of the Chief Medical Officer.

   c.  Regimental Deferred Graduate: A midshipman who has not satisfactorily completed all regimental requirements by graduation day. This status may be conferred by the Superintendent at any time, based upon the recommendation of the Commandant.

4.    POLICY

   a.  Midshipmen are expected to complete all requirements for graduation, including professional licensing requirements, within the prescribed four-year course of study.

   b.  Deferred graduate status may be conferred by the Superintendent upon the recommendation of the Academic Dean, Commandant, or Chief Medical Officer. In extreme circumstances the Superintendent may decide that the Midshipman be set back to the succeeding class.

   c.  Under no circumstances will deferred graduates be permitted to participate in graduation exercises for their class year.

SUPINST 6335.1
Page 2

5.    PROCEDURES

    a.  The Assistant Academic Dean for Support Programs will be the central clearing authority for all deferred graduates.

    b.  In the Academic Division, the Departments of Marine Engineering, Marine Transportation, Physical Education, and Professional Development and Career Services will inform the Dean's Office of their recommendations for deferred graduate status by the last day of third term classes. The Department of Health Services and the Commandant's Division will make their recommendations for deferred graduate status directly to the Superintendent by the same date. Health Services and the Commandant will inform the Dean's Office of their pending recommendations, and of the Superintendent's decision about conferring deferred graduate status for each midshipman. All departments will notify and update the Dean's Office in writing, i.e., via email.

    c.  Up until the day of graduation, Health Services and the Commandant will provide weekly updates on the status of those officially designated as deferred graduates for regimental or medical reasons. Following graduation ceremonies, the Assistant Dean will receive bi-weekly updates from all departments as to the status of each deferred graduate for which they are responsible.

    d.  Upon clearing each deferred graduate, the Assistant Dean will authorize the Registrar and the Office of the Academic Dean to forward all official graduation documentation to each graduate.

    e.  Academic Deferred Graduates

        i.  Completion of Graduation Requirements

            1.  A midshipman may be designated an academic deferred graduate due to outstanding sea projects, a deficiency in the number of sea days, or in some cases, an outstanding in-residence course.

            2.  The Office of the Dean publishes an annual list of the academic criteria which are used to determine who will have completed all academic requirements prior to graduation day. The requirements include successful completion of all academic courses, STCW competencies, the USCG license exams, number of sea days and the internship, and Cumulative Quality Point Average requirements for the major and the degree. Those midshipmen who have not completed all requirements, and who have not been recommended for waiver (ref. Dean's Memorandum 240 and Dean's Memorandum 263) may be recommended for deferred graduate status. The Superintendent makes the final decision about deferred graduate status.

            3.  Each deferred graduate will be given a completion date, based upon the remaining requirements of the individual midshipman, by which all academic requirements must be completed. In no case

SUPINST 6335.1
Page 3

will the completion date be set beyond December 31 of his or her graduation year. If a midshipman fails to complete the requirements for graduation prior to 31 December then s/he may be disenrolled by the Superintendent.

ii. Academic Courses

1. Midshipmen who do not successfully complete all academic courses and STCW competencies by the end of their third term classes will be recommended for deferred graduate status. Sea projects and the Internship Report are academic courses, though specific criteria for both of these are outlined, below. A midshipman may be designated a deferred graduate by the Superintendent, upon recommendation of the Academic Dean.

2. Each academic department will monitor the completion of all academic courses. Each department will:

    a. Arrange for the timely remediation and grading of all academic courses, including sea projects

    b. Designate a representative to monitor the completion of course remediations for each deferred graduate

    c. Send bi-weekly updates to the Assistant Academic Dean until such time that all outstanding coursework is completed

iii. Sea Projects.

1. Sea projects are academic courses. A midshipman who receives two or more grades of "F" on sea projects during the first sailing will be referred to the Academic Review Board for possible disenrollment and will not be classified as a deferred graduate. For the second sailing period, a midshipman with two or more failures will be referred to the Academic Review Board for possible disenrollment. The Academic Review Board may recommend deferred graduate status; the Academic Dean may make a subsequent recommendation to the Superintendent. The Superintendent may confer final deferred graduate status on midshipmen who are deficient in two or more sea projects.

