UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
BENJAMIN SELL

                 Plaintiff,

        - against –                        **MEMORANDUM & ORDER**

UNITED STATES OF AMERICA, UNITED STATES      19-CV-3105 (RJD) (RER)
DEPARTMENT OF TRANSPORTATION, UNITED
STATES MERCHANT MARINE ACADEMY, and
JOHN DOES 1-10,

                 Defendants.
-----------------------------------------------------------------x
DEARIE, District Judge

Plaintiff Benjamin Sell brings this suit against the United States, the United States

Department of Transportation ("US DOT"), the United States Merchant Marine Academy

("USMMA" or "Academy"), and John Does 1-10 (collectively, "Defendants"), claiming that his

disenrollment from the USMMA violates the Administrative Procedure Act ("APA") because

Defendants' conduct was arbitrary and capricious and a denial of due process. He seeks a

declaration that Defendants violated the APA; an injunction ordering his reinstatement to the

Academy; compensatory and punitive damages; and costs, expenses, and attorneys' fees. The

parties seek summary judgment. For the reasons set forth below, Plaintiff's motion is DENIED

and Defendants' motion is GRANTED.

## BACKGROUND

I.     **USMMA Leadership and Disciplinary Framework**

The USMMA is maintained by the US DOT to "provide instruction to individuals to

prepare them for service in the merchant marine of the United States." 46 U.S.C. § 51301(a). It is

led by a Superintendent, a position akin to a civilian college president, who is empowered to "issue all regulations necessary for the accomplishment of the [USMMA]'s mission." 46 C.F.R. § 310.67. From 2012 to October 11, 2018, Rear Admiral James Helis was USMMA Superintendent. Upon his departure, Deputy Superintendent Rear Admiral Susan Dunlap rose to Interim Superintendent. She served until November 12, 2018, when Rear Admiral Jack Buono was appointed Superintendent, a position he holds today.

The Superintendent's senior staff includes the Assistant Superintendent for Regimental Affairs, or "Commandant of Midshipmen" ("Commandant"). See Maritime Administrative Order 150-1 § 6.01.[1] Captain Mikel E. Stroud was Commandant at all relevant times and remains Commandant today. Among other responsibilities, the Commandant "develop[s] regimental policy and a program of self government, discipline, and military-type organization" and "oversees . . . the honor system." See id.

Midshipman conduct is governed by the Midshipman Regulations, the Honor Code, and the Honor Manual. The Midshipman Regulations include dozens of substantive and procedural provisions governing Midshipman life. See Administrative Record ("AR") 210-285. It commands, among many other things, that Midshipmen shall comply with the Honor Code, a one-line policy stating, "A Midshipman will not Lie, Cheat or Steal." See AR 214, 288. The Honor Manual is a pamphlet that explains what conduct violates the Honor Code and how such violations will be adjudicated. See AR 286-342. As relevant here, the Honor Manual states that plagiarism is a form of cheating that violates the Honor Code. See AR 291-92.

Chapter 4 of the Midshipman Regulations states that "[a]ny violation of [the Midshipman] Regulations is subject to disciplinary action." See AR 259. It distinguishes "Class I

---

[1] Available at https://www.maritime.dot.gov/sites/marad.dot.gov/files/docs/about-us/foia/4291/mao150-001-0.pdf.

Offenses," which are "serious and/or deliberate violations of the standards of conduct," from

"Class II Offenses," which are "minor conduct breaches." <u>See</u> AR 259, 264. Whereas a Class II

Offense may result only in demerits or assignment of "Extra Duty," a Class I Offense may result

in demerits, Extra Duty, "Assignment of Restriction," counseling services, or referral to a

Performance Review Board, Executive Board, or Superintendent's Hearing. <u>See</u> AR 259-60,

265.

  Chapter 6 of the Midshipman Regulations explains that an Executive Board is "a fact-

finding body charged with presenting a recommendation to the Superintendent." <u>See</u> AR 276.