2. In some cases, midshipmen who were declared deferred graduates by the Superintendent succeed in completing enough outstanding sea project courses by the USCG examination period, and are therefore permitted to present for the exams. Midshipmen who qualified for and passed the license exam, who nevertheless have one, two, or three outstanding sea projects, will proceed to sea immediately after the conclusion of the exams in order to earn grades in those projects, and complete graduation requirements.

SUPINST 6335.1
Page 4

These deferred graduates will not participate in graduation activities for their class year.

3. Those who have four, or more, outstanding sea projects by the last day of classes of the third term of the first class year will not be permitted to present for the USCG license examinations, and will proceed to sea to complete the projects immediately after the conclusion of third term classes. These midshipmen will not participate in graduation activities for their class year.

4. Starting with the Class of 2015, midshipmen who have three or more outstanding sea project courses by the last day of classes of the third term of the first class year will not be permitted to present for the license examinations, and will proceed to sea to complete the projects immediately after the conclusion of third term classes. They will not participate in graduation ceremonies for their class year.

5. Having deferred graduates in their area triggers certain specific responsibilities for the academic departments:

6. The Department of Professional Development and Career Services will:

    a. Arrange timely shipping assignments for deferred graduates

    b. Monitor the timely completion and submittal of sea projects by all midshipmen whose graduation has been deferred

    c. Distribute sea projects to the major departments for grading

    d. Designate a single point of contact that will send bi-weekly updates on the status of deferred graduates at sea, and report the distribution of specific sea projects to the major departments to the Assistant Academic Dean for Support Programs.

7. The Departments of Marine Engineering and Marine Transportation will ensure that all resubmitted sea projects are graded, and the grades submitted to the Office of the Registrar, on a timely basis. The Sea Project Coordinator shall assure that each project is distributed for grading immediately upon receipt. Grades shall be resubmitted to the Registrar within fourteen days of receipt by the grading faculty member. It is the responsibility of the department designee to inform the Assistant Dean when the project was received, when and to whom it was distributed for grading, and when the grade was submitted to the Registrar. This information will be sent to the Assistant Dean in a bi-weekly report filed by the designee.

iv. The Internship Report. Each midshipman must complete a written report about the two-week internship completed during the second sailing period.

SUPINST 6335.1
Page 5

These reports are submitted directly to, and graded by the Department of Professional Development and Career Services. Midshipmen may be conferred deferred graduate status by the Superintendent, upon recommendation of the Academic Dean if the internship has not been completed, or the report has not been submitted. The Department of Professional Development and Career Services will:

1. Assist midshipmen in procuring a suitable internship

2. Collect and grade the internship report

3. Designate a representative who will monitor the progress of the internship and submittal of the report

4. Send bi-weekly updates about the status of each midshipman who has been designated a deferred graduate because of non-completion of the internship to the Assistant Dean for Support Programs

v.  The United States Coast Guard License Exam.

1. The Office of the Dean will publish a list of pre-qualification criteria to determine who may be examined for the USCG as a third mate or third assistant engineer. The pre-qualification criteria must be completed no later than the last day of classes of the third term of the first class year in order to qualify to take the license examination. Those Midshipmen who do not qualify to present for the exam will proceed directly to sea at the conclusion of their third term classes.

2. The department heads of Marine Engineering and Marine Transportation will designate a faculty member to track the progress of all of their major deferred graduates who must present for the USCG license exams after the official test dates organized by the Office of the Academic Dean. The department designee will send bi-weekly updates about the status of the License Exam candidates to the Assistant Dean for Support Programs.

vi. Non-Performance. A deferred graduate may be referred to an Academic Review Board at any time if, in the opinion of the Academic Dean, s/he is not making appropriate progress toward completion of outstanding academic work. The Academic Review Board may make a formal recommendation to the Dean regarding the continuation of deferred graduate status. The individual may be recommended for any academic sanction including disenrollment. The Superintendent may confer final deferred graduate status for non-performance reasons.

vii. Sea Days. Midshipmen may be conferred deferred graduate status due to a deficiency in the number of sea days earned during both sailing periods.