Under Chapter 6.1,

> The Superintendent may, on his/her own or upon the recommendation of the Commandant, order an Executive Board . . . be convened for consideration and recommendation on the following:
> 1. Any disciplinary offense(s) committed by a Midshipman that may be sufficiently grave as to warrant a recommendation for disenrollment, or
> 2. Any report(s) by the Commandant's Performance Review Board which, in the opinion of the Superintendent, indicates a serious lack of aptitude or suitability of a Midshipman for a career in the merchant marine and the United States Navy Reserve, including but not limited to repeated failures of a Midshipman to meet the U.S. Navy physical fitness standards for commissioning or exceeding 300 total demerits at any point during enrollment at the Academy.

<u>See</u> AR 276.

  An Executive Board Disciplinary Hearing includes a guilt phase, during which the

Executive Board determines whether the Midshipman committed the charged violation, and a

penalty phase, during which the Executive Board decides the punishment to recommend to the

Superintendent. <u>See</u> AR 280-83. By contrast, an Executive Board Suitability Hearing is called to

decide the singular question of whether a Midshipman is suitable for retention or not. <u>See</u> AR

283-84. At a Suitability Hearing,

> [t]he Midshipman may present evidence, including written statements from witnesses, and call witnesses to demonstrate exceptional potential for development and present extenuating and/or mitigating evidence and arguments for retention at the Academy. The burden for demonstrating sufficient cause for retention by a preponderance of the evidence is on the Midshipman.

See AR 283. After a Suitability Hearing, the Executive Board recommends to the Superintendent whether to disenroll or retain the Midshipman, with the ultimate authority to disenroll resting with the Superintendent. See AR 284.

## II.    Plaintiff Benjamin Sell's Time at the USMMA

The facts of Sell's time at the Academy are not in dispute. Sell entered the USMMA in 2015 with the Class of 2019. See AR 15. After failing four courses during his first two years, in June 2017, Sell was placed on Continued Academic Probation. See AR 11-13, 17. Under his probation terms, Sell could not fail a class before the end of his 2nd Class year[2] and was warned that violating his probation could result in disenrollment. See AR 17. Sell also failed three out of six Physical Fitness Assessments and incurred 442 reported demerits, of which 76 were "approved" and 166 were "dismissed with warning." See AR 8, 103.

Unfortunately, Sell's performance continued to suffer. He failed three classes in his 2nd Class year. See AR 11-13. Among his 2nd Class year failures, in Humanities Sea Project with Professor Jeffrey Taffet, Sell submitted two writing assignments that were 98 percent plagiarized from a "pony"[3] and failed to submit a third writing assignment. See AR 75. After discovering

---

[2] What civilian colleges call "freshman," "sophomore," "junior," and "senior" years, the USMMA calls "4th Class," "3rd Class," "2nd Class," and "1st Class," respectively.

[3] A "pony" is an exam or other piece of academic work completed previously by another Midshipman. See AR 294.

4

Sell's plagiarism, Professor Taffet reported Sell to the Regimental Honor Board,[4] which advised

Sell of the accusation the following day. See AR 57-61. After the Regimental Honor Board

conducted initial investigative interviews, see AR 65-69, on August 22, 2018, Sell admitted in

writing to the plagiarism charge. See AR 63-64.

Following procedures prescribed by the Honor Manual, the Regimental Honor Board

held a formal hearing regarding Sell's plagiarism. See AR 72-89, 92. In a 9-0 vote, the Honor

Board jury[5] found Sell guilty of plagiarism and recommended that Superintendent Helis order

Sell to complete a 120-day honor remediation program. See AR 54. After reviewing Sell's case,

the Honor Board Staff [6] recommended that instead of a 120-day honor remediation program, Sell

should be set back to the Class of 2020. See AR 51-52. The Regimental Honor Board Advisor,

Lieutenant Commander Stephen J. McDade, went further still, recommending to Superintendent

Helis that Sell be disenrolled. See AR 50. He concluded that Sell's conduct showed his "total

disregard for honor or integrity." See AR 50.

On October 11, 2018, his last day in office, Superintendent Helis affirmed the Honor

Board jury's guilt determination and, among other terms of punishment, ordered that Sell be set

back to the Class of 2020, remediate the plagiarized papers, and undergo an honor remediation

program. See AR 2-3. The Superintendent concluded, "[i]f the Commandant determines your

remediation was unsuccessful you will be referred to an Executive Board or Superintendent's

hearing and may be disenrolled from the Academy." See id.