1. Voluntary Holdovers

SUPINST 6335.1
Page 6

    a. To reduce the potential of being a deferred graduate due to a shortfall in sea service, midshipmen may voluntarily hold over for only one sport or extracurricular activity during their sailing periods. The total number of days scheduled for a midshipman's first and second sailing periods may not be reduced to less than a total of 350 days by reason of holdover activities. During the 350-day period a midshipman will complete a minimum of 300 days of commercial sea service and a minimum two-week internship. Any midshipman with a grade of "F" on two or more sea projects shall not be permitted to hold over during the second sea period.

    b. Midshipmen must petition in writing the Office of the Dean via the Office of Professional Development and Career Services to exceed the one sport or extra-curricular holdover/350 day rule or the restriction on failures rule. The Office of Professional Development and Career Services will forward the petition to the Office of the Dean with a recommendation for action. The Office of the Dean may remove the midshipman from voluntary activities which could delay graduation.

2. Involuntary Holdovers

    a. A midshipman may be held over for a wide variety of administrative reasons, including disciplinary, academic, and medical. If a midshipman is involuntarily held over, the sailing record must be reviewed to ensure that the 350-day requirement is met. The Office of Professional Development and Career Services will forward a recommendation to the Office of the Dean for all those who are deficient in sea days.

    b. The Office of Professional Development and Career Services will monitor the sea days of all voluntary and involuntary holdovers for compliance with holdover requirements. Their designated representative will send bi-weekly updates on the status of holdovers to the Assistant Academic Dean.

f. Medical Deferred Graduates

    i. A Medical Deferred Graduate must complete all medical-related graduation requirements prior to December 31 of his or her graduation year. If a midshipman will not be able to complete the requirements for graduation prior to December 31 then s/he may be set back to the following class, upon approval by the Superintendent. Completion of graduation requirements past December 31 of a midshipman's graduation

SUPINST 6335.1
Page 7

    year must have approval of the Superintendent and will only be granted in exigent cases.

    ii. The Department of Health Services will designate a representative to monitor the progress of medical deferred graduates in completing graduation requirements. The representative will send a bi-weekly update on each medical deferred graduate to the Assistant Dean.

  g. <u>Regimental Deferred Graduate</u>

    i. A midshipman may be conferred regimental deferred graduate status for a variety of reasons, including physical fitness, behavior, honor violations, and holds imposed by various Academy departments (Library, book store, Public Safety.) S/he must complete all outstanding regimental requirements prior to December 31 of the graduation year. If a midshipman will not be able to complete the requirements for graduation prior to December 31 then s/he may be disenrolled. Only the Superintendent may extend the deadline for completion of outstanding graduation requirements.

    ii. The Commandant will designate a representative to monitor the progress of regimental deferred graduates in completing graduation requirements. The representative will send a bi-weekly update of each regimental deferred graduate to the Assistant Dean for Support Programs.

6. EFFECTIVE DATE. This Instruction revokes SUPINST 2005-12, shall go into effect immediately, and shall remain in effect until superseded or revoked.


SHASHI N. KUMAR, Ph.D.
Master Mariner
Interim Superintendent and Academic Dean


Dist:  Via email

**ATTORNEY AFFIRMATION OF SERVICE**
**SELL v. UNITED STATES et al.**
**Index No.: 19-CV-3105(RJD)**

I, MICHAEL CASSELL, an attorney at law and partner of the firm HOGAN & CASSELL, LLP, attorneys for the plaintiff, Benjamin Sell ("Plaintiff"), in the above-entitled action, hereby certify under penalty of perjury that I caused a copy of Plaintiff's Memorandum of Law in Further Support of His Motion for Summary Judgment to be served upon Defendants by electronic filing and electronic mail, as set forth below, on January 16, 2020:

Diane Leonardo, Esq. (diane.beckman@usdoj.gov)
United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, New York 11722

Pursuant to Local R. Civ. P. 1.9 and 28 U.S.C. § 1746, I declare under penalty of perjury

that the foregoing is true and correct.

Dated:  January 16, 2020

Respectfully submitted,

HOGAN & CASSELL, LLP
Attorneys for Plaintiff, Benjamin Sell

By: _____
Michael Cassell
500 North Broadway, Suite 153
Jericho, New York 11753
(516) 942-4700
(516) 942-4705
mcassell@hogancassell.com