---

[4] The Regimental Honor Board, or Midshipman Honor Board, is a body of Midshipmen, partially appointed by the Superintendent and partially elected by Midshipmen, that educates Midshipmen regarding the Honor Code and investigates alleged Honor Code violations. See AR 293-97.

[5] The Honor Board jury, like a petit jury in the civilian judicial system, is a panel of nine Midshipmen, distinct from the Regimental Honor Board, that is assembled to decide whether a Midshipman committed an Honor Code violation and, if necessary, to recommend a punishment. See AR 295, 302.

[6] The Honor Manual does not explain the composition or duties of the Honor Board Staff.

The very next day, Commandant Stroud recommended to Interim Superintendent Dunlap that Sell "appear before an Executive Board to determine his suitability to remain in the Regiment of Midshipman." See AR 1. In support, Commandant Stroud cited Sell's admitted plagiarism, his "Deferred Graduate status,"[7] and his physical fitness failures. See id.

On October 18, 2018, six days after Commandant Stroud recommended convening a Suitability Hearing, Sell received a Notice of Executive Board Suitability Hearing ("Notice") informing him that his Suitability Hearing was scheduled for October 25, 2018. See AR 197-200. The Notice also stated the time, place, and attire for the hearing; the scope of what the Executive Board would consider before rendering its decision; the burden of proof and its placement on Sell; the members of the Executive Board; the witnesses the USMMA intended to call; a list of various documents regarding Sell; a list of rights afforded to Sell prior to and at the hearing; and, it informed Sell that he could be disenrolled upon the recommendation of the Executive Board. See id. After two adjournments, the Suitability Hearing was set for November 15, 2018, three days after Rear Admiral Jack Buono took over as USMMA Superintendent. See AR 25-28.

The Administrative Record does not contain minutes of the Suitability Hearing, though the Midshipman Regulations indicate that minutes should have been kept. See AR 277. However, other documents in the Administrative Record indicate that at the Suitability Hearing, Sell gave opening and closing statements, responded to questions from the Executive Board, and put on a character witness. See AR 9, 19. The Administrative Record also lists the rights Sell was told he would receive at the Suitability Hearing, and Sell does not argue that he was denied any of these rights. See AR 277-79.

After concluding the Suitability Hearing, the Executive Board voted 5-0 to recommend to

---

[7] The Court assumes that "Deferred Graduate status" refers to Sell's set back to the Class of 2020.

Superintendent Buono that Sell be disenrolled. <u>See</u> AR 8-9. In her letter informing

Superintendent Buono of the disenrollment recommendation, Deputy Superintendent Dunlap,

who was a member of Sell's Executive Board, stated:

> [T]he Board took into consideration the following:
> - [Sell] has established a pattern of failing the [physical fitness assessment];
> - He failed three sea projects during Second Class Sea Year period, for which he has been set back;
> - He stood before an Honor Board due to cheating on his Humanities sea project and was found guilty;
> - His admission that when he focuses on athletics, his grades suffer and when he focuses on grades, his athletic performance suffers; and
> - His inability to understand the principles of leadership.

<u>See</u> AR 8. According to Dunlap's letter, the Executive Board concluded that "Midshipmen Sell

had not only avoided any leadership responsibilities during his tenure at the Academy but that he

did not understand what it meant to be a leader. . . . Midshipmen Sell lets fear and impulse rule

his actions . . . [and] he was leery about leading people because he was afraid to fail." <u>See</u> AR 9.

Superintendent Buono approved Sell's disenrollment on November 20, 2018. <u>See</u> AR 9. Sell

appealed to Maritime Administrator Rear Admiral Mark H. Buzby, who affirmed Sell's

disenrollment. <u>See</u> AR 10. Buzby's letter to Sell states that his affirmance "constitutes final

Agency action." <u>See</u> <u>id.</u>

## III.   Procedural History

Sell filed suit on May 23, 2019. He claims that Defendants convened the Suitability

Hearing in violation of Midshipman Regulation Chapter 6.1; failed to give him a meaningful

opportunity to oppose his disenrollment; improperly placed the burden of proof on him at the

Suitability Hearing; punished him twice for the same conduct; and that Academy administrators

were motivated by bad faith or ill will. This conduct, Sell claims, violates the APA because it

was arbitrary and capricious and deprived him of his Fifth Amendment procedural and substantive due process rights.

## DISCUSSION

Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; [or] (B) contrary to constitutional right." 5 U.S.C. § 706(2). The parties do not dispute that the APA authorizes judicial review of Sell's disenrollment. See 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof."). Nor do they dispute that Sell's claims are ripe for judicial review, as Maritime Administrator Buzby's affirmance of Sell's disenrollment is a "final agency action." See 5 U.S.C. § 704; AR 10.

## I.      Standard and Evidentiary Scope of Review

Where "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and the entire case on review is a question of law." See Brezler v. Mills, 220 F. Supp. 3d 303, 321 (E.D.N.Y. 2016) (citing American Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). "[A] summary judgment determination is generally appropriate in APA cases because the question whether an agency's decision is arbitrary and capricious [or contrary to a constitutional right] is a legal issue amendable to summary disposition." See id. The parties do not dispute the facts and Sell's claims that Defendants' conduct was "arbitrary and capricious" or "contrary to constitutional right" raise only legal questions, thus making this case appropriate for summary disposition.

The threshold dispute, which Sell raises in a vague and passing reference, is over what

8

evidence the Court may consider. Under the so-called "record rule," "[g]enerally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." National Audubon Soc. v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997) (citing Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)). The Administrative Record Defendants supplied to the Court is entitled to a presumption of regularity. See Comprehensive Community Development Corp. v. Sebelius, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012). However, there are four recognized circumstances when the Court may look outside the Administrative Record: (1) when the record before the Court is not the "whole record" that was before the agency decision-makers; (2) when the Court needs "background information;" (3) when the Court must determine whether the agency considered all relevant factors, ignored aspects of the problem, or departed from established agency practices; or (4) when a party makes a "strong showing in support of a claim of bad faith or improper behavior on the part of agency decision makers." See New York v. United States Department of Commerce, 351 F. Supp. 3d 502, 632-34 (S.D.N.Y. 2019) (compiling cases from the Circuit Courts of Appeals recognizing the foregoing exceptions).  If an exception applies, the Court would permit "only that discovery necessary to effectuate the Court's judicial review, i.e. review the decision of the agency under [5 U.S.C. §] 706." Ali v. Pompeo, 2018 WL 2058152, at *4 (E.D.N.Y. 2018).

Sell does not point to any evidence that was before the Academy decision-makers but left out of the Administrative Record. Nor is there a need for "background information," or any suggestion that Defendants failed to consider relevant factors, ignored aspects of the problem, or departed from established practice. Sell's counsel argues, in conclusory fashion, that Commandant Stroud showed bad faith in recommending a Suitability Hearing, providing pretextual supporting reasons to mask more nefarious motives. Meeting the standard for

9

invoking this exception—"variously described as a strong, substantial, or prima facie showing" of bad faith—is "no small hurdle," and counsel's argument falls far short. See id. at *5. Nothing in the Administrative Record hints, much less "strongly" or "substantially," that evidence of the agency decision-makers' true motives exists outside the Administrative Record. See id. at *6 ("There are no declarations or other evidence proffered to suggest to the Court that there was bad faith action by the State Department. Counsel's assertions are insufficient to create the record necessary to infer there was bad faith conduct."); New York v. Salazar, 701 F. Supp. 2d 224, 241-42 (N.D.N.Y. 2010) (finding that "produced evidence" of a conflict of interest sufficiently supported extra-record discovery into bad faith conduct). Extra-record discovery is, therefore, inappropriate.

## II.    The Arbitrary and Capricious Claim Under § 706(2)(A)

"[A]n agency action is arbitrary and capricious where the agency has relied on facts which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." See Doe v. United States Merchant Marine Academy, 307 F. Supp. 3d 121, 144 (E.D.N.Y. 2018) (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983)). To satisfy § 706(2)(A), "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." See id. In adjudicating a claim under § 706(2)(A), "a court is not to substitute its judgment for that of the agency" and "the agency's decision is entitled to a presumption of regularity." Doe, 307 F. Supp. 3d at 144 (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43; and Citizens to Preserve Overton Park, Inc. v. Volpe, 401

U.S. 402, 415 (1971)). The Court is especially loathe to substitute its judgment for that of the USMMA, as "[f]ew decisions properly rest so exclusively within the discretion of the appropriate government officials [as] the selection, training, discipline and dismissal of the future officers of the military and Merchant Marine." See Wasson v. Trowbridge, 382 F.2d 807, 812 (2d Cir. 1967); Doe, 307 F. Supp. 3d at 147 (applying Wasson to an APA challenge to the disenrollment of a USMMA Midshipman).

Sell submits three bases for finding Defendants' conduct arbitrary and capricious, focusing on the reasons the USMMA convened his Suitability Hearing and Superintendent Buono's decision to disenroll Sell, not the proceedings at the Suitability Hearing. First, Sell contends that Midshipman Regulations Chapter 6.1 lays out the only two circumstances in which an Executive Board may be convened and that his case falls under neither of those circumstances. Second, Sell argues that it was improper to convene his Suitability Hearing because he remediated or was already serving a punishment for all the conduct Commandant Stroud cited as the basis for convening the Suitability Hearing and the Buono administration did not give Sell the opportunity to complete the remediation. See AR 1. Third, Sell maintains that he should not have been disenrolled when Superintendent Helis previously rejected disenrollment.

The Court is not persuaded. The Midshipman Regulations provide Defendants ample berth for calling an Executive Board Suitability Hearing. Chapter 6.1(1) permits convening an Executive Board to address "[a]ny disciplinary offense(s) committed by a Midshipman that may be sufficiently grave as to warrant a recommendation for disenrollment." See AR 276. This provision gives Academy administrators discretion to determine what disciplinary offenses are "sufficiently grave" to warrant disenrollment. Chapter 4.4(1)(f) provides some further guidance

11

to Midshipmen, warning that sufficiently "severe" Class I Offenses may result in referral to an Executive Board for a suitability determination. <u>See</u> AR 260. Commandant Stroud's stated reasons for convening Sell's Suitability Hearing—"failure in Honor, Academics, [and] maintaining [physical fitness] standards," <u>see</u> AR 1—fit under any number of Class I disciplinary offenses: (8) "conduct that . . . reflects discredit . . . on the Midshipman;" (15) "failure to comply with Academy or shipboard rules or regulations;" (19) "Gross lack of good judgment;" and (29) "violation of Academy Policy," just to name a few. <u>See</u> AR 260-61. These provisions provide the Academy with ample justification to convene Sell's Suitability Hearing.

Deputy Superintendent Dunlap's memorandum recommending disenrollment, which Superintendent Buono endorsed, sufficiently explains the Academy's disenrollment decision. She notes Sell's repeated physical fitness failures, academic failures, and honor code violation, and she acknowledges the testimony of Sell's character witness. <u>See</u> AR 8-9. And she grounds the disenrollment recommendation in the USMMA's mandate to graduate Midshipmen who are ready to lead, a quality the Executive Board found Sell lacked. <u>See</u> <u>id.</u> With Dunlap's memorandum, Defendants satisfy the APA's requirement that they "examine the relevant data and articulate a satisfactory explanation" for disenrolling Sell. <u>See</u> <u>Doe</u>, 307 F. Supp. 3d at 144.

Contrary to Sell's contention, it is not arbitrary and capricious to disenroll him for failures across academics, honor, and physical fitness when administrators meted out punishment short of disenrollment for each of his predicate infractions. The USMMA was well within its right to scrutinize Sell's entire record for suitability when that record includes numerous and repeated transgressions for which prior measures, including probation, setback, and remediation, apparently did not spur a behavioral turnaround. <u>See</u> <u>Doolen v. Esper</u>, 2018 WL 4300529 (S.D.N.Y. 2018) (concluding "it was neither arbitrary nor capricious" for the US Military

12

Academy to "weigh an alleged behavioral turnaround against a well-documented history of rule-breaking and repeated deflections of responsibility"). With this wider focus on Sell's entire record, it is hardly inappropriate for Superintendent Buono to dole out harsher punishment than Sell received when each predicate infraction was considered separately. That Defendants did not give Sell the opportunity to complete his honor remediation does not change this conclusion. Nothing in the Midshipman Regulations requires USMMA administrators to have waited to evaluate Sell's overall suitability.

In sum, the Midshipman Regulations permitted Defendants to call the Suitability Hearing, and the Administrative Record shows Defendants arrived at their decision to disenroll Sell by adequately evaluating the uncontroverted facts of his time as a Midshipman against their mission to graduate officers who can fulfill their future duties as Merchant Marines or Navy Reservists. In disenrolling Sell, Defendants did not act arbitrarily and capriciously.

## III. Constitutional Claims Under § 706(2)(B)

### a. Procedural Due Process

A successful procedural due process claim requires Sell to "(1) identify a property [or liberty] right, (2) establish that governmental action with respect to that property [or liberty] right amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." See Rosa R. v. Connelly, 889 F.2d 435, 438 (2d Cir. 1989); Cassidy v. United States, 2018 WL 6088146, at *12 (E.D.N.Y. 2018). As the parties do not dispute that Sell's disenrollment deprived him of a property or liberty right, this case is over the third element—whether the USMMA afforded Sell due process before disenrolling him.

Specific to this case,

> [procedural] due process only requires for the dismissal of a Cadet
> from the Merchant Marine Academy that he be given a fair hearing

13

> at which he is apprised of the charges against him and permitted a defense. It would be most unwise, if not impossible, for this Court to spell out in detail the specific components of a fair hearing in the context of expulsion from the Academy. . . . For the guidance of the parties, however, the rudiments of a fair hearing in broad outline are plain. The Cadet must be apprised of the specific charges against him. He must be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence.

Wasson, 382 F.2d at 812. Though Wasson describes only the "rudiments of a fair hearing in broad outline," the Second Circuit clarified that in the course of dismissing a cadet, if a service academy affords the cadet a hearing, apprises the cadet of the charges, and gives the cadet an adequate opportunity to present a defense, the proceeding "would be proper and immune from constitutional infirmity." See Andrews v. Knowlton, 509 F.2d 898, 905 (2d Cir. 1975).

Sell was afforded all the process the Constitution requires. The Notice, which Sell was sent each time his Suitability Hearing was adjourned, apprised Sell of the charges against him and informed him of the possibility of disenrollment. See AR 197-200. He had over one month's time to prepare his defense from first receiving the Notice on October 18, 2018, to appearing at the Suitability Hearing on November 15, 2018, and he never asked for more time from Academy administrators nor argued to the Court that this time was inadequate. He gave opening and closing statements, responded to questions from the Executive Board, and put on a character witness. See AR 9, 19. The Midshipman Regulations did not limit the amount of time Sell was given to present his case, and Sell does not argue any limits were otherwise imposed. Chapter 6.4 of the Midshipman Regulations and the Notice list all the other rights Sell was told he would receive before and during the Suitability Hearing—copies of all documents to be considered by the Executive Board, the advice and assistance of legal counsel in preparing his case, and the ability to challenge the impartiality of any Executive Board member, among others—and Sell

does not argue that he was denied any of these rights. See AR 197-200, 277-79.

Sell identifies four alleged constitutional infirmities, but none stands up to scrutiny. First, Sell argues that the Suitability Hearing was called in contravention of the Midshipman Regulations. For the reasons previously discussed, the Midshipman Regulations permitted the USMMA to call Sell's Suitability Hearing. Second, Sell contends that he was not afforded a meaningful opportunity to be heard. But the Administrative Record readily belies this claim.

Third, Sell argues it is a facial constitutional violation for Midshipman Regulations Chapter 6.6(1) to place "the burden [at a Suitability Hearing] for demonstrating sufficient cause for retention by a preponderance of the evidence" on the Midshipman. See AR 283. Sell contends that due process requires the burden be placed on the USMMA to produce "substantial evidence" of a "basis to discipline the student." This argument fails for factual and legal reasons.

As a factual matter, Sell's argument mischaracterizes the purpose of the Suitability Hearing, which is called not to find a "basis to discipline" but to determine whether the Midshipman is suitable for retention. By the time of his Suitability Hearing, USMMA administrators already had a "basis to discipline" in Sell's multiple academic and physical fitness failures and his admitted Honor Code violation. Indeed, instead of admitting to plagiarizing two papers, had Sell left it to an Honor Board jury to determine whether he violated the Honor Code, the burden of proof would not have been on him. See AR 309 ("[T]he accused Midshipman does not have the burden to prove that he or she did not commit the [honor] violation."); see also AR 262 ("The burden of proof during a [Class I] Mast will rest with the Academy. The Academy must prove its case by a preponderance of the evidence.").

As a legal matter, under Wasson and Andrews, an allegedly misplaced burden of proof would not be a constitutional violation, as Defendants need only afford Sell a hearing, apprise

15

him of the charges against him, and give him an opportunity to present a defense to meet the constitutional procedural requirements. See Andrews, 509 F.2d at 905. Indeed, more generally, "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." See U.S. v. Parcel of Property, 337 F.3d 225, 233 (2d Cir. 2003) (citing Lavine v. Milne, 424 U.S. 577, 585 (1976)).

Fourth, Sell argues that it violates due process to disenroll him after he had either remediated his predicate infractions or was punished short of disenrollment for each infraction. Sell sees an analogy with Lightsey v. King, 567 F. Supp. 645 (E.D.N.Y. 1983). In Lightsey, an Honor Board found a Midshipman not guilty of cheating, but a professor refused to change the Midshipman's grade from zero to the computed score he would have achieved absent the cheating allegation. See id. The court in Lightsey held that it violates procedural due process to hold an Honor Board hearing but "disregard" the not guilty verdict because "[t]here is no difference between failing to provide a due process hearing and providing one but ignoring the outcome." Id. at 649. In Sell's view, Defendants committed the same due process violation—Superintendent Buono disenrolled Sell despite Superintendent Helis's prior decision to retain Sell.

Contrary to Sell's argument, there is no analogy between this case and Lightsey. By Sell's own admission, in the face of compelling, irrefutable evidence, he violated the Academy Honor Code, and he does not dispute his documented and repeated academic and physical fitness failures. So, the conclusion in Lightsey that it violates due process to afford a hearing but punish the Midshipman despite a not guilty determination, an understandable conclusion with which the Court does not quarrel, has no application here. And Superintendent Buono's decision to disenroll Sell is not tantamount to ignoring Superintendent Helis's decision not to disenroll Sell

16

because Buono and Helis were deciding different issues. When Superintendent Helis declined to disenroll Sell, he was only evaluating whether Sell's plagiarism warranted disenrollment, whereas Superintendent Buono considered the broader question of whether, given Sell's entire record of honor, academic, and physical fitness failures, Sell was suitable for retention as a Midshipman. That Buono imposed a harsher punishment is reasonable because he was considering a more damning record.

Defendants afforded Sell all the process constitutionally required.

**b.  Substantive Due Process**

Finally, Sell claims that his disenrollment violates his substantive due process rights. "The doctrine of substantive due process protects the individual against certain government actions regardless of the fairness of the procedures used to implement them." McClary v. O'Hare, 786 F.2d 83, 88 (2d Cir. 1986). It prohibits "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). But the scope of substantive due process rights "is very limited." See Doe, 307 F. Supp. 3d at 156 (citing Washington v. Glucksberg, 521 U.S. 702, 720 (1997)). To prevail, Sell must establish "that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." See Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005). This standard is satisfied if Sell shows that Defendants' conduct "was arbitrary or irrational or motivated by bad faith." Rosa R., 889 F.2d at 439. But "[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Lewis, 523 U.S. at 846; see Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999) ("Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.").

17

Sell argues that Commandant Stroud showed bad faith in recommending a Suitability Hearing. As Sell sees it, Commandant Stroud exhibited bad faith because he recommended convening the Suitability Hearing despite knowing that the Midshipman Regulations did not permit calling a Suitability Hearing; and despite knowing that his stated basis for the Suitability Hearing—Sell's academic, physical fitness, and honor infractions—could not support disenrollment because Sell had already been punished short of disenrollment for each predicate infraction. In Sell's view, Commandant Stroud's stated reasons for recommending a Suitability Hearing are pretextual.

The Court concludes otherwise. Nothing in the Administrative Record reveals agency conduct that "shocks the contemporary conscience." For the reasons the Court has already discussed, the Midshipman Regulations permitted convening Sell's Suitability Hearing; the USMMA was within its right to evaluate Sell's suitability even though they doled out discrete sanctions short of disenrollment for each predicate infraction; and there is no evidence that Commandant Stroud's stated reasons for recommending a Suitability Hearing were a pretext to cover some darker, improper motive.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

SO ORDERED.

                                                  __/s/ Raymond J. Dearie____
                                                  Raymond J. Dearie
Dated: July 7, 2020                               United States District Judge
Brooklyn, NY